**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7100

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: APR 1 6 2014

WRITER'S DIRECT DIAL NO.
(212) 849-7327

April 15, 2014

WRITER'S INTERNET ADDRESS
kathleensullivan@quinnemanuel.com

Hon. Alison Nathan
United States District Judge
U.S. District Court for the Southern District of New York
40 Foley Square, Room 2102
New York, NY 10007

Re:   **AIG v. Department of Financial Services and Benjamin M. Lawsky, 14-cv-2355**

Dear Judge Nathan:

We write on behalf of Plaintiff AIG to respectfully request a pre-motion conference, as required by the Pilot Project for Complex Civil Cases, concerning AIG's intention to file a letter-motion for an accelerated preliminary pre-trial conference pursuant to Federal Rule of Civil Procedure 16. AIG has met and conferred with the Defendants and asked them to consent to expedition of the Court's consideration of the merits of this case, which alleges that DFS has unconstitutionally interpreted, applied, and enforced certain provisions of the New York Insurance Law against foreign insurance business. Defendants declined to consent to expedition and indicated that they will be filing an unspecified motion to dismiss. At the requested Rule 16 conference, AIG intends to seek an abbreviated briefing schedule for both Defendants' contemplated motion to dismiss and for the Court's consideration of the merits of AIG's case. AIG respectfully submits that an accelerated conference is necessary to prevent Defendants from causing AIG further irreparable harm by their ongoing enforcement action.

1. **Background**. This case arises from an investigation of American Life Insurance Company ("ALICO") and Delaware American Life Insurance Company ("DelAm") that Defendants commenced in 2011.[1] ALICO and DelAm were formerly wholly owned subsidiaries of AIG until they were sold to MetLife on November 1, 2010. Defendants' investigation focused principally on whether ALICO and the individuals marketing its foreign insurance products conducted insurance business in New York without a New York license. That investigation culminated some three years later on March 31, 2014, when Defendants entered into a Consent Order with MetLife in which Defendants found that MetLife, ALICO, and DelAm had violated New York Insurance Law §§ 1102, 2102(a) and 2117. AIG was not a party to the MetLife Consent Order, nor was AIG consulted in any way about its terms or purported findings. AIG first learned the details of the MetLife Consent Order the day it was publicly announced by Defendants. Despite having negotiated the order with only MetLife, Defendants took the

---

[1]  *See* Consent Order between DFS and MetLife, dated March 31, 2014 (the "MetLife Consent Order").

extraordinary step of finding that *AIG*, a *non-party* with *no* say in the settlement, had also violated the New York Insurance Law.[2] Indeed, it is a condition of the order that MetLife "agree to fully cooperate with DFS's Investigation of...AIG concerning...AIG's *violations* of sections 1102, 2102 and 2117 of the Insurance Law and related offenses prior to the Acquisition."[3] Defendants do not couch AIG's purported violations as mere allegations subject to further investigation, but instead as conclusive findings of law and fact. Defendants are thus seeking to levy substantial fines on AIG for ALICO's purported engagement in an "insurance business" without a New York license during the period ALICO was owned by AIG.

     2. Need for accelerated briefing to prevent irreparable harm to AIG. Having effectively charged AIG with violating New York law and adjudged it guilty by means of an out-of-court settlement with an unrelated third party with no opportunity for AIG to be heard, no chance to confront witnesses or challenge the evidence against it, no judge, and no appeal, Defendants now claim that AIG remains merely under investigation. Defendants served two subpoenas on AIG on April 1, 2014, the day after announcing the MetLife Consent Order, one for documents and the other for testimony, and both to determine "whether persons and/or entities have been or are engaged in fraud or misconduct" and "whether a proceeding should be instituted against [AIG]."[4] Moreover, Defendants issued a public statement hours after AIG filed its complaint in this action declaring that AIG is not "above the law" and suggesting that AIG was not cooperating with their ongoing investigation.[5] These claims of non-cooperation were unwarranted, for AIG had been cooperating with Defendants' inquiries for months (with no suggestion to the contrary from Defendants) and the response dates on Defendants' new subpoenas had not even come and gone.

