UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN INTERNATIONAL GROUP, INC.

*Plaintiff,*

*- against -*

NEW YORK STATE DEPARTMENT OF FINANCIAL
SERVICES; and BENJAMIN M. LAWSKY, in his official
capacity as Superintendent of the New York State Department of
Financial Services,

*Defendants.*

No. 14 Civ. 2355 (AJN)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Defendants New York State
Department of Financial Services and
Benjamin M. Lawsky
120 Broadway, 24th Floor
New York, New York 10271-0332
(212) 416-8538

ELIZABETH A. FORMAN
ELIZABETH PRICKETT-MORGAN
DANIEL SCHULZE
Assistant Attorneys General
    of Counsel

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

Preliminary Statement ........................................................................................... 1

Statement of the Case ........................................................................................... 3

A. Legal Background.............................................................................................. 3

1. Investigative and Administrative Proceedings Under the Financial Services Law and Insurance Law.................................................................................................. 3
2. New York's Licensing Requirements ............................................................... 4
3. Insurance Law §§ 1101(b)(1) and 1102(a) ...................................................... 6
4. Restrictions on the Activities of Holding Companies ...................................... 7
5. Opinions............................................................................................................ 7

B. The ALICO Opinion, Consent Order and Current Investigation of AIG ......... 8

Argument ............................................................................................................... 11

POINT I  -  THIS COURT SHOULD ABSTAIN FROM EXERCISING
             JURISDICTION OVER AIG'S ATTEMPT TO PREVENT DFS
             FROM INVESTIGATING IT AND ENFORCING THE INSURANCE
             LAW ................................................................................................ 11

A. Younger Abstention Applies .............................................................................. 12
B. Burford Abstention Applies ............................................................................... 16
C. Pullman Abstention Applies............................................................................... 18
D. In Any Event, the Court Should Exercise Its Broad Discretion Under the Declaratory Judgment Act And Decline To Exercise Jurisdiction ....................................... 20

POINT II  -  THIS COURT LACKS SUBJECT MATTER JURISDICTION
              OVER AIG'S CLAIMS............................................................. 22

A. AIG Lacks Standing To Challenge The Constitutionality Of Insurance Law
   §§ 1101(B)(1) And 1102(A), And Its Claims Are Constitutionally Unripe............... 22

B. AIG's Claims Are Prudentially Unripe .............................................................. 25

        1. Fitness................................................................................................ 26
        2. Hardship............................................................................................. 27

POINT III  -  AIG HAS NOT PLED A VIABLE CLAIM THAT INSURANCE
              LAW §§ 1101(B)(1) AND 1102(A) ARE UNCONSTITUTIONAL........ 28

A.  AIG's Claims Rest Upon The Spurious Notion That New York May Regulate Insurance Companies and Agents Operating Within the State Only When They Sell Insurance Policies Covering New York Residents ......................29

B.  The Definition of "Doing An Insurance Business" Is Not Unconstitutionally Vague As A Matter Of Law ...............................................................................31

C.  No FirstAmendment Claim Is Stated...............................................................34

    1.  Any Facial Challenge Would Fail...............................................................34

    2.  Even Assuming Arguendo That AIG Could Bring An Immediate As-Applied Challenge, It Would Fail as a Matter of Law........................37

D.  No Dormant Commerce Clause Claim Lies ........................................................41

CONCLUSION ................................................................................................................43

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

44 Liquormart v. Rhode Island,
  517 U.S. 484 (1996) .................................................................................................40

A.S. Goldmen & Co. v. N.J. Bureau of Sec.,
  163 F.3d 780 (3d Cir. 1999).......................................................................................32

Abbott Labs v. Gardner,
  387 U.S. 136 (1967), overruled on other grounds by Califano v. Sanders, 430
  U.S. 99 (1977) ..........................................................................................................28

Accountant's Soc. of Va. v. Bowman,
  860 F.2d 602 (4th Cir. 1988)..............................................................................41, 42

Advance PharMulvihill Inc. v. United States,
  391 F.3d 377 (2d Cir. 2004).............................................................................15, 34

Alabama v. Pugh,
  438 U.S. 781 (1978) ..................................................................................................30

Allstate Ins. Co. v. Serio,
  261 F.3d 143 (2d Cir. 2001).......................................................................................39

Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,
  545 U.S. 429 (2005) ..................................................................................................42

AM. Sav. Bank, FSV. UBS Fin. Servs, Inc.,
  347 F.3d 436 (2d Cir. 2003).......................................................................................28

American Trial Lawyers Ass'n, N.J. Branch v. N.J. Supreme Court,
  409 U.S. 467 (1973) ..................................................................................................20

Ass'n of Int'l Auto Mfrs., Inc. v. Abrams,
  84 F.3d 602 (2d Cir. 1996).........................................................................................33

AVCO Fin. Corp. v. CFTC,
  929 F. Supp. 714 (S.D.N.Y. 1996).....................................................................25, 29

Banat v. Comm'r,
  80 Fed. Appx. 705 (2d Cir. 2003) .............................................................................41

Barclays Bank Plc v. Franchise Tax Bd.,
  512 U.S. 298 (1994) ..................................................................................................34

Bates v. State Bar of Ariz.,
  433 U.S. 350 (1977) ..........................................................................................38, 40,

Benistar Employer Servs. Trust Co. v. United States,
  2005 U.S. Dist LEXIS 43092 (S.D.N.Y. 2005) ....................................................29

Berman Enters. v. Jorling,
  3 F.3d 602 (2d Cir. 1993)................................................................................18, 20

Bethpage Lutheran Serv., Inc. v. Weicker,
  965 F.2d 1239 (2d Cir. 1992)................................................................................18

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,
  Inc.,
  369 F.3d 212 (2d Cir. 2004).....................................................................................1

Boyce Motor Lines, Inc. v. U.S.,
  342 U.S. 337 (1952) ..............................................................................................33

Broadrick v. Oklahoma,
  413 U.S. 601 (1973) ........................................................................................38, 39

Burford v. Sun Oil Co.,
  319 U.S. 315 (1943)....................................................................................13, 17, 19

Calderon v. Ashmus,
  523 U.S. 740 (1998) ..............................................................................................22

California State Auto. Asso. Inter-Ins. Bureau v. Maloney,
  341 U.S. 105 (1951) ........................................................................................14, 37

Cecos Int'l, Inc. v. Jorling,
  895 F.2d 66 (2d Cir. 1990)..................................................................................4, 17

Clapper v. Amnesty Int'l USA,
  133 S. Ct. 1138 (2013)...........................................................................................24

Clear Channel Outdoor, Inc. v. City of New York,
  594 F.3d 94 (2d Cir. 2010).....................................................................................40

Coalition of Watershed Towns v. U.S. EPA.,
  552 F.3d 216 (2d Cir. 2008)...................................................................................26

Colorado River Water Conservation Dist. v. U. S.,
  424 U.S. 800 (1976) ..............................................................................................19

Connecticut v. Duncan,
  612 F.3d 107 (2d Cir. 2010)...............................................................................28, 29

Cory v. White,
  457 U.S. 85 (1982) ................................................................................................30

Cuomo v. Dreamland Amusements, Inc.,
  No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432 (S.D.N.Y. Sept. 22, 2008)....................14, 27

Diaz v. Paterson,
  547 F.3d 88 (2d Cir. 2008)...........................................................................................35

Doe v. Reed,
  561 U.S. 186 (2010) ..................................................................................................335

Dow Jones & Co., Inc. v. Harrods Ltd.,
  346 F.3d 357 (2d Cir. 2003).........................................................................................22

Entergy Nuclear Vt. Yankee, LLC v. Shumlin,
  733 F.3d 393 (2d Cir. 2013)....................................................................................24, 28

Ex parte State of New York
  , 256 U.S. 490 (1921) ..................................................................................................30

First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,
  862 F. Supp. 2d 170 (E.D.N.Y. 2012).........................................................................1, 16

Friedman v. Rogers,
  440 U.S. 1 (1979) ........................................................................................................39

FTC v. Nat'l Casualty Co.,
  357 U.S. 560 (1958) ....................................................................................................41

Giboney v. Empire Storage & Ice Co.,
  336 U.S. 490 (1949) ....................................................................................................39

Go Leasing v. Nat'l Transp. Safety Bd.,
  800 F.2d 1514 (9th Cir. 1986).......................................................................................35

Great Lakes Dredge & Dock Co. v. Huffman,
  319 U.S. 293 (1943) ....................................................................................................22

Growe v. Emison,
  507 U.S. 25 (1993) ......................................................................................................19

Hachamovitch v. Debuono,
  159 F.3d 687 (2d Cir. 1998)..........................................................................................18

Hall v. Geiger-Jones Co.,
  242 U.S. 539 (1917) ....................................................................................................32

Hamptons Hospital & Medical Center, Inc. v. Moore,
  52 N.Y.2d 88 (1981) ....................................................................................................40

Hansel v. Town Court of Springfield,
  56 F.3d 391 (2d Cir. 1995)............................................................................................14

Hip-Hop Summit Action Network v. N.Y. Temp. Comm'n on Lobbying,
    No. 03 Civ. 5553, 2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003) .......................... 15

Hooper v. California,
    155 U.S. 648 (1895) ........................................................................................................ 31

IDK, Inc. v. Clark County,
    836 F.2d 1185 (9th Cir. 1988) ......................................................................................... 38

J. & W. Seligman & Co. v. Spitzer,
    No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007) ........................ 14

Jacoby & Meyers, LLP v. Presiding Justices of the Appellate Div.,
    847 F. Supp. 2d 590 (S.D.N.Y. 2012) revs'd on other grounds, 2012 U.S. App.
    LEXIS 24012 (2d Cir. Nov. 21, 2012) ........................................................................... 24, 25

Jenkins v. U.S.,
    386 F.3d 415 (2d Cir. 2004) ............................................................................................ 24

JWJ Indus. v. Oswego County,
    538 Fed. Appx. 11 (2d Cir. 2013) .................................................................................... 35

Kampfer v. Cuomo,
    2014 U.S. Dist. LEXIS 1479 (E.D.N.Y. Jan. 7, 2014) ......................................................... 37

L.A.M. Recovery Inc. v. Dep't of Consumer Affairs,
    377 F.Supp. 2d 429 (S.D.N.Y. 2005), aff'd, 184 Fed. Appx. 85 (2006) ................................ 41

La Porto v. Vill. of Philmont,
    39 N.Y.2d 7 (1976) ......................................................................................................... 40

La Tourette v. McMaster,
    248 U.S. 465 (1919) ........................................................................................................ 44

Lake Carriers' Ass'n v. MacMullan,
    406 U.S. 498 (1972) ........................................................................................................ 19

Law Enforcement Ins. Co. v. Corcoran,
    807 F.2d 38 (2d Cir. 1986) .............................................................................................. 19

Lawline v. American Bar Ass'n,
    956 F.2d 1378 (7th Cir. 1992) ......................................................................................... 41

Levy v. Lewis,
    635 F.2d 960 (2d Cir. 1980) ....................................................................................... 18, 19

Locke v. Shore,
    634 F.3d 1185 (11th Cir. 2011), cert. denied, 132 S. Ct. 1004 (2012) .................................. 40

Lowe v. SEC.,
    472 U.S. 181 (1985) (White, J., concurring) ........................................................41

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .....................................................................................24, 26

Makarova v. United States,
    201 F.3d 110 113 (2d Cir. 2000 ) ....................................................................1, 23

Malik v. Meissner,
    82 F.3d 560 (2d Cir. 1996) ..................................................................................23

Marchi v. Bd. of Coop. Educ. Servs.,
    173 F.3d 469 (2d Cir. 1999) ................................................................................23

Mason v. Dep't Disciplinary Com.,
    894 F.2d 512 (S.D.N.Y. 1990) ............................................................................15

Maynard v. Cartwright,
    486 U.S.356 (1988) .............................................................................................33

Merrion v. Jicarilla Apache Tribe,
    455 U.S. 130 (1982) ......................................................................34, 37, 38, 45, 39