     AIG has previously produced, voluntarily or pursuant to prior subpoenas, tens of thousands of pages of the same documents demanded by the new subpoena *duces tecum*, to which AIG is already producing responsive documents under a reservation of rights. Moreover, on information and belief, Defendants have access to investigative materials from a related (and now dormant) federal investigation, including documents and deposition testimony of key personnel. Where the subpoena seeks new documents, it demands production of huge quantities of material with no evident nexus to the issues in play. To the extent the subpoenas seek new relevant material or testimony, they should be directed to MetLife, which has had possession, custody or control of the requested information since at least November 1, 2010, and now has ready access to the people with the most knowledge of ALICO and DelAm's businesses. Indeed, MetLife has already promised Defendants that it will produce "all non-privileged documents and information requested by [Defendants], as well as any testimony of any MetLife Parties' employees requested by [Defendants] concerning ALICO's and DelAm's doing insurance business in New York without a New York license prior to the Acquisition."[6] In short, it appears

---

    [2] *See* MetLife Consent Order at 9 ¶ 18 ("AIG ... violate[d] N.Y. Ins. Law §§ 1102, 2102(a) and 2117."). It is AIG's understanding, based on multiple communications with Defendants over the past months that the Defendants have concluded § 1102 is the only provision of the Insurance Law that AIG has violated.
    [3] *See* MetLife Consent Order at 10 ¶ 4. (emphasis added).
    [4] *See* DFS Subpoenas *Duces Tecum* and *Ad Testificandum*, dated April 1, 2014.
    [5] Specifically, a spokesperson for the Defendants stated "AIG may not want to cooperate with our probe, but they are not above the law -- no matter how big or powerful they may be." *See, e.g.*, "AIG Sues NY Regulator over probe of insurance marketing," Reuters, Apr. 3, 2014.
    [6] *See* MetLife Consent Order at 10 ¶ 4.

that the primary purpose of Defendants' subpoenas is not to address ongoing investigatory needs but rather to exert pressure on AIG to reconsider its position on the merits.

Defendants' actions thus are causing AIG irreparable harm. It is well-established that violations of constitutional rights are irreparable.[7] And AIG is likely to prevail on the merits of its constitutional challenge. First, due process requires that a statute or regulation have sufficient clarity to give the ordinary person fair notice of what is and is not prohibited.[8] Given the plain language of the relevant statutes, no reasonably prudent person, familiar with the insurance industry and regulation, would understand the statutory scheme to require a New York insurance license for marketing activities that are exclusively directed toward out-of-state (in fact, out-of-country) employees of multinational companies. Second, subjecting AIG to a penalty based on allegations that its former subsidiary partook in such pure marketing activities would constitute a content-based restriction on commercial speech that is unsupported by any legitimate or important state interest in violation of the First Amendment as applied to the States through the Due Process Clause of the Fourteenth Amendment.[9] Third, Defendants' proposed reading of the law violates the dormant Commerce Clause because it would impermissibly regulate, and discriminate against, insurance transactions occurring entirely outside New York's boundaries and which have nothing to do with New York's insurance consumers or insurance market.[10]

AIG believes it would be entitled to a preliminary injunction to prevent Defendants from causing, through their ongoing enforcement action in the guise of an investigation, further irreparable harm to AIG. At this juncture, however, AIG is not requesting such relief because it intends to seek an expedited briefing schedule should the Court grant its motion for an accelerated conference. AIG believes that, under the current circumstances, an expedited schedule would serve the interests of judicial economy and protect AIG's interests. Furthermore, Defendants' counsel has represented to AIG's counsel that Defendants do not intend to imminently commence an administrative proceeding formally charging AIG. Moreover, Defendants have agreed to provide AIG with five business days notice prior to leveling formal charges, and to wait an additional 20 calendar days from charging before commencing any administrative proceeding. AIG reserves the right to seek appropriate injunctive relief if Defendants formally charge AIG at any point during the pendency of this action.

For the foregoing reasons, AIG respectfully requests that the Court schedule a pre-motion conference for seven business days from the date of this letter.

---

[7] See, e.g., New York Progress and Protection PAC v. Walsh, 733 F.3d 483, 486-87 (2d Cir. 2013) (finding that loss of First Amendment freedom of speech constituted irreparable harm); Am. Libraries Ass'n v. Pataki, 969 F. Supp. 160, 168 (S.D.N.Y. 1997) ("Deprivation of the rights guaranteed under the Commerce Clause constitutes irreparable injury.").

[8] See F.C.C. v. Fox Television Stations, Inc., 132 S.Ct. 2307, 2317 (2012) (a "punishment fails to comply with due process if the statute or regulation under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited") (internal quotations and citations omitted).

[9] See United States v. Caronia, 703 F.3d 149, 164-65 (2d Cir. 2012) (rejecting government construction of statute that would prohibit manufacturer promotion as it would unconstitutionally restrict free speech).

[10] See Healy v. The Beer Inst., 491 U.S. 324, 332 (1989) ("[A] state law that has the practical effect of regulating commerce occurring wholly outside that State's borders is invalid under the Commerce Clause.").

Respectfully submitted,

*[signature]*

Kathleen M. Sullivan

---

Defendants are hereby instructed to submit, by April 18, 2014, a letter in response to Plaintiff's request for an accelerated pre-motion conference.

SO ORDERED.

---

SO ORDERED: 4/16/14

*[signature]*

HON. ALISON J. NATHAN
UNITED STATES DISTRICT JUDGE

4