Middlesex County Ethics Committee v. Garden State Bar Association,
    457 U.S. 423 (1982) ............................................................................................16

Mir v. Shah,
    No. 11 Civ. 5211 (BSJ), 2012 U.S. Dist. LEXIS 174685 (S.D.N.Y. Dec. 4,
    2012) ....................................................................................................................14

Missouri v. Fiske,
    290 U.S. 18 (1933) ..............................................................................................30

Moore-King v. County of Chesterfield,
    708 F.3d 560 (4th Cir. 2013).............................................................................41

N.Y. Times Co. v. Gonzales,
    459 F.3d 160 (2d Cir. 2006).............................................................................22

Nat'l Org. for Marriage, Inc. v. Walsh,
    714 F.3d 682 (2d Cir. 2013).............................................................................24

Nat'l Park Hospitality Assoc. v. DOI,
    538 U.S. 803 (2003) ...........................................................................................28

National Ass'n for the Advancement of Psychoanalysis v. California,
    228 F.3d 1043 (9th Cir. 2000)..........................................................................41

Neroni v. Becker,
   2014 U.S. App. LEXIS 3167 (2d Cir. Feb. 21, 2014)............................................16

New Alliance Party v. FBI,
   858 F. Supp. 425 (S.D.N.Y. 1994) ........................................................................25

New Orleans Pub. Serv., Inc. v. Council of New Orleans,
   491 U.S. 350 (1989) .............................................................................................18

New York Civil Liberties Union v. Grandeau,
   528 F.3d 122 (2d Cir. 2008) .................................................................................29

Nutritional Health Alliance v. Shalala,
   144F.3d 220 (2d Cir. 1998) ..................................................................................28

Ohio Forestry Ass'n v. Sierra Club,
   523 U.S. 726 (1998) .............................................................................................30

Ohralik v. Ohio State Bar Ass'n,
   436 U.S. 447 (1978) ..........................................................................................39, 2

Pani v. Empire Blue Cross Blue Shield,
   152 F.3d 67 (2d Cir. 1998)......................................................................................1

Papasan v. Allain,
   478 U.S. 265 (1986) .............................................................................................30

Pennhurst State School and Hosp. v. Halderman,
   465 U.S. 89 (1984) ...............................................................................................30

Pennzoil Co. v. Texaco, Inc.,
   481 U.S. 1 (1987) .................................................................................................20

Petrelli v. City of Mount Vernon,
   9 F.3d 250 (2d Cir. 1993).......................................................................................42

Pickup v. Brown,
   740 F.3d 1208 (9th Cir. 2014).................................................................................41

Pub. Serv. Comm'n v.Wycoff,
   344 U.S. 237 (1952) .........................................................................................22, 23

Quackenbush v. Allstate Ins. Co.,
   517 U.S. 706 (1996) .........................................................................................13, 19

Quern v. Jordan,
   440 U.S. 332 (1979) .............................................................................................30

R.R. Comm'n of Tex. v. Pullman Co.,
   312 U.S. 496 (1941) ....................................................................................13, 20, 21

Reetz v. Bozanich,
    397 U.S. 82 (1970) ................................................................20

Richards v. N.Y.S. Dep't of Corr. Servs.,
    572 F. Supp. 1168 (S.D.N.Y. 1983) ................................................31

Roberts v. U.S. Jaycees,
    468 U.S. 609 (1984) (O'Connor, J. concurring) ...........................40

Ruiz v. Comm'r of Dep't of Transp.,
    679 F. Supp. 341 (S.D.N.Y. 1988) ................................................35

Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
    547 U.S. 47 (2006)) ................................................................39

Samuels v. Mackell,
    401 U.S.66 (1971) ................................................................14

SEC v. Brigadoon Scotch Dist. Co.,
    480 F.2d 1047 ................................................................25

SEC v. Nat'l Sec., Inc.,
    393 U.S. 453 (1969) ................................................................40

Simmonds v. INS,
    326 F.3d 351 (2d Cir. 2003) ................................................28, 30

Sorrell v. IMS Health Inc.,
    131 S. Ct. 2653 (2011) ................................................39, 41

Spargo v. N.Y. State Comm'n on Judicial Conduct,
    351 F.3d 65 (2d Cir. 2003) ................................................17

Sprint Commc'ns, Inc. v. Jacobs,
    134 S. Ct. 584 (2013) ("Sprint") ................................14, 15, 16

State Bd. of Ins. v. Todd Shipyards Corp.,
    370 U.S. 451 (1962) ................................................................42

Tenet v. Doe,
    544 U.S. 1 (2005) ................................................................13

Trans Union Corp. v. FTC,
    245 F.3d 809 (D.C. Cir. 2001) ................................................35

Trotman v. Palisades Interstate Park Comm'n,
    557 F.2d 35 (2d Cir. 1977) ................................................30

U.S. Dep't of Treasury v. Fabe,
    508 U.S. 491 (1993) ................................................41, 45

U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.,
   508 U.S. 439 (1993) ..........................................................................................23

U.S. v. Constr. Prods Research, Inc.,
   73 F.3d 464 (2d Cir. 1996)...............................................................................29

U.S. v. Lachman,
   387 F.3d 42 (1st Cir. 2004) ..............................................................................35

U.S. v. Leon,
   203 F.3d 162 (2d Cir 2000)...............................................................................23

U.S. v. Salerno,
   481 U.S. 739 (1987) ..........................................................................................38

United Fence & Guard Rail Corp. v. Cuomo,
   878 F.2d 588 (2d Cir. 1989)..............................................................................20

United States v. Farhane,
   634 F.3d 127 (2d Cir. 2011)..............................................................................33

United States v. Petrillo,
   332 U.S. 1 (1947) ..............................................................................................33

United States v. Powell,
   423 U.S. 87 (1975) ............................................................................................33

United States v. Rowlee,
   899 F.2d 1275 (2d Cir. 1990).............................................................................43

United States v. Stevens,
   559 U.S. 460 (2010) ..........................................................................................38

United States v. Sun & Sand Imports, Ltd.,
   564 F. Supp. 1402 (S.D.N.Y. 1983) ................................................................35

United States v. Williams,
   553 U.S. 285 (2008) ..........................................................................................33

University Club v. New York,
   842 F.2d 37 (2d Cir. 1988)...........................................................................4, 17

Va. Office for Prot. & Advocacy v. Stewart,
   131 S. Ct. 1632 (2011).......................................................................................20

W& S Life Ins. Co. v. State Bd. of Equalization,
   451 U.S. 648 (1981) ..........................................................................................40

Ward v. Rock Against Racism,
   491 U.S.781 (1989) ...........................................................................................33

<u>Wash. State Grange v. Wash. State Republican Party</u>,
    552 U.S. 442 (2008) ................................................................... 38

<u>Waters v. Churchill</u>,
    511 U.S. 661 (1994) ................................................................... 39

<u>Will v. Michigan Dept. of State Police</u>,
    491 U.S. 58 (1989) .................................................................... 31

<u>Williams v. Lambert</u>,
    46 F.3d 1275 (2d Cir. 1995) ...................................................... 20

<u>Wilton v. Seven Falls Co.</u>,
    515 U.S. 277 (1995) ................................................................... 21

<u>Younger v. Harris</u>,
    401 U.S. 37 (1971) ..................................................... 13, 14, 15, 16, 17

<u>Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi</u>,
    215 F.3d 247 (2d Cir. 2000) ........................................................ 1

**Federal Statutes**

15 U.S.C.
    §§ 1011, <u>et. seq</u> ............................................................ 16, 39, 44
    §§ 1011-15 ........................................................................ 18, 19
    § 1012(a) ............................................................................. 45
    § 1012(b) ............................................................................. 45

42 U.S.C.
    § 1983 ............................................................................ 30, 31

28 U.S.C.
    § 2201(a) ......................................................................... 13, 21

**State Statutes**

New York Civil Practice Law and Rules Article 78 ........................... 4, 17, 23

New York Financial Services Law ("FSL")

    § 201(b) ...................................................................... 3-4, 6, 31
    § 301 ................................................................................ 3, 27
    § 304 ............................................................................. 3, 4, 27
    § 305 ................................................................................ 3, 27
    § 306 ................................................................................ 3, 27
    § 308 .................................................................................... 4
    § 404 ................................................................................ 3, 27
    § 408 ................................................................................ 3, 27

New York Insurance Law ("Ins. Law")

§ 109(a)......................................................................................................15
§ 201 .............................................................................................................3
§ 1101(b)(1)...........................................................................................passim
§ 1101(b)(2)(E) .............................................................................................6
§ 1102.........................................................................................................36
§ 1102(a)..........................................................................................4, 7, 25
§ 1104 ...........................................................................................................6
§ 1212 ...........................................................................................................4
§ 1309 ...........................................................................................................6
§ 1313 ...........................................................................................................6
§ 1501(a).......................................................................................................8
§ 1506(c)(1)...................................................................................................8
§ 1509 ...........................................................................................................8
§ 1609 ...........................................................................................................6
§ 2101(a).......................................................................................................5
§ 2101(c).......................................................................................................5
§ 2101(k)(1)...................................................................................................5
§ 2101(k)(8)...................................................................................................5
§ 2102(a)..........................................................................................5, 26, 33

§ 2117(a).......................................................................................................5
§ 2402 ...........................................................................................................8
§ 2405 ...........................................................................................................8

**State Regulations**

11 NYCRR
§ 1.5 .....................................................................................................8, 35
§ 2.5 ...............................................................................................8, 35, 36

## Preliminary Statement

Defendants New York State Department of Financial Services (the "Department" or "DFS")[1] and Benjamin M. Lawsky, in his official capacity as Superintendent of Financial Services (the "Superintendent"), submit this memorandum of law, with the accompanying Declaration of Christopher B. Mulvihill, Esq., dated May 16, 2014 ("Mulvihill Dec."), in support of their motion to dismiss the complaint of plaintiff American International Group, Inc. ("AIG"), dated April 3, 2014 (the "complaint" or "Compl."), pursuant to Fed. R. Civ. P 12(b)(1) and (6).[2]

This lawsuit is an attempt by AIG to use the powers of a federal court to interfere with the ongoing DFS investigation of AIG under the New York Insurance Law ("Ins. Law") and Financial Services Law ("FSL"). The investigation relates to, among other things, AIG's potential liability for unlicensed insurance business by its subsidiaries and affiliates in New York, unlicensed insurance agent activity, and misrepresentations and misleading omissions made to the former Insurance Department, including statements made by AIG's former subsidiary, American Life Insurance Company ("ALICO"). Plaintiff seeks a declaration that the application of two provisions of the Insurance Law to it would be unconstitutional, and an injunction against "commencing or continuing any proceeding (administrative or otherwise)" based on the marketing of ALICO's insurance products. However, the investigation of AIG is not complete,

---

[1] DFS was created by transferring the functions of the New York State Banking Department and the New York State Insurance Department into a new agency. This transfer of functions became effective on October 3, 2011. For the purposes of this memorandum of law, the term "DFS" is generally used to refer to both the present Department, and the New York State Insurance Department.

[2]   On a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may resolve any disputed facts by referring to evidence outside of the pleadings. Makarova v. United States, 201 F.3d 110,  113 (2d Cir. 2000 ) Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 181 n.11 (E.D.N.Y. 2012) (motion to abstain is addressed under Rule 12(b)(1)). Accordingly, the Mulvihill. Dec. is offered solely in support of the branch of this motion made under Fed. R. Civ. P. 12(b)(1), except for exhibits A to G thereto, which have been annexed to the Mulvihill. Dec. for the Court's convenience, and which are public records and may therefore also be considered  under Fed. R. Civ. P. 12(b)(6). Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369  F.3d 212, 217 (2d Cir. 2004).

and it remains to be seen what statutory violations, if any, would be charged.  The present case thus is a textbook example of a suit where a federal court need not and should not exercise jurisdiction.

First, as set forth in Point I, the Court should abstain.  AIG seeks to have this federal court interfere - indeed, halt – DFS's pending quasi-criminal state proceeding investigating AIG's potential violation of state insurance laws.   This is the textbook case for <u>Younger</u> abstention. The Court should also abstain under both the <u>Burford</u> and <u>Pullman</u> doctrines because this case raises significant and broad issues of state insurance policy, and would require the Court to resolve threshold, and potentially dispositive, issues of State law which could moot all plaintiff's constitutional challenges.   Even if the Court were to find, somehow, that these traditional abstention doctrines did not apply, it should still decline to hear this case pursuant to its broad discretion under the Declaratory Judgment Act.

Second, as set out in Point II, no justiciable case or controversy is present here because the Department has not yet completed its investigation of AIG or identified the specific factual grounds and legal bases for AIG's potential liability. In fact, the potential administrative charges against AIG relating to ALICO (and/or other AIG affiliates), and other related issues, could go well beyond the two statutory provisions challenged in this action. Accordingly, plaintiff lacks not only an injury in fact, but also an injury that would be redressed by a decision on its claims. Moreover, further factual development (to identify the AIG conduct that would subject it to liability, as well as the provisions  under which it would eventually be charged), is necessary to avoid what might otherwise amount to an advisory decision -- a ruling on legal charges never made relating to conduct with which AIG may never be charged. Resolution of plaintiff's claims at this time by a federal court is therefore neither appropriate nor necessary. Lastly, as set out in

2

Point III, under Fed. R. Civ. P. 12(b)(6), the complaint, on examination of the relevant law as it applies to plaintiff's allegations, fails to state a claim upon which relief may be granted.

**Statement of the Case**

**A.      Legal Background**

        **1.      Investigative and Administrative Proceedings Under the Financial Services Law and Insurance Law**

New York's Superintendent is assigned the duty and power to oversee the market for financial products in New York for the good of the State's economy, and is vested with the broad power to "take such actions as the superintendent believes necessary" to, <u>inter</u> <u>alia</u>:

> (1) foster the growth of the financial industry in New York and spur state economic development through judicious regulation and vigilant supervision;
> ***
> (6) eliminate financial fraud, other criminal abuse and unethical conduct in the industry . . . .

FSL § 201(b). <u>See also</u> Ins. Law § 201. Where the Superintendent has reason to believe that the laws of the State are being violated, the FSL grants the Superintendent powers concomitant with the statute's duties and goals, including the power of investigation and subpoena, and the ability to hold hearings and administratively determine and sanction violations of the Insurance, Banking and Financial Services Laws. <u>See</u> FSL §§ 301, 304, 305, 306, 404, 408. If a charging document is issued, <u>see</u> FSL § 304, the Department follows the procedures set out in the New York State Administrative Procedure Act ("SAPA"), which afford a charged entity notice of the charge, and an opportunity to be heard, to present evidence, and to cross-examine witnesses against it. FSL §§ 304; 305(a); 305(d). The final determinations in such administrative proceedings are subject to judicial review in New York Supreme Court pursuant to New York CPLR Article 78. <u>See</u> CPLR 7803; FSL § 308. Constitutional challenges to the statutes as applied to the parties may be raised during the administrative proceedings, and in any Article 78

3

petition that follows a final administrative determination.  University Club v. New York, 842 F.2d 37, 40 (2d Cir. 1988); Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 71 (2d Cir. 1990).

### 2.      New York's Licensing Requirements

In furtherance of the goals of the Insurance Law, see FSL § 201(b), New York requires insurance companies and their agents who operate within New York to be licensed, and empowers the Superintendent to enforce those requirements.   With regard to insurers, Insurance Law § 1102(a) provides that "no person, firm association, corporation, or joint-stock company, shall do an insurance business in this state unless authorized by a license. . . ." This applies not only to New York incorporated ("domestic") insurers, but to foreign (incorporated in another state) or alien (incorporated in another country) insurers doing an insurance business in New York. See Ins. Law § 1106.

With regard to brokers and agents (collectively referred to as "producers"),[3]   Insurance Law § 2102(a) provides that "no person, firm, association or corporation shall act as an insurance producer . . . without having authority to do so by virtue of a license issued and in force pursuant to the provisions of this chapter."   Insurance Law § 2101(k)(1), in turn, defines an "insurance producer" as an "insurance agent, insurance broker . . . or any other person required to be licensed under the laws of this state to sell, solicit or negotiate insurance."   Insurance agents are agents of insurers who act on their behalf to solicit, negotiate, or sell insurance.  Ins. Law § 2101(a).

---

[3]  Insurance agents are defined similarly to brokers in Insurance Law § 2101(a), the primary differences between agents and brokers being that agents are "appointed" by one or more insurers and must be paid by commission from an insurer, while brokers may act for a variety of insurers without appointment (because they are technically agents of the insured) and may be paid by both a commission from the insurer and a fee from the insured.  Mere advertising in the state however, does not make one a broker or agent. Ins. Law § 2101(k)(8).

Not only is unlicensed insurance business, brokerage and agency forbidden, but aiding an unlicensed insurer in "soliciting, negotiating or effectuating" business within the state on its behalf is also prohibited, subject to certain exceptions not applicable here.  Ins. Law § 2117.[4] Thus, acting as an insurance broker or agent in New York by soliciting or negotiating the sale of insurance without a license is not authorized, even if the insurer represented by the unlicensed broker or agent is otherwise authorized to do business in New York. Similarly, negotiating or soliciting in New York the purchase of insurance on behalf of an unauthorized insurer is illegal (even if the broker or agent is licensed).

The licensing requirements of New York law are intended to promote the soundness and integrity of its insurance markets for the benefit of the State's economy as a whole, and to ensure that insurers, producers, and other entities doing business within the State conform to standards of financial soundness, responsibility, and honesty.  FSL § 201 (b).  See, e.g., Ins. Law §§ 1104 (permitting Superintendent to revoke a foreign or alien insurer's license if, after notice and hearing, the Superintendent finds that the licensed insurer "has failed to comply with any requirement of law, and if in his judgment such revocation is reasonably necessary to protect the interests of the people of this state"); 1212 (requiring insurers to render themselves subject to New York jurisdiction by appointing the Superintendent as their agent for service of process); 1309 (permitting the Superintendent to revoke license of insolvent foreign or alien insurers); 1313 (requiring accurate disclosure of financial condition of insurers and holding companies);

---

[4] Ins. Law § 2117(a) provides that:

> No person, firm, association or corporation . . .shall in this state act as agent for any insurer. . .
> which is not licensed or authorized to do an insurance . . .business in this state, in the doing of any
> insurance . . . business in this state or in soliciting, negotiating or effectuating any insurance,. . . or
> shall in this state act as insurance broker in soliciting, negotiating or in any way effectuating any
> insurance, . . ., or in placing risks with, any such insurer . . .or shall in this state in any way or
> manner aid any such insurer . . . in effecting any insurance . . . contract.

2103, 2104 and 2105 (setting out requirements for licensing of insurance agents and brokers); 2110(a)(4) (permitting the Superintendent to revoke or suspend licenses of agents or brokers who, <u>inter alia</u>, use fraudulent, coercive or dishonest practices, or demonstrate incompetence, untrustworthiness, or financial irresponsibility).

### 3.    Insurance Law §§ 1101(b)(1) and 1102(a)

AIG challenges the application by DFS of two statutory provisions to its former subsidiary, ALICO. Specifically, plaintiff challenges the DFS interpretation of the term "doing an insurance business in this state" under Insurance Law § 1101(b)(1) and § 1102(a). AIG claims that DFS's interpretation of these terms so as to require licensing of its former subsidiary ALICO, is incorrect, or, alternatively, if correct, is unconstitutional.[5] Plaintiff alleges that the language of § 1101(b)(1) must instead be read to restrict the licensing requirement in § 1102(a) solely to entities selling, or seeking to sell, insurance to New York residents. DFS's long-standing position, as set out in the Consent Order dated March 31, 2014 ("Consent Order"), annexed to the Complaint as Exhibit A, and in Opinions issued by it to aid the public, including to ALICO, in 2009 (Mulvihill Dec. ¶ 4, Ex. A), is that the clause on which plaintiff relies requires insurers, and others, in New York who solicit and negotiate insurance business in New

---

[5] Section 1101(b)(1) provides, <u>inter alia</u>, that :

       1) . . . <u>any of the following acts in this state</u>, effected by mail from outside this state or otherwise, by any person, firm, association, corporation or joint-stock company <u>shall constitute doing an insurance business in this state</u> and shall constitute doing business in the state within the meaning of section three hundred two of the civil practice law and rules:

         (A) <u>making, or proposing to make, as insurer, any insurance contract</u>, including either issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein, or solicitation of applications for any such policies or contracts;

                        ***

         (D) <u>doing any kind of business</u>, including a reinsurance business, specifically <u>recognized as constituting the doing of an insurance business</u> within the meaning of this chapter;

<u>Id.</u> (emphasis added).

6

York to be licensed.  See also Mulhivill Dec. Exs. A-F (DFS advisory opinions issued to public reflecting long-standing position of DFS).

### 4.    Restrictions on the Activities of Holding Companies

In addition to regulating insurers and producers, DFS also regulates "holding companies" such as AIG, and "controlling persons" of insurance companies operating within New York, both defined under Insurance Law § 1501(a).  Mulvihill Dec. ¶ 11.  AIG is an insurance holding company -- it is not a New York-authorized insurer, although it owns many such insurers. Holding companies and their officers and directors must be "trustworthy."  Holding companies that demonstrate their untrustworthiness may be guilty of violations of the law.  Ins Law. § 1506(c)(1).  Moreover, holding companies may not take actions, or have other persons or entities within the holding company system take such actions, on behalf of a controlled insurer, which that entity could not legally take for itself, or which constitute a "deceptive act or practice."  Ins. Law §§ 1509, 2402, 2405.

### 5.    Opinions

Under 11 NYCRR §§ 1.5 and 2.5, as a service to the public, DFS may issue opinions to the public about the application of the Insurance Law to particular questions posed to DFS ("Opinions").  Over the years, many insurers and producers have sought Opinions related to the issue raised here: whether a foreign or alien out-of-state insurer soliciting, marketing, or having others act as a producer for its insurance products within New York, is required to be licensed if the prospective insureds are not New York residents, and/or the risk insured is not located in New York.  And DFS has consistently responded, including to ALICO, who made such an inquiry in 2009, that such insurers are "doing an insurance business" within the State and therefore must be licensed.  Mulvihill Dec. Exs. A-F.

B.      The ALICO Opinion, Consent Order and Current Investigation of AIG

In 2009, ALICO, while operating as a subsidiary of AIG, made intentional misrepresentations and omissions to the Department concerning its insurance business activity in New York.  On July 14, 2009, ALICO's in-house and outside counsel made a presentation to then Acting Superintendent of Insurance Kermitt Brooks.  The presentation materials specifically stated that, with respect to ALICO: "No Insurance Operations Conducted in New York." Mulvihill Dec. ¶ 13   .

Following that presentation, ALICO by letter requested an Opinion from DFS in connection with a potential sale of ALICO by AIG.  In connection with its request, ALICO, which is not licensed as an insurer in New York, represented that the functions performed in New York on its behalf with regard to its insurance business did not and would not include, among other things,  solicitation of insurance business with potential customers.  Mulvihill Dec. ¶¶ 13-14.  Such activities, as set out above, when performed within this State, have long been understood by the Department and the insurance industry to require licensing.  Mulvihill Dec., Exs. A-F.

In response to ALICO's letter, the Department requested additional information regarding the insurance business activities of ALICO.  However, in a letter to the Department dated September 4, 2009, ALICO refused to provide the requested information, citing "practical" hurdles in specifying the employees' specific responsibilities.  Mulvihill Dec. ¶ 14   .

ALICO then received the requested Opinion, dated November 23, 2009, that unambiguously reflected DFS's interpretation of the law (the "ALICO Opinion") (the public version of this opinion is available at *http://www.dfs.ny.gov/insurance/ogco2009/rg091104.htm*). Mulvihill Dec. ¶ 15, Ex. A.  In the ALICO Opinion, the Department also emphasized that merely

8

acting for or aiding an unlicensed or unauthorized insurer is also a violation of the Insurance Law. At that time ALICO and AIG were also lobbying for changes to the Insurance Law as it applied to unauthorized entities soliciting and brokering insurance business in New York, although the lobbying efforts were unsuccessful and did not result in any change in the law. Mulvihill Dec. ¶ 19, Ex. J

On March 8, 2010, AIG announced an agreement with MetLife, Inc., ("MetLife") to sell ALICO and Delaware American Life Insurance Company ("DelAm") to MetLife for $15.5 billion. On November 1, 2010, MetLife completed its acquisition of ALICO and DelAm for $16.2 billion, consisting of $7.2 billion in cash and $9 billion in MetLife equity and other securities (the "Acquisition"). Compl. ¶ 10; Mulvihill Dec. ¶ 18.

In 2011, after receiving information indicating that the factual representations with regard to ALICO's in-state operations made to DFS were false and that ALICO was, in fact, conducting insurance business in New York without a New York license, DFS commenced an investigation of AIG, ALICO, DelAm, and MetLife and various other affiliated entities for violations of the Insurance Law. Mulvihill Dec. ¶ 20. ALICO, DelAm, and MetLife subsequently settled with DFS, as documented in the Consent Order, as they did with the New York County District Attorney (the "DA") who was investigating related charges.[6] The investigations of AIG by both DFS and the DA continue. Id. ¶ 11.

As AIG asserts in the complaint and as the Consent Order specifies, ALICO was marketing, soliciting and negotiating the sale of insurance products in New York with representatives of multinational companies with offices in New York through the General Management Division ("GMD"). Compl. ¶¶ 10, 28-30; see Consent Order ¶ 5 (discussing role

---

[6] See DA Press Release relating to settlement with ALICO, DelAm, and MetLife of claims on unlicensed insurance business and filing of false instruments with DFS, available at *http://manhattanda.org/press-release/da-vance-announces-deferred-prosecution-agreement-metlife-insurance-company-resolve-in*.

of AIG's GMD, which later became MetLife's "Global Employee Benefits Group" and its location at 70 Pine Street in Manhattan). The complaint and attached Consent Order assert that ALICO's marketing and solicitation of foreign insureds was centered in New York, and that it met with representatives of those multinational companies in New York for the purpose of soliciting, marketing, and negotiating group insurance policies to be issued and delivered to the multinationals' affiliates, as well as unaffiliated companies abroad. Id. ¶¶ 9, 29, 30, 33. See also Consent Order ¶ 16 (b), (c), (e), (g), (h), (k), (i).[7]   Neither ALICO nor GMD was licensed in New York. Id. GMD was responsible for soliciting, negotiating and selling insurance to multinational companies with New York offices, such as Citigroup, General Electric, and Pepisco on behalf of DelAm and ALICO. Mulvihill Dec. ¶ 12 .

AIG is not a party to the Consent Order, nor did it otherwise settle with DFS or the DA. Mulvihill Dec. ¶ 23. Accordingly, at present, DFS and the DA continue to investigate AIG to determine whether, on what statutory basis, and to what extent, AIG may be chargeable with some or all of the alleged behaviors and violations of law described in the Consent Order, as well as with any additional related illegal behaviors undertaken by AIG, its divisions, or its former subsidiaries (including subsidiaries other than ALICO and DelAm). Mulvihill Dec. ¶¶ 11, 26, 27. Indeed, the subpoenas served on AIG are not restricted to the conduct described in the Consent Order, and extend to transactions and parties that were not the subject of that agreement. Mulvihill Dec. ¶¶ 24,25.

DFS has not completed its factual investigation, or served or filed any charging document, and would not do so until the present investigation of AIG has been concluded. Mulvihill Dec. ¶¶ 26-27. As such, DFS has been attempting, despite AIG's current legal attack

---

[7] Thus, the complaint alleges, and thereby admits, that the statement by ALICO counsel to the Department in 2009 that "no solicitation" was taking place in New York on ALICO's behalf was wholly false.

on its investigation, to undertake and complete its investigation of AIG to determine whether administrative charges are appropriate, and to gather evidence for any administrative hearing, to the extent DFS ultimately determines it would be appropriate.   In any circumstances, the determination of whether or not to bring charges against AIG in an enforcement proceeding will depend on review of the information received in response to administrative subpoenas, including earlier subpoenas served on AIG, MetLife, ALICO, and DelAm, as well as on considerations of appropriate insurance policy and enforcement in New York.   Mulvihill Dec. ¶ 27.

## Argument

### POINT I

### THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER AIG'S ATTEMPT TO PREVENT DFS FROM INVESTIGATING IT AND ENFORCING THE INSURANCE LAW

In bringing this lawsuit, AIG asks this federal court to inject itself into an incomplete investigation of AIG's activities within the State in an area in which the State's interests are compelling and paramount - the close regulation and supervision of the insurance industry operating within its borders, and the policing of illegal and/or dishonest conduct within that industry.   In its ongoing investigation of AIG, DFS is attempting to determine whether, and to what extent, New York law prohibits AIG's in-state activities.   AIG seeks not merely to halt (or severely curtail) that investigation, but to strike down portions of an interconnected series of regulations and statutory provisions governing the State's power to regulate insurance business conducted wholly within the State.   In seeking this relief, plaintiff necessarily is asking the Court to determine that New York often <u>may not regulate</u> (or, apparently, even <u>investigate</u>) insurance companies and agents who conduct much, if not all, of their business within New York.   The premature intervention sought here would increase friction between the state and federal

systems, and encroaches unnecessarily on an area of policy assigned to the State.   See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-19 (1996) (federal courts should decline to exercise their general duty to exercise jurisdiction, "where denying a federal forum would clearly serve an important countervailing interest … for example where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations', or 'wise judicial administration'") (citations omitted).

Three "traditional categories of abstention" set forth by the Supreme Court apply directly to this case: those derived from Younger v. Harris, 401 U.S. 37 (1971), Burford v. Sun Oil Co., 319 U.S. 315 (1943), and R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941). As further set forth below, even if the Court were to determine that none of these doctrines applies, it should nonetheless decline to exercise its permissive jurisdiction under the Declaratory Judgment Act. 28 U.S.C. § 2201(a).

## A.   **Younger Abstention Applies**

The Supreme Court has noted that whether a federal court should abstain under Younger "represents the sort of 'threshold question' [it] ha[s] recognized may be resolved before addressing jurisdiction." Tenet v. Doe, 544 U.S. 1, 6 n.4 (2005).   The Younger abstention doctrine "exemplifies one class of cases in which federal court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013) ("Sprint") (emphasis added).   The need for federal abstention in such circumstances "was 'reinforced' by the notion of 'comity, that is, a proper respect for state functions.'" Id. (quoting Younger, 401 U.S. at 44). Younger abstention is required where there are "particular state civil proceedings that are akin to criminal prosecutions," such as "civil enforcement proceedings," Sprint, 134 S. Ct. at

588, and it applies not just to requests to enjoin the state proceedings, but also to requests for declaratory relief that would tend to affect or interfere with state proceedings.  Hansel v. Town Court of Springfield, 56 F.3d 391, 393 (2d Cir. 1995) (citing Samuels v. Mackell, 401U.S.66 (1971)).

When there is a quasi-criminal state proceeding, such as a civil enforcement action, federal abstention is required in the preliminary investigative stages of the state proceeding as well: "[c]ourts in this Circuit have … routinely applied Younger where investigatory subpoenas have been issued." Mir v. Shah, No. 11 Civ. 5211 (BSJ), 2012 U.S. Dist. LEXIS 174685, at *6 (S.D.N.Y. Dec. 4, 2012).  As the court explained in J. & W. Seligman & Co. v. Spitzer, No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881, at *14-17 (S.D.N.Y. Sept. 27, 2007), the issuance of subpoenas in connection with a state investigation of a plaintiff's allegedly illegal activities is considered both a "commencement" and an integral part of that state proceeding for purposes of Younger abstention because "the information sought may be used to initiate civil or criminal proceedings against Plaintiffs. …  Moreover, the contested subpoenas serve a similar purpose to subpoenas in criminal matters. They are an integral part of a potential proceeding against Plaintiffs, and without such subpoenas, the Attorney General seldom could amass the evidence necessary to commence fraud actions." See also Cuomo v. Dreamland Amusements, Inc., No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432, at *28-29 (S.D.N.Y. Sept. 22, 2008) ("Because Younger abstention is rooted in principles of federalism and comity, and the state's interest in this case in investigating and possibly prosecuting those who commit crimes within its borders implicates those principles, the subpoenas sufficed to initiate an ongoing state proceeding"). Accord, e.g., Hip-Hop Summit Action Network v. N.Y. Temp. Comm'n on Lobbying, No. 03 Civ. 5553, 2003 U.S. Dist. LEXIS 21229, at *5-8 (S.D.N.Y. Nov. 25, 2003); Mason v. Dep't Disciplinary Comm., 894 F.2d 512, 514-15 (S.D.N.Y. 1990).

As set forth above, the law is clear that Younger abstention applies to civil enforcement proceedings, whether in the investigative stage or beyond, that are "initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act." Sprint, 134 S. Ct. at 592  Here, AIG seeks to enjoin an ongoing state investigation that it alleges will result in a civil enforcement proceeding. Compl. ¶ 53.  According to AIG's own allegations, DFS is investigating potential violations of the Insurance Law and "seeks to impose substantial monetary penalties on AIG for the purportedly illegal marketing activities" at issue.  Compl. ¶¶ 37-39. Moreover, all violations of the Insurance Law are misdemeanors, unless they constitute felonies. Ins. Law § 109(a). Younger abstention is therefore required; the underlying state proceeding was initiated by "a state actor," involves an "investigation," and may result in quasi-criminal enforcement to "sanction the federal plaintiff...for some wrongful act." Sprint, 134 S. Ct. at 588, 592.[8]

The Second Circuit recently held that courts are to apply a "categorical approach" to Younger abstention, and that such abstention is required whenever a federal plaintiff is seeking to enjoin a pending state quasi-criminal proceeding. Neroni v. Becker, No. 13-263, 2014 U.S. App. LEXIS 3167, at *3 (2d Cir. Feb. 21, 2014) (summary order) (holding that the Supreme Court's decision in Sprint "rejected th[e] three-part test [derived from the Middlesex case] in favor of a categorical approach" to Younger abstention). This Court thus need proceed no further - it should

---

[8]  Indeed, AIG effectively concedes that the DFS proceeding at issue is "akin to a criminal prosecution" – and therefore entitled to deference under Younger – by premising its due process claim on a standard relevant only to civil statutes that are quasi-criminal in nature. Complaint ¶¶ 49-50.   The Second Circuit has noted, this "person of ordinary intelligence" standard alleged by plaintiff applies only "[w]hen a civil statute imposes penalties that, although civil in description, are penal in character," in which case "the statute is sometimes deemed 'quasi-criminal' and subjected to stricter vagueness review."  Advance Pharm. Inc. v. United States, 391 F.3d 377, 396 (2d Cir. 2004) (citations omitted).

abstain, and permit the State investigation and any civil enforcement proceeding to go forward without interference.

Regardless, the same conclusion would be reached if the Court were to apply the additional factors derived from Middlesex County Ethics Committee v. Garden State Bar Assoc., 457 U.S. 423 (1982), which ask: (i) whether there is an ongoing state proceeding; (ii) whether the state proceeding implicates important state interests; and (iii) whether the state proceeding provides an adequate opportunity to raise federal challenges. Sprint, 134 S. Ct. at 593 (citing Middlesex, 457 U.S. 423). First, as discussed above, there is an ongoing quasi-criminal state proceeding. Second, there is a paramount state interest in regulating the insurance industry operating within a state's borders. Both Congress, in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 et seq., and the Supreme Court, in too many opinions to list here, see, e.g., California State Auto. Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 109-10 (1951) (collecting cases), recognize the State's compelling interest in this regard.[9]  Moreover, where a global company such as AIG produced, either directly as agent or through its affiliated insurance companies, hundreds of millions of dollars of insurance business within the State (see Consent Order at p. 2), and its subsidiaries appear to have attempted to avoid licensing and oversight by the State and misrepresented their activities conducted within the State, New York has a significant and compelling interest in investigating AIG's conduct, and determining the extent to which it violates New York law.

Third, and finally, AIG will have ample opportunity to raise its federal constitutional challenges during any administrative hearings or judicial review of those proceedings that may

---

[9] AIG's contention that the State has an interest in regulating insurance companies and agents operating in the State only when those entities are selling insurance to a resident of the State (Compl. passim) is disposed of in Point III(A), infra.

follow the investigation.[10] AIG's constitutional challenge to the statutes, as they may be found to apply to its conduct, may not only be raised in the administrative forum, they are fully available to AIG on Article 78 review of any administrative determination, which can itself be appealed through the state court system. University Club; 842 F.2d at 40; Cecos Int'l, 895 F.2d at 71. And such claims would, as discussed below in Point II, have the benefit of being based upon an actual application of the Insurance Law rather than on speculation about what charges may be brought against AIG, and on what factual grounds.

It is hardly unusual for companies which find themselves potential targets of state-law prosecutions or enforcement proceedings to attempt to use a federal court to avoid further examination of, and potential sanction for, their conduct. This Court, however, should see through plaintiff's shopworn maneuvers, permit the state agency to do its job, and abstain under Younger.

**B.      Burford Abstention Applies**

Under the Burford abstention doctrine, a federal court "must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;' or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989). Abstention is warranted in such cases in order to "protect[] complex state administrative processes from undue federal interference." Id. at 362.

---

[10] If the Court applies the factors discussed in Middlesex, AIG bears the burden of proving that it has no adequate State forum for its claims. Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 78 (2d Cir. 2003).

The Second Circuit has identified three factors that a federal court should consider in determining whether or not to abstain under Burford: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." Hachamovitch v. Debuono, 159 F.3d 687, 697 (2d Cir. 1998) (citing Bethpage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1243 (2d Cir. 1992)). When a state has established an integrated system for regulating a matter of state interest and "where the decisive issue hinges entirely on the proper meaning and reach of those state statutes and regulations, a federal court should abstain in favor of the state's interpreting its own law." Berman Enters. v. Jorling, 3 F.3d 602, 608 (2d Cir. 1993).

The Second Circuit has already determined – for purposes of Burford abstention – that "New York State has a complex administrative and judicial system for regulating" the insurance industry. Levy v. Lewis, 635 F.2d 960, 963 (2d Cir. 1980). The Second Circuit has also found that insurance regulation is a matter of state concern because "[i]n the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, Congress mandated that regulation of the insurance industry be left to the individual states" and thereby "recognized the overriding interest of the States" in that area. Id. at 963-64. It is therefore without question that the first and third Burford factors support abstention here; "New York has set up a comprehensive plan of regulation of insurance companies" and that, "[i]n doing so, New York has legislated on a matter of special state concern – so declared by the federal McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15." Law Enforcement Ins. Co. v. Corcoran, 807 F.2d 38, 43 (2d Cir. 1986). As a result, "the administrative and judicial scheme erected by New York to regulate insurance companies...operates pursuant to an express federal policy of noninterference in insurance matters." Levy, 635 F.2d at 963. The policies

underlying <u>Burford</u> abstention are thus implicated in this case "[b]ecause New York provides 'a unified method for the formation of policy and determination of cases by the [Superintendent of Insurance] and by the state courts,' a method which would only be impaired by federal court intervention." <u>Law Enforcement</u>, 807 F.2d at 44 (quoting <u>Burford</u>, 319 U.S. at 333-34).

As to the second factor - the need to give one or another debatable construction to the statute - as noted above, AIG will have ample opportunity to raise its construction of the statutes in any administrative hearing that may be initiated or Article 78 review in state court.  Moreover, since AIG sold ALICO and DelAm to MetLife and AIG, there is clearly no urgent need for this Court to construe the statutes that AIG debates.

## C.     **<u>Pullman Abstention Applies</u>**

Abstention is further appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." <u>Colorado River Water Conservation Dist. v. U. S.</u>, 424 U.S. 800, 814 (1976) (collecting cases). <u>Accord</u> <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716-17 (1996); <u>Growe v. Emison</u>, 507 U.S. 25, 32 (1993) (if a state court determinations of state law could moot a federal constitutional issue, the federal court should defer its consideration of such federal claims). The goals of this doctrine, commonly referred to as "<u>Pullman</u> abstention," are "to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." <u>Lake Carriers' Ass'n v. MacMullan</u>, 406 U.S. 498, 511 (1972). <u>See</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17 n.9 (1987) ("the probability that any federal adjudication would be effectively advisory is so great that this concern alone is sufficient to justify abstention" under <u>Pullman</u>). <u>Pullman</u> abstention is thus particularly appropriate in cases involving matters of traditional state concern such as the regulation of the insurance industry. <u>Reetz v. Bozanich</u>, 397 U.S. 82, 86-87

(1970).  Pursuant to these significant considerations, when there is a "state-law issue that may be dispositive, federal courts should abstain under [Pullman]."  Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1644 (2011).

"Three basic conditions must be present to trigger Pullman abstention: 'First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.'"  Williams v. Lambert, 46 F.3d 1275, 1281 (2d Cir. 1995) (quoting United Fence & Guard Rail Corp. v. Cuomo, 878 F.2d 588, 594 (2d Cir. 1989)).  A court abstaining under Pullman should ordinarily dismiss without prejudice or stay and retain jurisdiction over federal claims so plaintiff has the option to return to federal court after preliminary state issues are resolved. American Trial Lawyers Ass'n, N.J. Branch v. N.J. Supreme Court, 409 U.S. 467, 469 (1973). See also Berman Enters., 3 F.3d at 608 (where determination of an unresolved issue of state-law would leave nothing to litigate in federal court, dismissal warranted under Pullman).

Pullman abstention is appropriate here.  AIG's complaint is premised on its claim that Insurance Law §§ 1101(b)(1) and 1102(a), properly construed, would permit certain conduct engaged in by ALICO, but that, as construed by DFS, these statutes prohibit that conduct. (Complaint ¶¶ 17-21, 36-47).  In addition, AIG affirmatively argues that these state statutes are unconstitutionally vague. (Id., ¶¶ 56-66).  Were the Court to find AIG's construction of the statutes to be correct - obviously a pure issue of state law - it would moot all AIG's constitutional challenges. This alone warrants Pullman abstention.  And any interpretation the Court gives to these statutes would inform the constitutional issues and potential decision on the merits in this case.  If the state courts, as final arbiter of the meaning of these state statutes, then reach a

different conclusion as to these statutes' meanings or their application to specific facts, this Court will have issued an advisory opinion and needlessly sowed confusion in regard to New York law and the scheme for regulation of the insurance industry.

**D.**     **In Any Event, the Court Should Exercise Its Broad Discretion Under the Declaratory Judgment Act And Decline to Exercise Jurisdiction**

Even if the Court were to determine that none of the three abstention doctrines set forth above apply here, it should still exercise its broad discretion under the Declaratory Judgment Act, and decline to hear this case.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis added).  The permissive language of the Declaratory Judgment Act has consistently been construed to give district courts broad discretion to refuse to exercise jurisdiction over a declaratory action otherwise properly lodged before them -- greater discretion than in the context of the abstention doctrine. See Wilton v. Seven Falls Co., 515 U.S. 277, 282-83, 287 (1995) (holding that discretion to hear a matter is greater under the Declaratory Judgment Act than abstention doctrine; "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants . . . the state's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface"); Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003).  See also Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298 (1943).

The Second Circuit has identified five factors to be considered before a court entertains a declaratory judgment action:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (v) whether there is a better or more effective remedy.

N.Y. Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006) (citation omitted).

These factors all weigh against the exercise of jurisdiction. First, the requested judgment would not necessarily "serve a useful purpose in clarifying or settling the legal issues involved" nor "finalize the controversy and offer relief from uncertainty." The underlying investigation involves a host of interrelated legal and factual issues relating to the application of Insurance Law to AIG's conduct that would not be resolved by the requested declarations, and any ruling here would, at best, resolve only a limited portion of the potential issues between the parties. This weighs strongly against the exercise of jurisdiction. Calderon v. Ashmus, 523 U.S. 740, 746-48 (1998); Pub. Serv. Comm'n v.Wycoff, 344 U.S. 237, 244-46 (1952)  In addition, this action is blatant procedural fencing -- an attempt to use a federal court to interrupt the State's investigation of AIG, and to prevent DFS personnel from determining what AIG did and considering how to apply New York's law to AIG's conduct. And, as set out above, the Court is being asked to issue a declaration that would intrude upon the State's process of regulating and supervising the insurance industry as it operates within its borders. Indeed, the declaratory relief sought would call into question New York's very ability to oversee and investigate large swaths of the insurance business conducted within the state, and, thus, have a sweeping effect "that would reach far beyond the particular case." Wycoff, 344 U.S. at 243.

21

Finally, as noted already, there is obviously a "better and more effective remedy" available here. Plaintiff can let the investigation proceed, assert its defenses in an administrative proceeding, and, if not satisfied with the resolution, can then file an Article 78 challenge in state court. The state court system is a more appropriate forum to address plaintiff's challenges to the construction and application of the State's insurance statutes and regulations and, unlike this federal court, the state court would have a factual record regarding how those statutes were actually applied to plaintiff's own conduct.

## POINT II

## THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER AIG'S CLAIMS

**A.    AIG Lacks Standing To Challenge The Constitutionality Of Insurance Law §§ 1101(b)(1) And 1102(a), And Its Claims Are Constitutionally Unripe**

Under Article III of the Constitution, the exercise of federal jurisdiction "depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions." U.S. v. Leon, 203 F.3d 162, 164 (2d Cir 2000) (quoting and citing U.S. Nat'l Bank v. Independent Ins. Agents of Am., Inc., 508 U.S. 439 (1993).[11]   Both the standing and ripeness doctrines are founded in the requirement that there exist a justiciable case or controversy before a federal court exercises jurisdiction.

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical."   Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

---

[11] A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). Thus, AIG bears the burden of demonstrating standing and ripeness. See, e.g., Marchi, 173 F.3d at 478.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted).[12]

Constitutional ripeness is closely related to the first, injury in fact, Lujan requirement. Nat'l Org.

for Marriage, Inc. v. Walsh, 714 F.3d 682, 688 (2d Cir.  2013).

Here there is no sufficient injury in fact -- no actual and imminent harm-- for Article III

standing or ripeness purposes. The Supreme Court has "repeatedly reiterated that threatened

injury must be certainly impending to constitute injury in fact, and that allegations of possible

future injury are not sufficient." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147

(2013)(collecting cases)(emphasis in original). Thus, where a law has not been administratively

applied to the plaintiff, and there is, consequently, no defined or identifiable injury to plaintiff, no

injury in fact and no constitutional ripeness exists. See, e.g., Entergy Nuclear Vt. Yankee, LLC v.

Shumlin, 733 F.3d 393, 430-31 (2d Cir. 2013) (claim was constitutionally unripe where action

challenged under Commerce Clause had not been finalized, preventing court from considering its

allegedly improper terms and effects).

Moreover, a pending investigation is manifestly not an injury in fact.  See, e.g.,  New

Alliance Party v. FBI, 858 F. Supp. 425, 432 (S.D.N.Y. 1994) (no justiciable controversy because

an investigation by the FBI does not constitute a "concrete injury"); see also AVCO Fin. Corp. v.

CFTC, 929 F. Supp. 714, 717 (S.D.N.Y. 1996) (denying motion for a preliminary injunction

against an investigation by the Commodity Futures Trading Commission because plaintiff failed

to show investigation was the source of any injury) (citing SEC v. Brigadoon Scotch Dist. Co.,

480 F.2d 1047, 1056 (2d Cir. 1973) ("Every person doing business and every investor knows

that government agencies conduct investigations for a variety of reasons, and most of them feel

the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a

---

[12] Accord, e.g., Jenkins v. U.S., 386 F.3d 415, 417 (2d Cir. 2004) (same, and noting further that the Declaratory Judgment Act did not expand the subject matter jurisdiction of the federal courts).

necessary hazard of doing business to be the subject of an inquiry by a government regulatory agency").

AIG has alleged no injury in fact. There is a theoretical legal dispute over the authority of the agency, DFS, to enforce § 1102(a) as against ALICO, but there is no factually defined question for the Court to address with regard to AIG, since the investigation of AIG is ongoing, the factual record is not complete, charges against AIG may differ from the potential claims against the parties who settled as outlined in the Consent Order, and, in any event, as discussed below, DFS will not necessarily bring charges against AIG under §§ 1101(b)(1) and 1102(a), the statutes challenged here, relating to the conduct detailed in the Consent Order.  Moreover, before any penalties were assessed, AIG would be subject to an administrative enforcement proceeding pursuant to SAPA, as described above, in which plaintiff could present evidence, and call and cross-examine witnesses, and any determination would be reviewable by the state courts.  Thus, the potential injury alleged -- the assessment of penalties against AIG for violations of the Insurance Law -- is not "certainly impending" for Article III purposes.

In any event, the Court need not even reach the question of whether a constitutionally sufficient injury has been alleged, because the remaining two elements of the Lujan test, causation and redressability, are absent. Lujan, 504 U.S. at 560-61.  See Coalition of Watershed Towns v. U.S. EPA., 552 F.3d 216, 218 (2d Cir. 2008) (relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court).  See, e.g., Jacoby & Meyers, LLP v. Presiding Justices of the Appellate Div., 847 F. Supp. 2d 590, 591 (S.D.N.Y. 2012) (in constitutional challenge to rule governing attorney conduct, plaintiffs lacked standing where conduct they sought to engage in was potentially prohibited by multiple rules, some of which were not challenged in litigation; standing was absent because elements of causation and

redressability were absent), rev'd on other grounds, No. 12-1377-CV, 2012 U.S. App. LEXIS 24012 (2d Cir. Nov. 21, 2012).[13]

Investigation of AIG could uncover violations of other provisions that apply to AIG's conduct that are not challenged in this litigation. See, e.g., Ins. Law §§ 2102(a) (unlicensed agency); 1609, 2402, 2405 (misuse of holding company system to accomplish illegal acts); 1506(c)(1) (violation of trustworthiness requirement by holding company). Thus, there are a host of provisions that are not challenged in this case that could -- altogether independent of the provisions challenged -- warrant the imposition of penalties against AIG at the conclusion of the investigation and completion of administrative enforcement proceedings.

The injury that plaintiff alleges -- the possibility of fines against it -- therefore cannot be fairly attributed to the challenged statutes. Plaintiff cannot demonstrate that holding §§ 1101(b)(1) and 1102(a) unconstitutional as applied to ALICO, DelAm or MetLife in the Consent Order would remedy any alleged potential injury to AIG. See Jacoby & Meyers, 847 F. Supp. 2d at 591 ("the fundamental problem is this. Rule 5.4 is not the only provision of New York law that forecloses plaintiffs' [conduct]. But plaintiffs challenge only Rule 5.4").

**B.     AIG's Claims Are Prudentially Unripe**

Even if there were a "case or controversy" over which the Court could properly exercise its Article III jurisdiction, dismissal under the prudential ripeness doctrine would remain appropriate. The prudential ripeness doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs v. Gardner, 387 U.S. 136 (1967), overruled on other grounds

---

[13] The Second Circuit agreed with this holding but remanded to allow plaintiff another opportunity to amend.

by Califano v. Sanders, 430 U.S. 99 (1977); Nat'l Park Hospitality Assoc. v. DOI, 538 U.S. 803, 807-08 (2003).   In determining whether a declaratory judgment action is ripe, a court considers (1) the fitness of the issues for judicial review and (2) the injury or hardship to the parties of withholding judicial consideration.   Connecticut v. Duncan, 612 F.3d 107, 113 (2d Cir. 2010) (citing Abbott Labs, 387 U.S. at 148-49.[14]

### 1.   Fitness

Whether a declaratory judgment action is "fit" for determination turns on whether "consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to [apply and/or] enforce" the law at issue.   Nutritional Health Alliance v. Shalala, 144 F.3d 220, 225 (2d Cir. 1998). Where further factual development would facilitate the legal analysis, the court may decline to exercise jurisdiction.   Nat'l Hospitality Assoc., 538 U.S. at 811; Entergy, 733 F.3d at 430.  A claim is also unripe when a plaintiff has not exhausted administrative remedies, or failed to complete an administrative process, and judicial review would be benefitted by waiting for the agency's view on how best to interpret or apply a given rule to a specific set of facts.   Amer. Sav. Bank, FSV. UBS Fin. Servs, Inc., 347 F.3d 436, 440 (2d Cir. 2003).  These "ripeness principles . . . bear heightened importance when, as in the present case, the potentially unripe question presented for review is a constitutional question.  If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Connecticut, 612 F.3d at 113 n.3 (citation and quotation omitted).

---

[14] Both aspects of the "inquiry involve the exercise of judgment, rather than the application of a black-letter rule." Connecticut, 612 F.3d at 113 (citing Nat'l Park Hospitality Assoc., 538 U.S. at 814). The basic question before the Court in the context of a determination of prudential ripeness is whether  "[plaintiffs'] claims would better be heard now or at some point in the future." Simmonds v. INS, 326 F.3d 351, 359 (2d Cir. 2003).

Where an entity is being investigated by the government, but no enforcement activity has commenced against it, the suit challenging a potential legal claim to be raised after that investigation is generally deemed to be unfit for judicial determination, and therefore unripe. See, e.g., U.S. v. Constr. Prods Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); AVCO Fin. Corp., 929 F. Supp. at 720-22 (S.D.N.Y. 1996);  Benistar Employer Servs. Trust Co. v. United States, 2005 U.S. Dist LEXIS 43092, *25 (S.D.N.Y. 2005).[15]

AIG's claims with regard to Ins. Law §§ 1101(b)(1) and 1102(a) as applied to AIG are not fit for decision.  As set out above, there are no current enforcement charges against AIG under the challenged provisions.  There may never be any such charges, or charges may be brought on alternative legal grounds.  If such charges were brought, they would only be brought after investigation that clarifies AIG's role in, and responsibility for, a variety of potential illegal behaviors, not all of which are detailed in the Consent Order.   Very simply, determination of AIG's claims here might resolve nothing with regard to any charges eventually brought against AIG.  Under these circumstances, AIG's claim is unripe, and should be dismissed.

**2.    Hardship**

"The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." Simmonds, 326 F.3d at 360. See, e.g., Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733, 735-37 (1998) (adoption of federal forestry plan, which had been formally promulgated, and authorized logging in certain areas, did not pose hardship to plaintiff because additional administrative action was required before the plan fully authorized any actual

---

[15] Moreover, as with the analysis of standing, where, as here,  there are alternative bases for a prosecution or enforcement action other than the statute which the plaintiff seeks to challenge on constitutional grounds,  the action is prudentially unripe -- simply as a logical proposition -- because the legal issues framed by the complaint are "contingent on future events or may never occur. " New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008). See, e.g., Cuomo v. Dreamland Amusements, Inc., No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432, * 24-26 (S.D.N.Y. 2008).

logging. Although the plan made logging more likely, no "significant practical harm" was posed by the adoption of the plan, since various administrative steps remained before plan was put into effect. premature review of the plan could hinder agency efforts to refine its policies through administrative process, revisions, or application in practice, and consideration of the issue presented would embroil the courts in administrative plans in a way not generally suited to the judiciary).

As in Ohio Forestry, there exists no cognizable hardship to plaintiff if its claims based on the application of the Consent Order to ALICO are not now heard.   There is no agency enforcement or charging document, and no certainty that any such document may issue. Moreover, plaintiff has sold ALICO and DelAm (to MetLife), and there is no allegation that the former functions of the GMD are now carried on elsewhere at AIG.  As such, there is no real and imminent harm in waiting to address any issue relating to the claim in the complaint until the factual and legal bases for that claim actually exist.[16]

## POINT III

### AIG  HAS NOT PLED A VIABLE CLAIM THAT INSURANCE LAW §§ 1101(B)(1) AND 1102(A) ARE UNCONSTITUTIONAL

The present suit is properly dismissed under the abstention doctrines, considerations of judicial discretion, and for lack of subject matter jurisdiction under Rule  12(b)(1).  However, if

---

[16] The claims against DFS must also be dismissed. because the Eleventh Amendment bars suits in federal court against a state or one of its agencies, regardless of the relief sought, unless the state consents to be sued or Congress enacts legislation expressly overriding the state's Eleventh Amendment immunity.  Papasan v. Allain, 478 U.S. 265, 276 (1986); Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100-01 (1984).  New York has not consented to suit in federal court, Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977), and the provisions of 42 U.S.C. ' 1983 were not intended to override a state's immunity.  Quern v. Jordan, 440 U.S. 332, 343 (1979).  The State of New York's Eleventh Amendment immunity bars suits against the State in federal court for monetary relief, see, e.g., Ex parte State of New York , 256 U.S. 490, 497 (1921), as well as suits, such as the case at bar, seeking declaratory and/or injunctive relief.  Missouri v. Fiske, 290 U.S. 18, 27 (1933); Alabama v. Pugh, 438 U.S. 781 (1978) (per curiam).  Accordingly, this action must be dismissed against DFS.  Furthermore, neither New York nor its agencies may be sued pursuant to 42 U.S.C. § 1983, because they are not considered to be "persons" covered by those statutes.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989). Because § 1983 creates no claim for relief against the State or its agencies, AIG cannot maintain its complaint as against DFS.

it is not, it should be dismissed because plaintiff's constitutional claims fail to state viable claims for relief under Fed. R. Civ. P. 12(b)(6).

**A.     AIG's Claims Rest Upon The Spurious Notion That New York May Regulate Insurers and Agents Operating Within the State Only When They Sell Insurance Policies Covering New York Residents**

Plaintiff's claims are premised upon a fundamental misconception about New York's interest in the commercial activity conducted within its borders.  Plaintiff is wedded to the spurious notion that New York's only legitimate interest in regulating insurance companies and insurance producers operating inside New York arises when those companies issue insurance policies covering New York residents.  Compl. passim. This is simply wrong, primarily because it ignores "the vital distinction between acts done within and acts done beyond a State's jurisdiction." Hooper v. California, 155 U.S. 648, 659 (1895).  The operation of a business within a State is perhaps the single most fundamental basis for the State's regulation of its conduct. This is because the State has a compelling interest in preserving the integrity of its markets. See Ins. Law Art. 24; FSL § 201(b) (broad statutory powers of Superintendent are intended, inter alia, to "foster the growth of the financial industry in New York and spur state economic development through judicious regulation and vigilant supervision").  Thus, a state can regulate commercial activity occurring within its borders even when none of the parties to the transactions are residents of that state.  It can require companies and individuals to submit to its regulatory authority as a condition of conducting business within the state's borders.  And in fields such as insurance, it can require them to obtain an appropriate license before conducting such business. See Hall v. Geiger-Jones Co., 242 U.S. 539, 549-58 (1917). See generally A.S. Goldmen & Co. v. N.J. Bureau of Sec., 163 F.3d 780, 785-88 (3d Cir. 1999) (collecting cases).

As the A.S. Goldmen court explained, in upholding a New Jersey statute regulating securities brokers operating inside the state selling only to out-of-state buyers, "preventing New Jersey companies from offering suspect securities to out-of-state buyers helps preserve the reputation of New Jersey's legitimate securities issuers. States that have failed to monitor out-of-state sales by in-state broker-dealers have suffered in the past, as their legitimate broker-dealers suffered from association with suspect firms offering questionable securities." A.S. Goldmen, 163 F.3d at 788.  Thus, to the extent that plaintiff believes and alleges that New York cannot regulate, and has no interest, in regulating the actions of entities soliciting, marketing and negotiating insurance within its borders with in-state representatives of foreign entities, AIG is mistaken.

In addition, although plaintiff attempts to suggest otherwise, it is beyond peradventure that the factual basis for the current DFS investigation, and any future enforcement activity, occurred within New York State.  The activities at issue -- and the factual predicate for the DFS investigation -- are the direct marketing, solicitation, and negotiation of insurance policies in offices located in New York.  See Compl. ¶¶ 28-31; Consent Order ¶¶ 5, 16; Mulvihill Dec. ¶ 12. That marketing, solicitation and negotiation was directed at parties and/or their representatives also located in New York, even though insured parties and risks may have been located elsewhere.  Id.  Moreover, New York law clearly requires licensing of agents and brokers operating within its borders.  See Ins. Law § 2102(a).  Thus, plaintiff's allegation that DFS's investigation of activities in New York relating to the marketing and negotiation of group benefit insurance policies relating to risks located abroad necessarily involves extraterritorial application of New York law to conduct occurring outside New York could not be more wrong.

B.   **The Definition of "Doing An Insurance Business" Is Not Unconstitutionally Vague As A Matter Of Law**

The void for vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. United States v. Farhane, 634 F.3d 127, 136 (2d Cir. 2011); United States v. Williams, 553 U.S. 285, 304 (2008).   Some statutory ambiguity does not necessarily violate Due Process standards; "perfect clarity and precise guidance have never been required." Id., (quoting Ward v. Rock Against Racism, 491 U.S.781, 794 (1989)).   "The fact that [the Legislature] might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1975) (quoting United States v. Petrillo, 332 U.S. 1, 7 (1947)).   Rather, a vagueness challenge "may be overcome in any specific case where reasonable persons would know that their conduct is at risk." Maynard v. Cartwright, 486 U.S. 356, 361 (1988). Further, it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor Lines, Inc. v. U.S., 342 U.S. 337, 340 (1952).

Void for vagueness challenges to statutes, except in the overbreadth context, which does not apply here, as set out at pt. III(C), infra, are considered as applied.   See, e.g., Ass'n of Int'l Auto Mfrs., Inc. v. Abrams, 84 F.3d 602, 614 (2d Cir. 1996).   The Supreme Court has established a sliding scale, with civil statutes regulating economic conduct, or imposing economic burdens, viewed most liberally, for consideration of vagueness challenges. The Second Circuit has summarized this analysis:

> The degree of statutory imprecision that due process will tolerate "varies with the nature of the enactment and the correlative needs for notice and protection from unequal enforcement." . . . A civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms "'so vague and indefinite as really to be no rule or standard at all.'" . . . When a civil statute imposes penalties that,

"although civil in description, are penal in character," the statute is sometimes deemed "quasi-criminal" and subjected to stricter vagueness review . . . <u>Such a statute is deemed impermissibly vague if it fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly," or to "provide explicit standards for those who apply them."</u>

<u>Advance Pharm. Inc. v. United States</u>, 391 F.3d 377, 396 (2d Cir. 2004) (emphasis added, internal citations omitted).

Under these standards, where businesses face regulatory requirements, and possess the ability to plan ahead and the opportunity to seek guidance from the relevant administrative agency, they cannot complain of vagueness in state regulation. The opportunity to seek guidance from the agency -- which ALICO actually used in the present matter -- provides the "reasonable opportunity to know what is prohibited." <u>Id.</u> "Businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." <u>Vill. of Hoffman Estates</u>, 455 U.S. at 498.

This rule has been repeatedly applied to bar suits by businesses claiming an enactment is unconstitutionally vague when that business asked -- or even just had the opportunity to ask-- about the application of the law to their own activities. <u>See, e.g.</u>, <u>Barclays Bank Plc v. Franchise Tax Bd.</u>, 512 U.S. 298, 315-16 (1994) (ability to seek advance determination from California tax board of tax consequences of proposed action rendered void for vagueness challenge meritless under <u>Hoffman</u>); <u>Go Leasing v. Nat'l Transp. Safety Bd.</u>, 800 F.2d 1514, 1525 (9th Cir. 1986) ("[I]f there were any doubt, it is certainly reasonable to expect that Go Leasing would have made efforts to investigate or to inquire with the FAA to determine if its conduct fell outside the bounds of the regulation"); <u>JWJ Indus. v. Oswego County</u>, 538 Fed. Appx. 11, 12 n. 1 (2d Cir. 2013) (noting that plaintiffs had "received the County's interpretation of the provisions at issue"

32

in rejecting void for vagueness challenge); Trans. Union Corp. v. FTC, 245 F.3d 809, 817-19 (D.C. Cir. 2001) (rejecting vagueness argument because there was an "extremely clear process" to clarify the meaning of the Fair Credit Reporting Act as applied to plaintiff) (citation omitted); U.S. v. Lachman, 387 F.3d 42, 59 (1st Cir. 2004) (Export Administration Act not void for vagueness because "there was a formal process by which the defendant could have sought an advisory opinion"); Ruiz v. Comm'r of Dep't of Transp., 679 F. Supp. 341, 353 (S.D.N.Y. 1988) (where plaintiffs "made no effort to clarify the scope" of law, they "cannot justifiably rely on their own self-serving interpretation of the ordinance" when "City officials had publicly declared their own interpretation" and enforcement was consistent with the City's policy); United States v. Sun & Sand Imports, Ltd., 564 F. Supp. 1402, 1405 (S.D.N.Y. 1983) (rejecting vagueness challenge because the Consumer Product Safety Commission provides "pre-distribution advice concerning compliance with the regulation").

As noted above, insurers and insurance producers have long sought, and received, Opinions from DFS related to the issues raised here: whether an out-of-state insurer soliciting or marketing its insurance products within New York State, or having others act as a broker or agent for it within New York, is required to be licensed if the prospective insureds are not New York residents, and/or the risk insured is not located in New York.   And DFS has repeatedly responded, including to ALICO, that such insurers are "doing an insurance business" within the State and therefore must be licensed.  Mulvihill Dec. Exs. A-F.

ALICO approached the Department in 2009, informing it that ALICO "writes business outside the United States exclusively," and inquiring as to whether ALICO might "maintain an office in New York, even though it is not authorized to do business in this state?"  Mulvihill Dec.

Ex. A. [17]   The Department unequivocally responded that if ALICO were to solicit insurance business within the State without a license, that such solicitation would violate of Insurance Law § 1102:

> The general functions set forth in XYZ's July 21, 2009 letter, and ascribed to the various XYZ executives seem to fall within activities in New York that constitute "back office" functions, provided that there is no contact with the public, and so long as they are primarily ministerial in nature, and do not involve solicitation or sale of insurance, or any other activity proscribed by Insurance Law § 1102.

Id.

No vagueness claim can or should go forward here.   Not only did ALICO have a "reasonable opportunity" to understand the application of the statute to it, to the extent it had any questions, see 11 NYCRR § 2.5, but, as set out in the public record, and the Consent Order annexed to the complaint, it used that opportunity.[18] And ALICO was informed that solicitation of insurance business in New York via the New York office of AIG it proposed to occupy would require it to be licensed in New York.  AIG cannot now conceivably complain, long after the fact, that the statutory definition is unconstitutionally vague as applied to it, and this cause of action should therefore be dismissed.

**C.     No First Amendment Claim Is Stated**

**1.     Any Facial Challenge Would Fail**

Statutes are ordinarily challenged, and their constitutionality evaluated, "as applied" -- that is, the plaintiff contends that application of the statute to the plaintiff in the particular manner in which the government has applied it is unconstitutional. See, e.g., Diaz v. Paterson,

---

[17] http://www.dfs.ny.gov/insurance/ogco2009/rg091104.htm

[18]  ALICO appears to have used this opportunity to attempt to mislead the Department about its activities; but that was its choice, and has nothing to do with any purported "vagueness" of the statute.

547 F.3d 88, 101 (2d Cir. 2008). By contrast, to generally invalidate and render a statute unenforceable, the plaintiff must succeed in challenging the statute "on its face." Id. A facial challenge is a claim that a law is invalid "in toto" -- and therefore incapable of any constitutional application. Village of Hoffman Estates, 455 U.S. at 494 n.4 (1982).

AIG does not and cannot allege that the provisions challenged have been applied to AIG in an administrative enforcement proceeding, and it is uncertain at this stage of the investigation whether they will be. AIG also does not present any factual allegations concerning a specific instance of allegedly protected speech by it covered by the challenged statutes, or for which it has been held liable, rendering it impossible for the Court to determine whether the challenged statutes apply to that speech in the first place, or whether such application violates the First Amendment. Under these circumstances, its claim is not one "as applied." Kampfer v. Cuomo, 2014 U.S. Dist. LEXIS 1479, at **12-13 n.8 (E.D.N.Y. Jan. 7, 2014) ("[plaintiff] cannot make an as applied challenge to the SAFE Act's 'assault weapon' ban because it has not been applied to him"). Rather, as also set out above, both "[plaintiff's] claim and the relief that would follow . . . reach beyond the particular circumstances of [this plaintiff]." Doe v. Reed, 561 U.S. 186, 194 (2010). See Compl. ¶¶ 57-62, Prayer For Relief, A(ii). AIG's claim is thus, at best, one that the statute is facially invalid, and it must satisfy the standards for a facial challenge to the statutes under the First Amendment to obtain the broad declaration it seeks. Doe v. Reed, 561 U.S. at 194 (citing United States v. Stevens, 559 U.S. 460, 472-73 (2010)).

Facial challenges are strongly disfavored because claims of facial invalidity are often speculative, and thus risk a "premature interpretation of statutes on a factually bare bones record." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). To prevail, AIG must demonstrate that the Rule challenged is incapable of even a single valid application, and "the fact that [the Rule] might operate unconstitutionally under some

conceivable set of circumstances is insufficient to render [it] wholly invalid." U.S. v. Salerno, 481 U.S. 739, 745 (1987). Accord, e.g., Vill. of Hoffman Estates, 455 U.S. at 497. In the present matter, such a claim is obviously a non-starter. AIG does not, and could not seriously contend that the challenged statutes cannot validly apply to sanction any unlicensed insurers or third parties who sell policies in New York. Compl. passim. This concededly valid application of the statute is sufficient to defeat AIG's facial challenge to the statute.

The First Amendment also allows, in some contexts, a plaintiff to invoke the First Amendment's overbreadth doctrine to bring general claims challenging the constitutionality of a statute premised upon a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). But it is well-established that the First Amendment overbreadth doctrine does not apply to regulation of commercial conduct or commercial speech. Bates v. State Bar of Ariz., 433 U.S. 350, 380-81 (1977). Accord, e.g., Waters v. Churchill, 511 U.S. 661, 670 (1994); Vill. of Hoffman Estates, 455 U.S. at 496-97; Allstate Ins. Co. v. Serio, 261 F.3d 143, 153 n.17 (2d Cir. 2001). "Commercial speech is not as likely to be deterred as noncommercial speech, and therefore does not require the added protection afforded by the overbreadth approach." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 463 n.20.[19] Thus, AIG's First Amendment challenge to § 1101(b)(1) fails as a matter of law.

---

[19] Indeed, even if the overbreadth doctrine applied to commercial speech, and it does not, plaintiff's claim would fail. As discussed in text, the statutes are primarily directed towards commercial conduct, and "where conduct and not merely speech is involved the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Ohralik, 436 U.S. at 463 (quoting Broadrick, 413 U.S. at 615 ). It is much more than "legitimate" for the state to regulate the operations of insurance companies and insurance producers within the state - both Congress and the Supreme Court have repeatedly noted that the state has a compelling interest in such regulation. See, e.g., 15 U.S.C.§§ 1011, et. seq (McCarran-Ferugson Act); Cal. State, 341 U.S. at 109-10 (collecting numerous cases in which state regulations relating to insurance were upheld against constitutional challenges).

2.     **Even Assuming Arguendo That AIG Could Bring An Immediate
       As-Applied Challenge, It Would Fail as a Matter of Law**

The First Amendment does not apply to "conduct" unless it is "inherently expressive."
Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 65-66
(2006)(collecting cases). "[R]estrictions on protected expression are distinct from restrictions on
economic activity or, more generally, on nonexpressive conduct [and] the First Amendment does
not prevent restrictions directed at commerce or conduct from imposing incidental burdens on
speech." Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2664-65 (2011) (collecting cases). The
Supreme Court has consistently held that "the State does not lose its power to regulate
commercial activity deemed harmful to the public whenever speech is a component of that
activity." Ohralik, 436 U.S. at 456 (collecting cases). Accord, e.g., Friedman v. Rogers, 440 U.S.
1, 10 (1979). See generally Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 501-04 (1949).

Similarly, the Court has held that "the State's power to regulate commercial transactions
justifies its concomitant power to regulate commercial speech that is 'linked inextricably' to
those transactions." 44 Liquormart v. Rhode Island, 517 U.S. 484, 499 (1996). Indeed, both
federal and state governments routinely and necessarily "severely limit[] the freedoms of speech
and association" in the course of regulating commercial activities without running afoul of the
First Amendment. IDK, Inc. v. Clark County, 836 F.2d 1185, 1194 (9th Cir. 1988). See generally
Roberts v. U.S. Jaycees, 468 U.S. 609, 634 (1984) ("There are, of course, some constitutional
protections of commercial speech - speech intended and used to promote a commercial
transaction with the speaker. But the State is free to impose any rational regulation on the
commercial transaction itself").

AIG makes the conclusory - and incorrect - allegation that there are "speaker-based
restrictions on speech" at issue in this case. Compl. ¶ 59. This is directly contrary to both the
factual allegations of the complaint and the text of the Insurance Law at issue.   The only

37

"speaker-based restriction" - and it is a restriction on commercial activity, not speech - is that those who are not licensed to conduct insurance business in New York cannot conduct insurance business in New York, and those who are licensed can conduct such business. There is no authority for the contention that this constitutes a "speaker-based restriction on speech," and accepting it would necessarily lead to the absurd conclusion that all state licensing requirements must be assumed to be content-based restrictions violating the First Amendment - a conclusion directly contrary to not only all the cases cited in this paragraph, but centuries of common practice.

Moreover, although the First Amendment indeed imposes some limits on the State's regulation of its licensed professionals, see, e.g., Bates v. State Bar of Arizona, 433 U.S. 350 (1977), it has no application whatsoever to generally-applicable requirements that companies obtain a license before they engage in a profession within the State's borders in the first place: "government regulation 'limiting the class of persons who may practice the profession cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny.'" Accountant's Soc. of Va. v. Bowman, 860 F.2d 602, 604 (4th Cir. 1988) (quoting Lowe v. SEC, 472 U.S. 181, 232 (1985)).[20] Accord, e.g., Moore-King v. County of Chesterfield, 708 F.3d 560, 569-70 (4th Cir. 2013) (same, rejecting First Amendment challenge to county regulation requiring fortune tellers to obtain a permit); Locke v. Shore, 634 F.3d 1185, 1191 (11th Cir. 2011), cert. denied, 132 S. Ct. 1004 (2012) (same, rejecting First Amendment and dormant commerce clause challenges to Florida statute requiring persons to obtain a license before engaging in the profession of interior design); National Ass'n for the Advancement of Psychoanalysis v. California, 228 F.3d 1043, 1055-56 (9th Cir. 2000) (same, rejecting First Amendment challenge to California statute requiring persons to obtain a license before engaging

---

[20] To avoid confusion, we note that while the stated rule has been applied generally in the federal courts, only the Fourth Circuit refers to it regularly as the "professional speech doctrine."

in the profession of psychoanalysis); Lawline v. American Bar Ass'n, 956 F.2d 1378, 1386 (7th Cir. 1992) (same, rejecting First Amendment and vagueness challenges to Rule preventing lawyers from forming partnerships with non-lawyers to engage in "the practice of law"; "the states have a right to restrict the practice of law to qualified individuals, [and] [a]ny abridgment of the right to free speech is merely the incidental effect of observing an otherwise legitimate regulation"). See generally Pickup v. Brown, 740 F.3d 1208, 1227-29 (9th Cir. 2014) (explaining that the First Amendment's restrictions on a state's regulation of a profession fall within a continuum, and are virtually non-existent in regard to licensing requirements and conduct-based restrictions that have an incidental impact upon speech).

AIG does not allege any improper curtailment of its speech.  Rather, it alleges (1) that it formerly owned the unlicensed ALICO and DelAm; and (2) the GMD was engaged in what appears to have been an unlicensed insurance agency inside New York State on their behalf. Compl. ¶¶ 29-31. See also, Consent Order at ¶¶ 16-17.[21]  On these allegations, the requirements that insurance companies and brokers be licensed before conducting operations within the State, which are found both in the statutes attacked by plaintiff and other insurance statutes not challenged in this case, see Point II (A), supra, is, as a matter of law, not a restriction on speech at all, and does not implicate the First Amendment: "government regulation 'limiting the class of persons who may practice the profession cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny.'" Bowman, 860 F.2d at 604. Here, neither ALICO nor plaintiff AIG alleges that either ALICO or it applied for any license (Compl. ¶ 35) - indeed, AIG's subsidiary ALICO actively misrepresented the nature of its activities to DFS instead - and the bare requirement that ALICO and/or plaintiff had to first obtain a license

---

[21] Even if AIG contended or had alleged otherwise, it would still be for DFS to determine in the first instance - through the very investigation plaintiff seeks here to enjoin - the scope of the plaintiff's insurance business within the State.

before operating within New York State is not properly subject to First Amendment attack.[22] Plaintiff's First Amendment claim should therefore be dismissed.

In any event, while speech proposing a commercial transaction is indeed entitled to protection under the First Amendment, see, e.g., Bates, 433 U.S. 350, the potentially illegal commercial activities at issue go far beyond any arguably-protected commercial speech. DFS can investigate and, if warranted at the conclusion of the investigation, enforce the insurance law against plaintiff for the commercial activities that it and its affiliates conducted within the State without regard to any arguably-protected commercial speech in which they may have also engaged in the course of those activities: "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Ohralik, 436 U.S. at 456 (collecting cases). "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Sorrell, 131 S. Ct. at 2664-65 (2011) (collecting cases).

In short, even assuming, arguendo, that plaintiff and its subsidiaries engaged in some protected commercial speech, this would not prevent the DFS from investigating and, as

---

[22]   To the extent that AIG alleges that it was unable to apply for a license because it did not sell insurance to New York consumers, or was told that it was ineligible, such claims are not colorable. AIG cites no law --no authority at all -- for the proposition that it would have to sell insurance business to New York residents in order to be licensed, and we are unaware of any such authority. Similarly, AIG's allegation that ALICO was unable to apply for a license because, in essence, it did not know how to fill out the application form (Compl. ¶ 24) is silly, and contradicted by the very form on which it relies, and incorporates in the Complaint. See Mulvihill Dec. Ex. G (instructions to licensing application explain that an applicant can mark questions as "not applicable"). AIG's accompanying claim that ALICO was excused from filing an application because it was told in some unspecified fashion by some unspecified person that it could not be licensed (id. ¶ 25), cannot provide any support for a claim that it could not be licensed.   Governments generally are not estopped by the deeds of their agents or employees. Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 111 (2d Cir. 2010). See also, e.g., Petrelli v. City of Mount Vernon, 9 F.3d 250, 256-57 (2d Cir. 1993); Hamptons Hospital & Medical Center, Inc. v. Moore, 52 N.Y.2d 88, 94 (1981) ("In principle it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment."); La Porto v. Vill. of Philmont, 39 N.Y.2d 7, 12 (1976) ("estoppel may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its officers").

warranted, sanctioning plaintiff for any illegal insurance activities in New York. Plaintiff's First Amendment should therefore be dismissed.

**D.**    <u>No Dormant Commerce Clause Claim Lies</u>

New York's regulation of companies engaged in the business of insurance that are operating within the State is immunized against dormant commerce clause challenge.  Dormant commerce clause claims arise from the general recognition that "the Constitution's express grant to Congress of the power to 'regulate Commerce . . . among the several States,' Art. I, § 8, cl. 3, contains a further, negative command, known as the dormant Commerce Clause that creates an area of trade free from interference by the States." <u>Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n</u>, 545 U.S. 429, 433 (2005) (citations omitted).  However, "as the restraint on state power imposed by the dormant Commerce Clause is a consequence of Congressional silence, Congress may authorize a state to act within a sphere otherwise reserved to Congress" and thereby extinguish any dormant commerce clause challenges.  <u>L.A.M. Recovery Inc. v. Dep't of Consumer Affairs</u>, 377 F. Supp. 2d 429, 432-33 (S.D.N.Y. 2005), <u>aff'd</u>, 184 Fed. Appx. 85 (2d Cir. 2006). "Congress may confer upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy.  If Congress ordains that the States may freely regulate an aspect of interstate commerce, any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge." <u>W& S Life Ins. Co. v. State Bd. of Equalization</u>, 451 U.S. 648, 652-53 (1981).

Congress did just that when it passed the McCarran-Ferguson Act, 15 U.S.C. § 1011 <u>et seq.</u>, a Congressional grant of authority that renders statutes regulating the insurance industry such as those challenged here "invulnerable to Commerce Clause challenge." <u>W & S Life Ins</u>, 451 U.S. at 653. "Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act."

Id.  Accord, e.g., U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500 (1993); State Bd. of Ins. v.
Todd Shipyards Corp., 370 U.S. 451, 452 (1962).

Specifically, 15 U.S.C § 1011 provides: "The Congress hereby declares that the continued
regulation and taxation by the several States of the business of insurance is in the public interest,
and that silence on the part of the Congress shall not be construed to impose any barrier to the
regulation or taxation of such business by the several States"; 15 U.S.C. § 1012(a) provides:
"The business of insurance, and every person engaged therein, shall be subject to the laws of the
several States which relate to the regulation or taxation of such business"; and the first clause of
15 U.S.C. § 1012(b) provides: "No Act of Congress shall be construed to invalidate, impair, or
supersede any law enacted by any State for the purpose of regulating the business of insurance,
or which imposes a fee or tax upon such business, unless such Act specifically relates to the
business of insurance."   These provisions extinguish any and all dormant commerce clause
challenges to State regulations that "relate to" the regulation of the insurance business, 15 U.S.C.
§ 1012(a), or which were adopted "with the purpose of", 15 U.S.C. § 1012(b), regulating the
insurance business: "Once Congress acts, courts are not free to review state taxes or other
regulations under the dormant Commerce Clause. When Congress has struck the balance it
deems appropriate, the courts are no longer needed to prevent States from burdening commerce,
and it matters not that the courts would invalidate the state tax or regulation under the Commerce
Clause in the absence of congressional action." Merrion v. Jicarilla Apache Tribe, 455 U.S. 130,
154 (1982).

AIG' allegations establish that it was engaged through its affiliates in insurance business
within New York, including the selling and marketing of insurance policies, and that neither it
nor its affiliates sought to obtain a license from the State. Compl. ¶¶ 29-31. See also id., Ex. A at

¶¶ 16-17. The Supreme Court specifically held on more than one occasion that "[t]he selling and advertising of policies and the licensing of companies and their agents" constitute "the business of insurance" for purposes of the Act. SEC v. Nat'l Sec., 393 U.S. 453, 460 (1969). Accord, e.g., FTC v. Nat'l Casualty Co., 357 U.S. 560, 563-64 (1958) (solicitation and advertising by agent on behalf of foreign insurance company constituted "the business of insurance" for purposes of the Act). See also Fabe, 508 U.S. 491, 505 (1993) ("The broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance"). See also La Tourette v. McMaster, 248 U.S. 465, 467 (1919) ("as insurance is affected with a public interest, those engaged in it or who bring about its consummation are affected with the same interest and subject to regulation as it is. A broker is so engaged - is an instrument of such consummation."). This marks the end of AIG's dormant commerce clause claim.

## Conclusion

For the foregoing reasons, defendants respectfully request that the complaint be dismissed in its entirety, and the Court grant such other and further relief as it deems just and equitable.

Dated:  New York, New York
        May 16, 2014

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the
  State of New York
Attorney for Defendants
By:

ELIZABETH A. FORMAN
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271-0332
(212) 416-8538

43