(with corrected table of authorities)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

AMERICAN INTERNATIONAL GROUP, INC.

*Plaintiff,*

- *against* -

BENJAMIN M. LAWSKY, in his official capacity as
Superintendent of the New York State Department of Financial
Services,

*Defendant.*
_____

No. 14 Civ. 2355 (AJN)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S  MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the
   State of New York
Attorney for Benjamin M. Lawsky,
Superintendent of Financial Services
120 Broadway, 24th Floor
New York, New York 10271-0332
(212) 416-8538

ELIZABETH A. FORMAN
ELIZABETH PRICKETT-MORGAN
DANIEL SCHULZE
Assistant Attorneys General
   of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

Preliminary Statement ............................................................................................... 1

Statement of the Case ................................................................................................ 3

A.   Legal Background .............................................................................................. 3

     1.   Investigative and Administrative Proceedings Under the Financial Services
        Law and Insurance Law ............................................................................ 3

     2.   New York's Licensing Requirements ....................................................... 4

     3.   The Provisions Challenged in the Amended Complaint ........................... 7

     4.   Restrictions on the Activities of Holding Companies ............................. 8

     5.   Opinions .................................................................................................... 9

B.   The ALICO Opinion, Consent Order and Current Investigation of AIG ................ 9

Argument ................................................................................................................... 12

     POINT I   THE COURT SHOULD ABSTAIN ................................................. 12

       A.   Under The <u>Younger</u> Abstention Doctrine, The Court Lacks Subject
          Matter Jurisdiction Over AIG's  Attempt To Interfere With
          A Quasi-Criminal State Proceeding ..................................................... 12

       B.   The Court Should, In Any Event, Under Principles Of Comity And
          Constitutional Restraint, Abstain From Exercising Jurisdiction Over AIG's
          Current Attempt To Prevent DFS From Investigating It And Enforcing
          The Insurance Law ............................................................................... 17

          1.   The Court Should Defer To The Department Under The <u>Burford</u>
             Abstention Doctrine And The Primary Jurisdiction Doctrine ............... 18

          2   Pullman Abstention Applies ....................................................... 22

       C.    The Court Should Exercise Its Broad Discretion Under
          The Declaratory Judgment Act And Decline To Exercise Jurisdiction ........... 23

POINT II      THIS COURT ALSO LACKS SUBJECT MATTER JURISDICTION
UNDER THE DOCTRINES OF STANDING AND RIPENESS ..................25

    A.    AIG Cannot Demonstrate That The Relief Sought By It Would  Redress Its
Alleged Injuries. ....................................................................................25

    B.    AIG's Claims Are Unripe..........................................................................28

POINT III    THE AMENDED COMPLAINT SHOULD  BE DISMISSED UNDER
RULE 12(b)(6) BECAUSE AIG  HAS FAILED TO PLEAD A VIABLE
CLAIM THAT INSURANCE LAW  §§ 1101(B)(1), 1102(A), 2102(A)
AND 2117(A)  ARE UNCONSTITUTIONAL ...............................................31

    A.    AIG's Claims Fail  Because They Rest Upon The Spurious Notion That
New York May Regulate Insurers and Agents Operating Within the State
Only When They Sell Insurance Policies Covering New York Residents........31

    B.    The Challenged Provisions Are Not Unconstitutionally
Vague ........................................................................................................33

        1.    Plaintiff's Claims Challenging The Application Of The Insurance Law
To ALICO Fail Because ALICO Was Specifically Informed Of The
DFS Interpretation Of These Provisions........................................................34

        2.    Plaintiff's Empty Claim Challenging The Application of Insurance
Law §§ 2102(a) and 2117(a) To ALICO As Vague Fails To State A
Cause of Action ........................................................................................35

    C.    No First Amendment Claim Is Stated .................................................................36

        1.    AIG Cannot Assert A Colorable Facial Challenge........................................37

        2.    AIG Cannot Assert A Colorable As-Applied Challenge ..............................38

    D.    No Dormant Commerce Clause Claim Lies .......................................................42

Conclusion ....................................................................................................................44

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

44 Liquormart v. Rhode Island,
    517 U.S. 484 (1996) ........................................................................ 38

A.S. Goldmen & Co. v. N.J. Bureau of Sec.,
    163 F.3d 780 (3d Cir. 1999) ........................................................... 32

Abbott Labs v. Gardner,
    387 U.S. 136 (1967), overruled on other grounds by Califano v. Sanders, 430 U.S. 99
    (1977) ........................................................................................... 28

Accountant's Soc. of Va. v. Bowman,
    860 F.2d 602 (4th Cir. 1988) ...................................................... 39, 40

Advance Pharm. Inc. v. United States,
    391 F.3d 377 (2d Cir. 2004) ......................................................... 34

Allstate Ins. Co. v. Serio,
    261 F.3d 143 (2d Cir. 2001) ......................................................... 38

Amer. Sav. Bank, FSV. UBS Fin. Servs, Inc.,
    347 F.3d 436 (2d Cir. 2003) ......................................................... 29

Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n,
    545 U.S. 429 (2005) ...................................................................... 42

American Trial Lawyers Ass'n, N.J. Branch v. N.J. Supreme Court,
    409 U.S. 467 (1973) ...................................................................... 22

Barclays Bank Plc v. Franchise Tax Bd.,
    512 U.S. 298 (1994) ...................................................................... 34

Bates v. State Bar of Ariz.,
    433 U.S. 350 (1977) ............................................................. 37, 39, 41

Berman Enters. v. Jorling,
    3 F.3d 602 (2d Cir. 1993) ........................................................ 18, 22

Bethpage Lutheran Serv., Inc. v. Weicker,
    965 F.2d 1239 (2d Cir. 1992) ...................................................... 18

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
    369 F.3d 212 (2d Cir. 2004) ........................................................... 1

Boyce Motor Lines, Inc. v. United States,
    342 U.S. 337 (1952) ...................................................................... 33

Bracci v. Becker,
   No. 13-510, 2014 U.S. App. LEXIS 9881 (2d Cir. May 29, 2014) .......................... 14

Broadrick v. Oklahoma,
   413 U.S. 601 (1973) ...................................................................................... 37

Burford v. Sun Oil Co.,
   319 U.S. 315 (1943) ..................................................................... 2, 17, 18, 19, 20

Calderon v. Ashmus,
   523 U.S. 740 (1998) ...................................................................................... 24

California State Auto. Ass'n Inter-Ins. Bureau v. Maloney,
   341 U.S. 105 (1951) ...................................................................................... 16

Cecos Int'l, Inc. v. Jorling,
   895 F.2d 66 (2d Cir. 1990) ........................................................................... 4, 17

Chun v. New York,
   807 F. Supp. 288 (S.D.N.Y. 1992) ..................................................................... 20

Clapper v. Amnesty Int'l USA,
   133 S. Ct. 1138 (2013) .................................................................................. 26

Clear Channel Outdoor, Inc. v. City of New York,
   594 F.3d 94 (2d Cir. 2010) .............................................................................. 41

Coalition of Watershed Towns v. U.S. EPA,
   552 F.3d 216 (2d Cir. 2008) ............................................................................ 26

Colorado Water Conserv. Dist. v. United States,
   424 U.S. 800 (1976) ................................................................................. 13, 21

Connecticut v. Duncan,
   612 F.3d 107 (2d Cir. 2010) ........................................................................ 28, 29

Covad Communs. Co. v. FCC,
   450 F.3d 528 (D.C. Cir. 2006) .......................................................................... 36

Cuomo v. Dreamland Amusements, Inc.,
   No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432 (S.D.N.Y. Sept. 22, 2008) ............... 15, 29

Diamond "D" Constr. Corp. v. McGowan,
   282 F.3d 191 (2d Cir. 2002) ............................................................................ 13

Doe v. Reed,
   561 U.S. 186 (2010) ...................................................................................... 36

Dow Jones & Co., Inc. v. Harrods Ltd.,
    346 F.3d 357 (2d Cir. 2003)...................................................................23

Entergy Nuclear Vt. Yankee, LLC v. Shumlin,
    733 F.3d 393 (2d Cir. 2013)..................................................................28

First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,
    862 F. Supp. 2d 170 (E.D.N.Y. 2012)................................................1, 16

Friedman v. Rogers,
    440 U.S. 1 (1979)...................................................................................38

FTC v. Colgate-Palmolive Co.,
    380 U.S. 374 (1965)...............................................................................33

FTC v. Nat'l Casualty Co.,
    357 U.S. 560 (1958)...............................................................................44

GeorgiaCarry.Org, Inc v. Georgia,
    687 F.3d 1244 (11th Cir. 2012)..............................................................37

Giboney v. Empire Storage & Ice Co.,
    336 U.S. 490 (1949)...............................................................................38

Go Leasing v. Nat'l Transp. Safety Bd.,
    800 F.2d 1514 (9th Cir. 1986)...............................................................34

Great Lakes Dredge & Dock Co. v. Huffman,
    319 U.S. 293 (1943)...............................................................................23

Growe v. Emison,
    507 U.S. 25 (1993)..................................................................................21

Hachamovitch v. Debuono,
    159 F.3d 687 (2d Cir. 1998)..................................................................18

Hall v. Geiger-Jones Co.,
    242 U.S. 539 (1917)...............................................................................32

Hamptons Hospital & Medical Center, Inc. v. Moore,
    52 N.Y.2d 88 (1981)..............................................................................41

Hansel v. Town Court of Springfield,
    56 F.3d 391 (2d Cir. 1995)....................................................................13

Hip-Hop Summit Action Network v. N.Y. Temp. Comm'n on Lobbying,
    No. 03 Civ. 5553, 2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003)..........................15

Hooper v. California,
    155 U.S. 648 (1895) ............................................................................. 31

IDK, Inc. v. Clark County,
    836 F.2d 1185 (9th Cir. 1988) ............................................................ 39

J. & W. Seligman & Co. v. Spitzer,
    No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007)................... 14, 15

Jacoby & Meyers, LLP v. Presiding Justices of the Appellate Div.,
    847 F. Supp. 2d 590 (S.D.N.Y. 2012), rev'd on other grounds, No. 12-1377-CV, 2012
    U.S. App. LEXIS 24012 (2d Cir. Nov. 21, 2012) .......................................... 26, 27

Jay Norris, Inc. v. FTC,
    598 F.2d 1244 (2d Cir. 1979)............................................................. 34

Jenkins v. U.S.,
    386 F.3d 415 (2d Cir. 2004) ............................................................. 25

Johnson v. Nyack Hosp.,
    964 F.2d 116 (2d Cir. 1992) ............................................................. 20

JWJ Indus. v. Oswego County,
    538 Fed. Appx. 11 (2d Cir. 2013) ....................................................... 34

Kampfer v. Cuomo,
    2014 U.S. Dist. LEXIS 1479 (E.D.N.Y. Jan. 7, 2014) .................................... 36

Kurcsics v. Merchants Mut. Ins. Co.,
    49 N.Y.2d 451 (1980) ................................................................... 20

L.A.M. Recovery Inc. v. Dep't of Consumer Affairs,
    377 F. Supp. 2d 429 (S.D.N.Y. 2005), aff'd, 184 Fed. Appx. 85 (2d Cir. 2006)................... 42

La Porto v. Vill. of Philmont,
    39 N.Y.2d 7 (1976) .................................................................... 41

La Tourette v. McMaster,
    248 U.S. 465 (1919) ................................................................... 44

Lake Carriers' Ass'n v. MacMullan,
    406 U.S. 498 (1972) ................................................................... 21

Law Enforcement Ins. Co. v. Corcoran,
    807 F.2d 38 (2d Cir. 1986) ............................................................. 19

Lawline v. American Bar Ass'n,
    956 F.2d 1378 (7th Cir. 1992)........................................................ 36, 39

Levy v. Lewis,
   635 F.2d 960 (2d Cir. 1980) ................................................................... 19

Locke v. Shore,
   634 F.3d 1185 (11th Cir. 2011), cert. denied, 132 S. Ct. 1004 (2012) ..................... 39

Lowe v. SEC.,
   472 U.S. 181 (1985) .............................................................................. 39

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ......................................................................... 25, 26

Makarova v. United States,
   201 F.3d 110 (2d Cir. 2000 ) ............................................................... 1, 25

Malik v. Meissner,
   82 F.3d 560 (2d Cir. 1996) ...................................................................... 25

Marcavage v. City of New York,
   689 F.3d 98 (2d Cir. 2012), cert denied, 133 S.Ct. 1492 (2013) ............................ 26

Marchi v. Bd. of Coop. Educ. Servs.,
   173F.3d 469 (2d Cir. 1999) ...................................................................... 25

Mason v. Dep't Disciplinary Comm.,
   894 F.2d 512 (S.D.N.Y. 1990) ................................................................... 15

Maynard v. Cartwright,
   486 U.S. 356 (1988) .............................................................................. 33

Merrion v. Jicarilla Apache Tribe,
   455 U.S. 130 (1982) ............................................................... 34, 37, 38, 43

Middlesex County Ethics Committee v. Garden State Bar Association,
   457 U.S. 423 (1982) ...................................................................... 14, 16, 17

Mir v. Shah,
   No. 11 Civ. 5211 (BSJ), 2012 U.S. Dist. LEXIS 174685 (S.D.N.Y. Dec. 4, 2012),
   aff'd,2014 U.S. App. LEXIS 11500 (June 17, 2014) ........................................ 15

Mir v. Shah,
   No. 13-55, 2014 U.S. App. LEXIS 11500  (2d Cir. June 17, 2014) ................... 14, 15

Moore-King v. County of Chesterfield,
   708 F.3d 560 (4th Cir. 2013) .................................................................... 39

N.Y. Civil Liberties Union v. Grandeau,
   528 F.3d 122 (2d Cir. 2008) ................................................................ 28, 29

N.Y. Times Co. v. Gonzales,
    459 F.3d 160 (2d Cir. 2006) ........................................................................ 24

Nat'l Park Hospitality Assoc. v. DOI,
    538 U.S. 803 (2003) ........................................................................... 28, 29

National Ass'n for the Advancement of Psychoanalysis v. California,
    228 F.3d 1043 (9th Cir. 2000) ................................................................. 39

Neroni v. Becker,
    No. 13-263, 2014 U.S. App. LEXIS 3167 (2d Cir. Feb. 21, 2014) ......................... 14

New Orleans Pub. Serv., Inc. v. Council of New Orleans,
    491 U.S. 350 (1989) ................................................................................ 18

Nutritional Health Alliance v. Shalala,
    144F.3d 220 (2d Cir. 1998) ...................................................................... 28

Ohio Forestry Ass'n v. Sierra Club,
    523 U.S. 726 (1998) ................................................................................ 30

Ohralik v. Ohio State Bar Ass'n,
    436 U.S. 447 (1978) ........................................................................... 38, 41

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998) ........................................................................ 1

Pennzoil Co. v. Texaco, Inc.,
    481 U.S. 1 (1987) .................................................................................... 21

Petrelli v. City of Mount Vernon,
    9 F.3d 250 (2d Cir. 1993) ........................................................................ 41

Pickup v. Brown,
    740 F.3d 1208 (9th Cir. 2014) ................................................................. 40

Pub. Serv. Comm'n v.Wycoff,
    344 U.S. 237 (1952) ................................................................................ 24

Quackenbush v. Allstate Ins. Co.,
    517 U.S. 706 (1996) ..................................................................... 14, 17, 21

R.R. Comm'n of Tex. v. Pullman Co.,
    312 U.S. 496 (1941) ............................................................... 2, 17, 20, 21, 22

Reetz v. Bozanich,
    397 U.S. 82 (1970) .................................................................................. 22

Roberts v. U.S. Jaycees,
    468 U.S. 609 (1984) ................................................................................... 39

Ruiz v. Comm'r of Dep't of Transp.,
    679 F. Supp. 341 (S.D.N.Y. 1988) ............................................................... 34

Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,
    547 U.S. 47 (2006) ..................................................................................... 38

Samuels v. Mackell,
    401 U.S.66 (1971) ..................................................................................... 13

SEC v. Nat'l Sec.,
    393 U.S. 453 (1969) ................................................................................... 44

Simmonds v. INS,
    326 F.3d 351 (2d Cir. 2003) ................................................................... 28, 30

Smith v. Metropolitan Property & Liability Ins. Co.,
    629 F.2d 757 (2d Cir. 1980) ........................................................................ 19

Sorrell v. IMS Health Inc.,
    131 S. Ct. 2653 (2011) ........................................................................... 38, 41

Spargo v. N.Y. State Comm'n on Judicial Conduct,
    351 F.3d 65 (2d Cir. 2003) .......................................................................... 17

Sprint Commc'ns, Inc. v. Jacobs,
    134 S. Ct. 584 (2013) ("Sprint") ....................................................... 13, 14, 15, 16

State Bd. of Ins. v. Todd Shipyards Corp.,
    370 U.S. 451 (1962) ................................................................................... 43

Tenet v. Doe,
    544 U.S. 1 (2005) ...................................................................................... 13

Texas v. United States,
    523 U.S. 296 (1998) ............................................................................... 27, 28

Trans. Union Corp. v. FTC,
    245 F.3d 809 (D.C. Cir. 2001) ..................................................................... 34

U.S. Dep't of Treasury v. Fabe,
    508 U.S. 491 (1993) ............................................................................... 43, 44

U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.,
    508 U.S. 439 (1993) ................................................................................... 25

U.S. v. Lachman,
    387 F.3d 42 (1st Cir. 2004) ......................................................................34

U.S. v. Leon,
    203 F.3d 162 (2d Cir 2000) ......................................................................25

U.S. v. Salerno,
    481 U.S. 739 (1987) ................................................................................37

United Fence & Guard Rail Corp. v. Cuomo,
    878 F.2d 588 (2d Cir. 1989) ....................................................................22

United States Navigation Co. v. Cunard S.S. Co.,
    284 U.S. 474 (1932) ................................................................................21

United States v. Farhane,
    634 F.3d 127 (2d Cir. 2011) ....................................................................33

United States v. Petrillo,
    332 U.S. 1 (1947) ....................................................................................33

United States v. Powell,
    423 U.S. 87 (1975) ..................................................................................33

United States v. Stevens,
    559 U.S. 460 (2010) ................................................................................36

United States v. Sun & Sand Imports, Ltd.,
    564 F. Supp. 1402 (S.D.N.Y. 1983) ..................................................34, 35

United States v. Williams,
    553 U.S. 285 (2008) ................................................................................33

University Club v. New York,
    842 F.2d 37 (2d Cir. 1988) ...................................................................4, 17

Va. Office for Prot. & Advocacy v. Stewart,
    131 S. Ct. 1632 (2011) ............................................................................22

W & S Life Ins. Co. v. State Bd. of Equalization,
    451 U.S. 648 (1981) ..........................................................................42, 43

Ward v. Rock Against Racism,
    491 U.S.781 (1989) ................................................................................33

Wash. State Grange v. Wash. State Republican Party,
    552 U.S. 442 (2008) ................................................................................37

Waters v. Churchill,
    511 U.S. 661 (1994) .................................................................................. 38

Williams v. Lambert,
    46 F.3d 1275 (2d Cir. 1995) ..................................................................... 22

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995) .................................................................................. 23

Younger v. Harris,
    401 U.S. 37 (1971) ................................................... 2, 12, 13, 14, 15, 16, 17

Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,
    215 F.3d 247 (2d Cir. 2000) ........................................................................ 1

**Federal Statutes**

15 U.S.C
    § 1011 et seq. ............................................................... 16, 19, 42, 43
    § 1012(a) ..................................................................................... 43
    § 1012(b) ..................................................................................... 43

28 U.S.C.
    § 2201(a) ................................................................................. 18, 23

**Federal Rules of Civil Procedure**

Rule 12(b)(1) ......................................................................... 1, 2, 13, 31

Rule 12(b)(6) ............................................................................. 1, 3, 31

**New York State Statutes**

Civil Practice Law and Rules ("CPLR")

    Article 78 ............................................................................ 4, 17, 24

Insurance Law ("Ins. Law")
    § 107(b) ..................................................................................................... 5
    § 109(a) ................................................................................................... 15
    § 201 ....................................................................................................... 20
    § 1101 ..................................................................................................... 10
    § 1101(b) ................................................................................................. 10
    § 1101(b)(1) ............................................................................. 5, 22, 31, 36
    § 1101(b)(1)(A) ......................................................................................... 7
    § 1101(b)(2) .............................................................................................. 8
    § 1102(a) ................................................................................ 4, 7, 10, 22, 31
    § 1104 ....................................................................................................... 6
    § 1106 ....................................................................................................... 5
    § 1501(a) ................................................................................................... 8
    § 1506(c)(1) .............................................................................................. 8
    § 1509 ..................................................................................................... 27
    § 2101(a) ................................................................................................... 6
    § 2101(k)(1) ........................................................................................... 5-6
    § 2102(a) ................................................................................. 5, 8, 22, 31, 35
    § 2117 ..................................................................................................... 22
    § 2117(a) ..................................................................................... 5, 8, 35
    § 2117(j) ................................................................................................... 8
    § 2402 ..................................................................................................... 27
    § 2405 ..................................................................................................... 27
    Article 24 ............................................................................................... 31

Financial Services Law ("FSL")
    § 201(b) ..................................................................................... 4, 6, 31
    § 301 ................................................................................................ 4, 27
    § 304 ................................................................................................ 4, 27
    § 305 ................................................................................................ 4, 27
    § 305(a) ..................................................................................................... 4
    § 305(d) ..................................................................................................... 4
    § 306 ................................................................................................ 4, 27
    § 308 ......................................................................................................... 4
    § 404 ......................................................................................................... 4
    § 408 ......................................................................................................... 4

## State Regulations

11 NYCRR
    § 1.5 ...................................................................................................... 8-9
    § 2.5 ............................................................................................... 8-9, 35

## Preliminary Statement

Defendant Benjamin M. Lawsky, in his official capacity as Superintendent of Financial Services (the "Superintendent"), submits this memorandum of law, and the accompanying Declaration of Christopher B. Mulvihill, Esq., dated June 19, 2014 ("Mulvihill Dec."), in support of his motion to dismiss the amended complaint of plaintiff American International Group, Inc. ("AIG"), dated June 2, 2014 (the "amended complaint" or "AC"), pursuant to Fed. R. Civ. P 12(b)(1) and (6).[1]

This lawsuit is an attempt by AIG to use the powers of this federal court to interfere with the ongoing investigation by the New York Department of Financial Services ("Department" or "DFS")[2] of AIG under the New York Insurance Law ("Insurance Law" or "Ins. Law") and Financial Services Law ("FSL"). The investigation relates to, among other things, AIG's potential liability for unlicensed insurance business by its subsidiaries and affiliates in New York, unlicensed insurance producer activity, and misrepresentations and misleading omissions made to the former Insurance Department, including false or misleading statements made by AIG's former subsidiary, American Life Insurance Company ("ALICO"). ALICO, along with another former AIG subsidiary, Delaware American Life Insurance Company ("DelAm") and their current owner, MetLife, Inc. ("MetLife"), agreed to resolve their potential liability for violations

---

[1]  On a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may resolve any disputed facts by referring to evidence outside of the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000 ) Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc., 862 F. Supp. 2d 170, 181 n.11 (E.D.N.Y. 2012) (motion to abstain is addressed under Rule 12(b)(1)). Accordingly, the Mulvihill. Dec. is offered solely in support of the branch of this motion made under Fed. R. Civ. P. 12(b)(1), except for exhibits A to G thereto, which have been annexed to the Mulvihill. Dec. for the Court's convenience, and which are public records and may therefore also be considered  under Fed. R. Civ. P. 12(b)(6).  Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998); Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369  F.3d 212, 217 (2d Cir. 2004).

[2] DFS was created by transferring the functions of the New York State Banking Department and the New York State Insurance Department into a new agency.  This transfer of functions became effective on October 3, 2011.  For the purposes of this memorandum of law, the term "DFS" is used to refer to both the present Department, and the New York State Insurance Department.

of the Insurance Law with DFS via a Consent Order dated March 31, 2014 (the "Consent Order"), annexed to the amended complaint as Ex. A.  In this suit, AIG seeks a declaration that the application of various provisions of the Insurance Law to AIG based on ALICO's admitted conduct in the Consent Order would be unconstitutional, and an injunction against "commencing or continuing any proceeding (administrative or otherwise)" against AIG on this basis. However, although the current State investigative proceeding as against AIG is active and ongoing, it is not complete, and it remains to be seen what statutory violations, if any, would be charged against AIG, and on what factual grounds.  The present case is thus, for multiple reasons, a textbook example of a suit where a federal court need not and should not exercise jurisdiction.

First, as set out in Point I, under Fed. R. Civ. P 12(b)(1), the Court should abstain.  AIG seeks to have this Court enjoin DFS's pending and ongoing state proceeding investigating AIG's participation in a variety of potential violations of state insurance law.  Younger abstention is therefore appropriate and required. The Court should also abstain under the Burford and Pullman doctrines, as well as the doctrine of primary jurisdiction, because this case raises significant and far-reaching issues of state insurance policy and law, and would require the Court to resolve threshold, and potentially dispositive, issues of state law, and the application of state law to specific facts,  which could alter or moot all plaintiff's constitutional challenges.  Even if the Court were to find, somehow, that these abstention doctrines did not apply, it can and should still decline to hear this case pursuant to its broad discretion under the Declaratory Judgment Act, as AIG's suit constitutes the most blatant kind of procedural fencing. In addition, the issues raised here relating to AIG's own conduct, and its responsibility for the in-state conduct of its unlicensed subsidiaries and their agents would be most effectively and efficiently decided in a state administrative forum, on a complete factual and legal record.

In addition, as set out in Point II, there is no justiciable case or controversy. AIG lacks standing because it cannot demonstrate that the declarations sought would redress its alleged injury. Moreover, under the ripeness doctrine, further factual development (to identify fully any AIG conduct that may subject it to liability, as well as to determine the provisions under which AIG may eventually be charged for that behavior), is necessary to avoid what might otherwise amount to an advisory declaration -- a ruling on the constitutionality of legal charges never made relating to conduct with which AIG may never be charged. Resolution of AIG's claims at this time by a federal court is therefore not appropriate.

Finally, as set out in Point III, under Fed. R. Civ. P. 12(b)(6), the amended complaint fails to state a claim upon which relief may be granted. AIG has been given the opportunity to amend its complaint, and, as set out below, the amended complaint nonetheless fails to correct the jurisdictional and legal defects of its predecessor.[3] The Court should therefore now dismiss this action without leave to amend.

### Statement of the Case

A. **Legal Background**

1. **Investigative and Administrative Proceedings Under the Financial Services Law and Insurance Law**

The Superintendent is assigned the duty and power to oversee the market for financial products and services in New York for the good of the State's economy. He is vested with broad power to "take such actions as the superintendent believes necessary" to, inter alia:

(1) foster the growth of the financial industry in New York and spur state economic development through judicious regulation and vigilant supervision;
                              \* \* \*

---

3 As discussed in more depth in the Statement of the Case, the amended complaint expands AIG's allegations to include two additional statutes not mentioned in the prior pleading (the "original complaint") as subject to constitutional challenge. The amended complaint also dropped all AIG's prior claims as against DFS, leaving the Superintendent as the sole defendant.

(6) eliminate financial fraud, other criminal abuse and unethical conduct in the
industry . . . .

FSL § 201(b). The FSL grants the Superintendent the power of investigation and subpoena, as

well as the ability to hold hearings and administratively determine and sanction violations of the

Insurance, Banking and Financial Services Laws. See FSL §§ 301, 304, 305, 306, 404, 408.

After a charging document is issued, see FSL § 304, the Department follows the procedures set

out in the New York State Administrative Procedure Act ("SAPA"), which afford an entity notice

of the charge, and an opportunity to be heard, to present evidence, and to cross-examine

witnesses against it. FSL §§ 304; 305(a); 305(d). The final determinations in such

administrative proceedings are subject to judicial review in New York Supreme Court pursuant to

New York CPLR Article 78. See CPLR 7803; FSL § 308. Constitutional challenges to the

statutes as applied to the parties may be raised during the administrative proceedings, and in any

Article 78 petition that follows a final administrative determination. University Club v. New

York, 842 F.2d 37, 40 (2d Cir. 1988).

    **2.**    **New York's Licensing Provisions**

      In furtherance of the goals of the Insurance Law, see FSL § 201(b), New York requires

insurance companies and their agents who operate within New York to be licensed. Ins. Law §§

1102, 2102. Thus, Insurance Law § 1102(a) provides that "no person, firm association,

corporation, or joint-stock company, shall do an insurance business in this state unless authorized

by a license . . . ." This applies not only to New York incorporated ("domestic") insurers, but to

foreign (incorporated in another state) insurers doing an insurance business in New York. See

Ins. Law § 1106.  Doing an insurance business in the state is defined in § 1101(b)(1)(A), which must be read together with § 107(b).[4]

Not only is unlicensed insurance business forbidden, but third parties may not aid an unlicensed insurer in "soliciting, negotiating or effectuating" business in the state, subject to certain limited exceptions not applicable here.  Ins. Law § 2117(a).[5]

With regard to insurance brokers and agents (collectively referred to as "producers"), Insurance Law § 2102(a) provides that "no person, firm, association or corporation shall act as an insurance producer . . .in this state without having authority to do so by virtue of a license issued and in force pursuant to the provisions of this chapter."[6]  Insurance Law § 2101(k)(1), in

---

[4] The language of §§ 1101(b)(1) and 107(b) together define "doing an insurance business in this state" as "including" certain activities. Section 1101(b)(1) provides, <u>inter alia</u>, that :

> 1) . . . <u>any of the following acts in this state</u>, effected by mail from outside this state or otherwise, by any person, firm, association, corporation or joint-stock company <u>shall constitute doing an insurance business in this state</u> and shall constitute doing business in the state within the meaning of section three hundred two of the civil practice law and rules:
> (A) <u>making, or proposing to make, as insurer, any insurance contract, **_including_**</u> either issuance or delivery of a policy or contract of insurance to a resident of this state or to any firm, association, or corporation authorized to do business herein, or solicitation of applications for any such policies or contracts;
> ***
> (D) <u>doing any kind of business</u>, including a reinsurance business, specifically <u>recognized as constituting the doing of an insurance business</u> within the meaning of this chapter;

<u>Id.</u> (emphasis and italics added).  Ins. Law  § 107(b), in turn, specifies that the term "including" (as used in 1101(b)(1)(A)) must <u>not</u> be read to exclude items not specifically enumerated.  That provision states:

> Whenever the terms "include", "including" or terms of similar import appear in this chapter, unless the context requires otherwise, such terms shall not be construed to imply the exclusion of any person, class or thing not specifically included."

[5] Ins. Law § 2117(a) provides that:

> No person, firm, association or corporation . . . shall in this state act as agent for any insurer. . . which is not licensed or authorized to do an insurance  . . . business in this state, in the doing of any insurance . . . business in this state or in soliciting, negotiating or effectuating any insurance,. . . or shall in this state act as insurance broker in soliciting, negotiating or in any way effectuating any insurance, . . . or in placing risks with, any such insurer . . . or shall in this state in any way or manner aid any such insurer . . . in effecting any insurance . . . contract.

[6] The definition of "doing an insurance business" set out in Ins. Law § 1101(b)(1)(A), is applicable to insurers,  but has no application to producers.  The licensing requirement for producers is set out in § 2102(a).

turn, defines an "insurance producer" as an "insurance agent, insurance broker . . . or any other person required to be licensed under the laws of this state to sell, solicit or negotiate insurance." Insurance agents act on their behalf of insurers to solicit, negotiate, or sell insurance. Id. § 2101(a). Insurance brokers act on behalf of insureds in performing these same activities. Id. § 2101(c).[7]

The licensing requirements of New York law are intended to promote the soundness and integrity of its insurance markets for the benefit of the State's economy as a whole, and to ensure that insurers, producers, and other entities participating in New York's insurance markets conform to standards of financial soundness, responsibility, and honesty.  FSL § 201 (b).  See, e.g., Ins. Law §§ 1104 (permitting Superintendent to revoke a foreign or alien insurer's license if, after notice and hearing, the Superintendent finds that the licensed insurer "has failed to comply with any requirement of law, and if in his judgment such revocation is reasonably necessary to protect the interests of the people of this state"); 1212 (requiring insurers to render themselves subject to New York jurisdiction by appointing the Superintendent as their agent for service of process); 1309 (permitting the Superintendent to revoke license of insolvent foreign or alien insurers); 1313 (requiring accurate disclosure of financial condition of insurers and holding companies);  2103, 2104 and 2105 (setting out requirements for licensing of insurance agents and brokers, including testing, course of study, and honesty and competence); 2110(a)(4) (permitting the Superintendent to revoke or suspend licenses of agents or brokers who, inter alia, use fraudulent, coercive or dishonest practices, or demonstrate incompetence,  untrustworthiness,

---

[7]  Insurance agents are defined similarly to brokers in Insurance Law § 2101(a), the primary differences between agents and brokers being that agents are "appointed" by one or more insurers and may be compensated only from the insurer writing the policy, while brokers may procure business for a variety of insurers without appointment (because they are technically agents of the insured) and may be compensated  from the insurer as well receive fees from the insured.

or financial irresponsibility).  See also Point III (A), infra (discussing state interest in regulating

in-state conduct as it relates to out-of-state insureds).

No New York statute or regulation requires, states, or otherwise suggests that an insurer

or producer must be seeking or doing business with a New York  resident  in order for that

insurer or producer to be eligible for New York licensing.  Indeed, although AIG alleges that

such a requirement exists, AC ¶ 24, it cites  no New York statute or other authority for its

assertion.  See p. 41, n. 25, infra.

### 3.        The Provisions Challenged in the Amended Complaint

In the amended complaint, as it did in the original complaint, AIG challenges the

application by DFS of two statutory provisions to AIG's former subsidiary, ALICO, in the

Consent Order.  AIG claims that DFS's interpretation of § 1101(b)(1)(A) as requiring licensing of

ALICO and its employees under Insurance Law § 1102(a) is incorrect, or, alternatively, if

correct, is unconstitutional.  Specifically, AIG challenges DFS's interpretation of the phrase

"doing an insurance business in this state" under Insurance Law §§  1101(b)(1)(A) and 1102(a)

as applied to ALICO.

AIG alleges that the relevant statutes must be read to restrict the licensing requirement

in §§ 1102(a) to foreign entities selling, or seeking to sell, insurance to New York residents.

DFS's long-standing position, by contrast, as set out in the Consent Order, and in advisory

Opinions issued by DFS, including an Opinion to ALICO in 2009 (Mulvihill Dec. ¶¶  4, 15, Ex.

A), is that foreign insurers and producers who directly solicit and negotiate insurance business

within New York, as plaintiff alleges ALICO did (or had others do for it), must be licensed,

regardless of the location of the insured or insured risk.  See also Mulvihill Dec. Exs. B-F (DFS

Opinions issued throughout last thirty years to public reflecting application of provisions at issue).[8]

In the amended complaint, AIG now also challenges two additional, and independent, statutes: Insurance Law § 2102(a) (prohibiting unlicensed producers from, inter alia, soliciting insurance business in New York) and  § 2117(a) (prohibiting third parties from acting for an unlicensed insurer in the state by, inter alia, negotiating or soliciting insurance business on their behalf).  AIG alleges that such third parties based and acting in New York must be directing their activities at New York consumers or risks in order to be subject to state licensing and regulation. AC ¶¶ 26-28.  AIG points to no statutory language that supports this claim.

### 4.    Restrictions on the Activities of Holding Companies

In addition to regulating insurers and producers, DFS  regulates "holding companies" and "controlled persons," both terms defined under Insurance Law § 1501(a).  AIG is an insurance holding company; it is not a New York-authorized insurer, although it owns many such insurers. See Mulvihill Dec. ¶ 11. Holding companies and their officers and directors must be "trustworthy."  Holding companies that demonstrate their untrustworthiness may be guilty of violations of the law.  Ins Law § 1506(c)(1).  Moreover, holding companies may not take actions, or have other persons or entities within the holding company system take such actions, on behalf of a controlled insurer which that entity could not legally take for itself, or which constitute a "deceptive act or practice."  Id.  §§ 1509, 2402, 2405.

### 5.    Opinions

Under 11 NYCRR §§ 1.5 and 2.5, as a service to the public, DFS may issue advisory Opinions to the public about the application of the Insurance Law to particular questions posed

---

[8] Although this provision is not relevant here, the licensing requirements under Ins. Law § 2117(j),  which apply only to property/casualty excess line business, differ from these general requirements..  Indeed, the few permissible exceptions to the licensing requirements highlight their general applicability to non-New York entities.  Ins. Law §§ 1101(b)(2); 2117(b), (c), (j).

to DFS. These Opinions, as detailed in the Mulvihill Dec., are public documents, and are
maintained by DFS and made publicly available on the searchable DFS website for reference by
interested parties.  Insurers and producers have sought Opinions related to the issue raised here:
whether an  out-of-state insurer soliciting, marketing, or having others act as a producer for its
insurance products within New York, is required to be licensed if the prospective insureds are not
New York residents, and/or the risk insured is not located in New York.  DFS has consistently
responded, including to ALICO which made an inquiry in 2009 while still an AIG subsidiary,
that such insurers are "doing an insurance business" in the State and therefore must be licensed,
and that producers who act on their behalf must also be licensed.  See, e.g.,  Mulvihill Dec. ¶¶ 15,
16 (summarizing Opinions); Exs. A-F.

**B.**     **The ALICO Opinion, Consent Order and Current Investigation of AIG**

In 2009, ALICO, which is not licensed as an insurer in New York, while operating as a
subsidiary of AIG, made intentional factual misrepresentations and omissions to the Department
concerning its insurance business activity in New York.  Specifically, ALICO represented to the
Department that the functions performed in New York on its behalf with regard to its insurance
business did not and would not include, among other things, solicitation of insurance business
with potential customers. Mulvihill Dec. ¶¶ 13-14, Ex. H (representing that ALICO executives
and staff located in New York do not "propose to make . . . contracts or insurance . . . [or] solicit
persons to buy any insurance").  These representations were made in a presentation by ALICO to
the Department and a letter requesting an advisory Opinion. Id.

In response to ALICO's presentation and letter, the Department requested additional
information regarding the insurance business activities of ALICO in New York.  However, in a
letter to the Department dated September 4, 2009, ALICO refused to provide the requested

information, citing "practical" hurdles in specifying the employees' specific responsibilities. Mulvihill Dec. ¶ 14, Ex. I.

ALICO then received an Opinion, dated November 23, 2009, which unambiguously reflected the Department's interpretation of the law as applied to ALICO. Mulvihill Dec. ¶ 15, Ex. A (also available at *http://www.dfs.ny.gov/insurance/ogco2009/org091104.htm*).  In the Opinion, the Department informed ALICO and the public that, under Insurance Law §§ 1101(b) and 1102(a), as a foreign insurer, ALICO could operate in New York without any licensing only if its activities there were "back office" functions,  and if ALICO's conduct did not include contact with the public or the solicitation or sale of insurance.  Id.[9]

On March 8, 2010, AIG announced an agreement with MetLife to sell ALICO and DelAm to MetLife for $15.5 billion.  On November 1, 2010, MetLife completed its acquisition of ALICO and DelAm for $16.2 billion, consisting of $7.2 billion in cash and $9 billion in MetLife equity and other securities.  AC ¶  10; Mulvihill Dec.  ¶ 17.

In 2011, after receiving information indicating that the factual representations with regard to  ALICO's in-state operations made to the Department in 2009 were false and that ALICO was, in fact, conducting insurance business in New York without a New York license, DFS began an investigation of AIG, ALICO, DelAm, and MetLife for violations of the Insurance Law. Mulvihill Dec. ¶ 19.  As AIG affirmatively alleges in the amended complaint and as the Consent Order specifies, ALICO was marketing, soliciting and negotiating the sale of insurance products

---

[9] At that time, ALICO and AIG were also lobbying for changes to the Insurance Law as it applied to unauthorized entities soliciting and negotiating insurance business in New York, although those lobbying efforts were unsuccessful and did not result in any change in the law.  Mulvihill Dec. ¶ 18, Ex. J (also available at *http://open.nysenate.gov/legislation/bill/S7674-2009).* The justification section for the proposed  New York Senate Bill to amend Insurance Law § 1101, which DFS did not support,  recognized that solicitation and negotiation of insurance business in New York by unauthorized entities was prohibited, stating: "under current law, an entity cannot act on behalf of an unauthorized insurer from offices in the State even if the actions including the solicitation, negotiation or underwriting of risks do not involve New York residents "Id.

in New York with representatives of multinational companies with offices in New York. It did so through the Group Management Division ("GMD"), a group or division located at 70 Pine Street in Manhattan, which was moved between various AIG corporate affiliates, and later became MetLife's "Global Employee Benefits Group." AC ¶¶ 10, 31-34; Consent Order ¶ 5. See also Consent Order ¶ 16 (describing in-state sales activities). Neither ALICO nor GMD was licensed in New York in any regard or applied for a license. AC ¶¶ 32, 38. GMD was responsible for soliciting, negotiating and selling insurance to multinational companies with New York offices, such as Citigroup, General Electric, and Pepisco on behalf of DelAm and ALICO, resulting in hundreds of millions of dollars in insurance premiums. Mulvihill Dec. ¶ 12.

In the Consent Order, ALICO, DelAm, and MetLife settled with DFS; these parties also settled with the New York County District Attorney (the "DA") who was investigating related criminal charges.[10] AIG is not a party to the Consent Order, nor did it otherwise settle with DFS or the DA. Mulvihill Dec. ¶¶ 21-22. Accordingly, at present, DFS and the DA continue to investigate AIG to determine whether, on what statutory bases, and to what extent, AIG may be chargeable with some or all of the alleged behaviors and violations of law described in the Consent Order, as well as with any additional related illegal or deceptive behaviors undertaken by AIG, its divisions, or its former subsidiaries (including subsidiaries other than ALICO and DelAm). Mulvihill Dec. ¶¶ 11, 12, 23, 24. Investigative subpoenas served this year on AIG are not restricted to the conduct described in the Consent Order, and seek information relating to conduct by AIG itself, as well as other transactions and parties that were not considered in that agreement. Mulvihill Dec. ¶¶ 24, 25.

---

[10] See DA Press Release relating to settlement with ALICO, DelAm, and MetLife of claims on unlicensed insurance business and filing of false instruments with DFS, available at *http://manhattanda.org/press-release/da-vance-announces-deferred-prosecution-agreement-metlife-insurance-company-resolve-in*.

DFS has not completed its factual investigation of AIG, or served any charging document, and does not expect its investigation to be complete for some time.  Mulvihill Dec. ¶¶ 25-26.  The determination of whether or not to bring administrative charges against AIG will depend on review of the information received in response to administrative subpoenas, as well as consideration of appropriate insurance policy and enforcement in New York, including whether the conduct at issue is consistent with New York law and policy relating to holding companies such as AIG, an issue not addressed in the Consent Order.   Mulvihill Dec. ¶ 26.

### Argument

### POINT I

### THE COURT SHOULD ABSTAIN

**A.  Under The <u>Younger</u> Abstention Doctrine, The Court Lacks Subject Matter Jurisdiction Over AIG's  Attempt To Interfere With A Quasi-Criminal State Proceeding**

In bringing this lawsuit, AIG asks this Court to inject itself into an  investigation of AIG's activities within New York in an area in which the State's interests are compelling and paramount - the close regulation and supervision of the insurance industry operating within its borders, and the policing of illegal and dishonest conduct within that industry.  In its ongoing investigation of AIG, DFS is examining whether, and to what extent, New York law prohibits AIG's in-state activities, including activities taken on its behalf or at its behest.  AIG seeks to halt that investigation and, in anticipation of potential administrative charges against it, strike down a significant portion of an interconnected series of statutory provisions governing the State's power to regulate insurance business conducted wholly within the State.  In seeking this relief, AIG is necessarily asking the Court to determine that New York's insurance regulator <u>may not even investigate</u>, let alone regulate, insurance companies and/or agents who conduct much, if not all, of their business within New York.  Needless to say, this is not and cannot be the law. As

12

discussed below, AIG's amended complaint contains a host of legal deficiencies warranting

dismissal under Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.

First, under the abstention doctrine derived from <u>Younger v. Harris</u>, 401 U.S. 37 (1971),

the Court lacks subject matter jurisdiction over AIG's attempt to interfere with an ongoing DFS

investigatory proceeding. The <u>Younger</u> abstention doctrine is both a limit on the Court's subject

matter jurisdiction, and an exception to the general "unflagging" obligation of federal courts to

take jurisdiction of matters before them. "[W]hen <u>Younger</u> applies, abstention is mandatory and

its application deprives the federal court of jurisdiction in the matter." <u>Diamond "D" Constr.</u>

<u>Corp. v. McGowan</u>, 282 F.3d 191, 197-98 (2d Cir. 2002) (citing <u>Colorado Water Conserv. Dist. v.</u>

<u>United States</u>, 424 U.S. 800, 816 n.22 (1976)). The Supreme Court has further noted that

whether a federal court should abstain under <u>Younger</u> is a "threshold question" that may be

resolved before addressing Article III jurisdiction. <u>Tenet v. Doe</u>, 544 U.S. 1, 6 n.4 (2005).

The <u>Younger</u> abstention doctrine "exemplifies one class of cases in which federal court

abstention is required: When there is a parallel, pending state criminal proceeding, federal courts

must refrain from enjoining the state prosecution." <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 134 S. Ct.

584, 588 (2013) ("<u>Sprint</u>"). The need for federal abstention in such circumstances "was

'reinforced' by the notion of 'comity, that is, a proper respect for state functions.'" <u>Id.</u> (quoting

<u>Younger</u>, 401 U.S. at 44). <u>Younger</u> abstention is required where there are "particular state civil

proceedings that are akin to criminal prosecutions," such as "civil enforcement proceedings,"

<u>Sprint</u>, 134 S. Ct. at 588, and it applies not just to requests to enjoin the state proceedings, but

also to requests for declaratory relief that would tend to affect or interfere with state proceedings.

<u>Hansel v. Town Court of Springfield</u>, 56 F.3d 391, 393 (2d Cir. 1995) (citing <u>Samuels v. Mackell</u>,

401 U.S. 66 (1971)). As with other abstention doctrines, <u>Younger</u> instructs federal courts to

avoid premature intervention in state proceedings that would increase friction between the state

and federal systems, and encroach unnecessarily on an area of policy assigned to the state. See

Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716-19 (1996).

The Second Circuit holds that, following Sprint, courts must apply a "categorical

approach" to Younger abstention, and that abstention is required whenever a federal plaintiff is

seeking to interfere with a pending state quasi-criminal proceeding. Bracci v. Becker, No. 13-

510, 2014 U.S. App. LEXIS 9881, at *4, n.1 (2d Cir. May 29, 2014) (summary order) (holding

that the Supreme Court's decision in Sprint "rejected th[e] three-part test [derived from the

Middlesex case] in favor of a categorical approach" to Younger abstention); Neroni v. Becker,

No. 13-263, 2014 U.S. App. LEXIS 3167, at *3 (2d Cir. Feb. 21, 2014) (summary order) (same).

Accord Mir v. Shah, No. 13-55 (2d Cir. June 17, 2014) (summary order) (same) (a copy of the

recent Mir affirmance is annexed hereto as Exhibit 1 for the Court's convenience).

Courts in this Circuit consistently have held that Younger abstention is required where

investigative subpoenas have been issued by a state agency in connection with a potential civil

enforcement proceeding.  As Chief Judge Wood explained in J. & W. Seligman & Co. v. Spitzer,

No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881, at *14-17 (S.D.N.Y. Sept. 27, 2007), it has long

been established that "the issuance of compulsory process, including subpoenas, in criminal

cases, initiates an 'ongoing' proceeding for the purposes of Younger abstention." Id., at **15-16

(collecting cases). The logic of these decisions mandates the same conclusion in the civil

enforcement context (to which Younger has  been extended by the Supreme Court):

> [t]he reasoning supporting these decisions applies with similar force to the
> contested [investigatory administrative] subpoenas. Although the contested
> subpoenas are not part of a criminal proceeding, they were issued by the Attorney
> General pursuant to an investigation of Plaintiffs' allegedly illegal activities, and
> the information sought may be used to initiate civil or criminal proceedings
> against Plaintiffs. Younger's principles extend to civil and administrative
> proceedings. Moreover, the contested subpoenas serve a similar purpose to
> subpoenas in criminal matters. They are an "integral part" of a potential

14

proceeding against Plaintiffs, and without such subpoenas, the Attorney General
"seldom could amass the evidence necessary" to commence fraud actions.

Id., at *16 (citations omitted). Accord, e.g., Cuomo v. Dreamland Amusements, Inc., No. 08 Civ.

7100, 2008 U.S. Dist. LEXIS 71432, at *28-29 (S.D.N.Y. Sept. 22, 2008) (same); Hip-Hop

Summit Action Network v. N.Y. Temp. Comm'n on Lobbying, No. 03 Civ. 5553, 2003 U.S. Dist.

LEXIS 21229, at *5-8 (S.D.N.Y. Nov. 25, 2003) (same); Mason v. Dep't Disciplinary Comm.,

894 F.2d 512, 514-15 (S.D.N.Y. 1990) (same). See also Mir v. Shah, No. 11 Civ. 5211 (BSJ),

2012 U.S. Dist. LEXIS 174685, at *6 (S.D.N.Y. Dec. 4, 2012) (noting in dicta that "[c]ourts in

this Circuit have … routinely applied Younger where investigatory subpoenas have been

issued"), aff'd, No. 13-55 (2d Cir. June 17, 2014) (summary order).[11]

Here, AIG seeks to enjoin an ongoing state investigation in which DFS issued

administrative subpoenas that AIG alleges will soon result in administrative charges and a civil

enforcement proceeding against AIG.  AC ¶ 57.  According to AIG's allegations, DFS is

investigating potential violations of the Insurance Law and "seeks to impose substantial

monetary penalties on AIG for the purportedly illegal marketing activities" at issue.  Id. ¶¶ 40-

42.  Moreover, all violations of the Insurance Law are classified as misdemeanors, unless they

specifically constitute felonies. Ins. Law § 109(a). Thus, the underlying state proceedings were

initiated by "a state actor," involve an "investigation," and may result in quasi-criminal

enforcement to "sanction the federal plaintiff…for some wrongful act." Younger abstention is

therefore required.  Sprint, 134 S. Ct. at 588, 592.

---

11 The Mir court noted that it remained an open question within the Second Circuit whether Younger abstention was
required prior to the issuance of subpoenas or other process, i.e., "[w]here no official action beyond the initiation of
an investigation has occurred," but held that it did not need to reach this issue because there was no question that
State proceedings seeking to revoke plaintiff's medical license "were well underway" at the time of the lawsuit. Id.,
at *7.
        This Court similarly need not address the much closer question of whether a court must abstain under
Younger where "no official action beyond the initiation of the investigation has occurred." It is undisputed that DFS
has issued multiple administrative subpoenas to AIG.

Although the Second Circuit now mandates a "categorical" approach to Younger abstention, the same conclusion would obtain if the Court were to apply the additional factors derived from Middlesex County Ethics Committee v. Garden State Bar Assoc., 457 U.S. 423 (1982), which ask: (i) whether there is an ongoing state proceeding; (ii) whether the state proceeding implicates important state interests; and (iii) whether the state proceeding provides an adequate opportunity to raise federal challenges. Sprint, 134 S. Ct. at 593 (citing Middlesex, 457 U.S. 423). First, as discussed above, there is an ongoing quasi-criminal state proceeding. Second, there is a paramount state interest in regulating the insurance industry operating within a state's borders. Both Congress, in the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 et seq., and the Supreme Court, in too many opinions to list here, see, e.g., California State Auto. Ass'n Inter-Ins. Bureau v. Maloney, 341 U.S. 105, 109-10 (1951) (collecting cases), recognize the State's compelling interest in this regard.[12] Moreover, where a global company such as AIG generated, either directly or through its affiliated insurance companies, hundreds of millions of dollars of insurance business within the State (see Consent Order at p. 2), and its subsidiaries appear to have attempted to avoid licensing and oversight by the State and misrepresented their activities conducted within the State, New York has a significant and compelling interest in investigating AIG's conduct, and determining whether and to what extent  it may have violated New York law and public policy.

Third, and finally, AIG will have ample opportunity to raise its federal constitutional challenges during any administrative hearings or judicial review of those proceedings that may

---

[12] AIG's wholly incorrect contention that the State has an interest in regulating insurance companies and agents operating in the State only when those entities are selling insurance to a resident of the State (AC, passim) is discussed in Point III (A), infra.

follow the investigation.[13] AIG's constitutional challenge to the statutes, as they may be found to apply to its conduct, may not only be raised in the administrative forum, they are fully available to AIG on Article 78 review of any administrative determination, which could itself be appealed through the state court system.  University Club; 842 F.2d at 40; Cecos Int'l, 895 F.2d at 71.  And such claims would, as discussed below in Point II, have the benefit of being based upon an actual application of the Insurance Law to AIG rather than on speculation about what charges may be brought against AIG, and on what factual grounds.  Indeed, by amending its complaint to add challenges to two additional and independently operating state statutes, AIG has only highlighted the breadth and importance of the State interests at issue in the ongoing investigation and, thus, the appropriateness of abstention.

The application of Younger here is straightforward, and the Court thus need not proceed beyond this issue.  Under this well-settled law, the Court should decline to interfere with the investigation and abstain under Younger for lack of subject matter jurisdiction.

## B. The Court Should, In Any Event, Under Principles Of Comity And Constitutional Restraint, Abstain From Exercising Jurisdiction Over AIG's Current Attempt To Prevent DFS From Investigating It And Enforcing The Insurance Law

Apart from Younger, federal courts decline to exercise jurisdiction, "where denying a federal forum would clearly serve an important countervailing interest … for example where abstention is warranted by considerations of 'proper constitutional adjudication,' 'regard for federal-state relations', or 'wise judicial administration.'" Quackenbush, 517 U.S. at 716-19 (citations omitted).  Other "traditional categories of abstention" set forth by the Supreme Court apply directly to this case: those derived from Burford v. Sun Oil Co., 319 U.S. 315 (1943), the doctrine of primary jurisdiction, and R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941).

---

[13]  If the Court applies the Middlesex test, AIG bears the burden of proving that it has no adequate State forum for its claims.  Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 78 (2d Cir. 2003).

In addition, even if the Court were to determine that none of these doctrines applies, it should nonetheless decline to exercise its permissive jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

### 1. The Court Should Defer To The Department Under The <u>Burford</u> Abstention Doctrine And The Primary Jurisdiction Doctrine

Under the <u>Burford</u> abstention doctrine, a federal court "must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 361 (1989). The Second Circuit has identified three factors that a federal court should consider in determining whether, under <u>Burford</u>, jurisdiction would work a disruption of a state's efforts to establish coherent public policy: "(1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern." <u>Hachamovitch v. Debuono</u>, 159 F.3d 687, 697 (2d Cir. 1998) (citing <u>Bethpage Lutheran Serv., Inc. v. Weicker</u>, 965 F.2d 1239, 1243 (2d Cir. 1992)). When a state has established an integrated system for regulating a matter of state interest and "where the decisive issue hinges entirely on the proper meaning and reach of those state statutes and regulations, a federal court should abstain in favor of the state's interpreting its own law." <u>Berman Enters. v. Jorling</u>, 3 F.3d 602, 608 (2d Cir. 1993).

The Second Circuit has already determined for purposes of <u>Burford</u> abstention that "New York State has a complex administrative and judicial system for regulating" the insurance

industry.  Levy v. Lewis, 635 F.2d 960, 963 (2d Cir. 1980).  The Second Circuit has also found

that insurance regulation is a matter of paramount state concern because "[i]n the McCarran-

Ferguson Act, 15 U.S.C. §§ 1011-1015, Congress mandated that regulation of the insurance

industry be left to the individual states" and thereby "recognized the overriding interest of the

States" in that area.  Id. at 963-64.  "New York has set up a comprehensive plan of regulation of

insurance companies" and that, "[i]n doing so, New York has legislated on a matter of special

state concern – so declared by the federal McCarran-Ferguson Act, 15 U.S.C. §§ 1011-15." Law

Enforcement Ins. Co. v. Corcoran, 807 F.2d 38, 43 (2d Cir. 1986).  As a result, "the

administrative and judicial scheme erected by New York to regulate insurance companies …

operates pursuant to an express federal policy of noninterference in insurance matters." Levy,

635 F.2d at 963.  The policies underlying Burford abstention are thus implicated in this case

"[b]ecause New York provides 'a unified method for the formation of policy and determination

of cases by the [Superintendent of Insurance] and by the state courts,' a method which would

only be impaired by federal court intervention." Law Enforcement, 807 F.2d at 44 (quoting

Burford, 319 U.S. at 333-34).  See, e.g., Smith v. Metropolitan Property & Liability Ins. Co.,

629 F.2d 757, 761 (2d Cir. 1980) (trial court properly abstained from deciding question of

whether exclusionary clause in insurance policy was enforceable because erroneous decision as

to validity of clause would risk a "broad and unwarranted expansion or contraction of coverage

going far beyond the private rights at issue" and state insurance regulation involves a

"complicated and comprehensive regulatory statute intended to strike a balance between

differing local interests").

     DFS's investigation and consideration of the correct application of state law to the New

York insurance activities of foreign insurers and their agents is clearly a matter of significant

state concern.  New York, as set out in the Statement of the Case, and discussed in detail infra at

Point III (A), has an interest in protecting its economy, and the integrity of the insurance market operating within New York. Ins. Law § 201. Thus, the first and third <u>Burford</u> factors support abstention here. <u>See</u>, <u>e.g</u>, <u>Chun v. New York</u>, 807 F. Supp. 288, 291-92 (S.D.N.Y. 1992) (abstaining under <u>Burford</u> and <u>Pullman</u> from deciding questions of whether state had properly interpreted anti-gambling law in enforcing it against plaintiff with regard to the operation of terminals in New York placing orders for out-of-state lottery tickets, and if it had, whether interpretation was unconstitutional).

As to the second factor - the need to give one or another debatable construction to state statutes – DFS has long interpreted the provisions challenged by AIG in a consistent manner. Mulvihill Dec. ¶¶ 15, 16, Exs. A-F. AIG, however, alleges that this interpretation is incorrect and that, instead, the statutes mean something else, or are ambiguous. In addition, the declaration sought in this case is one of significance "that transcends the case at bar " because it would call into question New York's ability to regulate with regard to much commercial conduct within its borders. <u>Burford</u> abstention therefore is appropriate.

In any event, even if the Court declines to abstain under <u>Burford</u>, it should dismiss or stay the case under the doctrine of primary jurisdiction in deference to DFS's specialized expertise in the regulation of the insurance industry, and the related fact-finding and interpretation of the governing state statutes as applied to those facts. <u>Johnson v. Nyack Hosp.</u>, 964 F.2d 116, 122-23 (2d Cir. 1992). As set out above, the courts and Congress have recognized that the States have primary responsibility in regard to the close regulation of the insurance industry. In addition, DFS and the state courts are the final arbiters of the meaning and application of the Insurance Law to particular facts. <u>See</u> <u>Kurcsics v. Merchants Mut. Ins. Co.</u>, 49 N.Y.2d 451, 459 (1980). These are pure issues of State law assigned in the first instance to the expertise of DFS, which would then inform any determination of the federal constitutional issues

20

alleged in AIG's complaint -- to the extent such issues remain after the State law has been

applied. See, e.g., United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 488 (1932) (

primary jurisdiction doctrine required court to dismiss antitrust case in deference to an agency's

fact-finding expertise despite the agency's prior actions in an allegedly similar situation: "[t]o

hold otherwise would be to create the doubtful, and perhaps dangerous, precedent that a decision

of the board in respect of one agreement definitely establishes that the rule of that decision must,

without more, be applied to all other agreements alleged to be of a similar character, although it

may turn out upon investigation that the allegations are not warranted, or the facts and

circumstances of and surrounding the transaction are so wholly different as to afford ground for a

different result").

## 2. Pullman Abstention Applies

Abstention is further appropriate "in cases presenting a federal constitutional issue which

might be mooted or presented in a different posture by a state court determination of pertinent

state law." Colorado River Water Conservation Dist. v. U. S., 424 U.S. 800, 814 (1976)

(collecting cases). Accord Quackenbush, 517 U.S. at 716-17; Growe v. Emison, 507 U.S. 25, 32

(1993) (if state court determinations of state law could moot a federal constitutional issue, the

federal court should defer its consideration of such federal claims). The goals of this doctrine,

commonly referred to as "Pullman abstention," are "to avoid unnecessary friction in federal-state

relations, interference with important state functions, tentative decisions on questions of state

law, and premature constitutional adjudication." Lake Carriers' Ass'n v. MacMullan, 406 U.S.

498, 511 (1972). See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17 n.9 (1987) ("the probability

that any federal adjudication would be effectively advisory is so great that this concern alone is

sufficient to justify abstention" under Pullman). Pullman abstention is thus particularly

appropriate in cases involving matters of traditional state concern such as the regulation of the

insurance industry. <u>Reetz v. Bozanich</u>, 397 U.S. 82, 86-87 (1970).  Pursuant to these significant

considerations, when there is a "state-law issue that may be dispositive, federal courts should

abstain under [<u>Pullman</u>]."  <u>Va. Office for Prot. & Advocacy v. Stewart</u>, 131 S. Ct. 1632, 1644

(2011).

　　　　"Three basic conditions must be present to trigger <u>Pullman</u> abstention: 'First, the state

statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue

must depend upon the interpretation given to the ambiguous state provision; and third, the state

law must be susceptible of an interpretation that would avoid or modify the federal constitutional

issue.'"  <u>Williams v. Lambert</u>, 46 F.3d 1275, 1281 (2d Cir. 1995) (quoting <u>United Fence & Guard</u>

<u>Rail Corp. v. Cuomo</u>, 878 F.2d 588, 594 (2d Cir. 1989)).[14]

　　　　AIG's complaint is premised on its allegations that Insurance Law §§ 1101(b)(1),

1102(a), 2102(a) and 2117, properly construed, would permit certain conduct engaged in by

ALICO, or by their agents acting within New York, but that, as long construed by DFS, these

statutes, absent licensing, prohibit that conduct. (AC ¶¶ 17-21, 26-28, 39-51).  Alternatively, AIG

argues that these state statutes are all unconstitutionally vague. (<u>Id.</u>, ¶¶ 53-58).  Were the Court to

find AIG's construction of the statutes to be correct -  a pure issue of state law - it would moot all

AIG's constitutional challenges. This alone warrants <u>Pullman</u> abstention.  Any interpretation this

Court were to give to these statutes would necessarily affect the constitutional issues and

potential decision on the merits of the constitutional claims in this case.  If the state courts, as

final arbiter of the meaning of these statutory provisions, were then to later reach a different

conclusion as to the application of these statutes,  this Court will have issued an advisory opinion

---

[14] A court abstaining under <u>Pullman</u> should ordinarily dismiss without prejudice or stay and retain jurisdiction over
federal claims so plaintiff has the option to return to federal court after preliminary state issues are resolved.
<u>American Trial Lawyers Ass'n, N.J. Branch v. N.J. Supreme Court</u>, 409 U.S. 467, 469 (1973). <u>See also</u> <u>Berman</u>
<u>Enters.</u>, 3 F.3d at 608 (where determination of an unresolved issue of state-law would leave nothing to litigate in
federal court, dismissal warranted under <u>Pullman</u>).

22

and needlessly sowed confusion in regard to New York law and the integrated state scheme for regulation of the insurance industry.

### C. The Court Should Exercise Its Broad Discretion Under The Declaratory Judgment Act And Decline To Exercise Jurisdiction

Even if the Court were to determine that none of the abstention doctrines applies here, it should still exercise its broad discretion under the Declaratory Judgment Act and decline to hear this case. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a)(emphasis added). The permissive language of the Declaratory Judgment Act has consistently been construed to grant district courts broad discretion to refuse to exercise jurisdiction over a declaratory action otherwise properly lodged before them -- greater discretion than in the context of the abstention doctrine. See Wilton v. Seven Falls Co., 515 U.S. 277, 282-83, 287 (1995) ( "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants . . . the statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface"); Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). See also Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298 (1943).

The Second Circuit has identified five factors to be considered before a court entertains a declaratory judgment action:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (iv) whether the use of a declaratory judgment would

increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (v) whether there is a better or more effective remedy.

N.Y. Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006) (citation omitted).

These factors weigh against the exercise of jurisdiction. First, the requested judgment would not necessarily "serve a useful purpose in clarifying or settling the legal issues involved" nor "finalize the controversy and offer relief from uncertainty." As also discussed infra at Point II (B), the underlying investigation involves many interrelated legal and factual issues relating to the application of the Insurance Law to AIG's conduct that are not set out or considered in the Consent Order, and that would not be resolved by the requested declarations, and any ruling here would, at best, resolve only a limited portion of the potential issues between the parties. This counsels strongly against the exercise of jurisdiction. Calderon v. Ashmus, 523 U.S. 740, 746-48 (1998); Pub. Serv. Comm'n v. Wycoff, 344 U.S. 237, 244-46 (1952)  In addition, this action is blatant procedural fencing -- an attempt to use a federal court to enjoin the State's investigation of AIG, and to prevent DFS personnel from determining what AIG did and considering how to apply New York's law to AIG's conduct. And, as set out above, the Court is being asked to issue a declaration that would profoundly change the State's process of regulating and supervising the insurance industry as it operates within New York's borders. Indeed, the declaratory and injunctive relief sought would call into question New York's very ability to oversee and investigate a significant portion of the insurance business conducted within its borders,  and, thus, have a sweeping effect "that would reach far beyond the particular case." Id. at 243.

Finally, as noted already, there is obviously a "better and more effective remedy" available here. AIG can assert its defenses in any administrative hearing that may follow completion of the investigation, and, if not satisfied with the resolution, can then file an Article 78 challenge in state court. The state court system is a more appropriate forum to address AIG's

24

challenges to the construction and application of the State's insurance statutes and regulations to its conduct, and, unlike this federal court, the state court would have a factual record regarding how each of the challenged provisions were actually applied, if at all, to AIG's specific activities.

## POINT II

## THIS COURT ALSO LACKS SUBJECT MATTER JURISDICTION UNDER THE DOCTRINES OF STANDING AND RIPENESS

### A.  AIG Cannot Demonstrate That The Relief Sought Would Redress Its Alleged Injuries

Under Article III of the Constitution, the exercise of federal jurisdiction "depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions." U.S. v. Leon, 203 F.3d 162, 164 (2d Cir 2000) (quoting and citing U.S. Nat'l Bank v. Independent Ins. Agents of Am., Inc., 508 U.S. 439 (1993)).[15]

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" - an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of - the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and quotations omitted).[16]

The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient."

---

[15] A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. Makarova, 201 F.3d at 113; Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). Thus, AIG bears the burden of demonstrating standing and ripeness. See, e.g., Marchi v. Bd. of Coop. Educ. Servs.,173 F.3d 469, 478 (2d Cir. 1999).

[16] Accord, e.g., Jenkins v. U.S., 386 F.3d 415, 417 (2d Cir. 2004) (same, and noting further that the Declaratory Judgment Act did not expand the subject matter jurisdiction of the federal courts).

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)(collecting cases) (emphasis in original); see *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).

AIG's claim of injury in fact is dubious.[17] But, even assuming a sufficient injury in fact *arguendo*, causation and redressability are absent. *Lujan*, 504 U.S. at 560-61. See *Coalition of Watershed Towns v. U.S. EPA*, 552 F.3d 216, 218 (2d Cir. 2008) (a claim for relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; where legal finding requested would not necessarily change plaintiff's position, or remedy the alleged injury, element of redressability was absent); *Jacoby & Meyers, LLP v. Presiding Justices of the Appellate Div.*, 847 F. Supp. 2d 590, 591 (S.D.N.Y. 2012) (in constitutional challenge to rule governing attorney conduct, plaintiffs lacked standing where conduct they sought to engage in was potentially prohibited by multiple rules, some of which were not challenged in litigation; standing was absent because elements of causation and redressability were absent), *rev'd on other grounds*, No. 12-1377-CV, 2012 U.S. App. LEXIS 24012 (2d Cir. Nov. 21, 2012).[18]

The gravamen of AIG's claims is that the terms of the Consent Order will, it alleges, certainly be applied to AIG and that this application would violate AIG's constitutional rights. On this basis, AIG seeks a broad injunction prohibiting DFS from "commencing or pursuing any proceeding, (administrative or otherwise)" based on ALICO's activities, and a declaratory judgment that certain provisions of the Insurance Law could not constitutionally be applied to AIG.  However, AIG cannot demonstrate that its injury, consisting of the possibility of charges

---

[17] Although the Court need not reach this issue, there is no "certainly impending" injury in fact for Article III standing or ripeness purposes. An investigative proceeding is not injury in fact. To the extent AIG alleges that the investigation along with the Consent Order works a "certainly impending" injury to AIG under the challenged provisions of the Insurance Law, it is mistaken. That document is not a charging document against AIG but, rather, a negotiated settlement to which AIG is not a party and, as discussed more fully in Point II(B), and in the Statement of the Case and Mulvihill Dec., the Consent Order does not define the factual basis or legal scope of potential charges against AIG.

[18] The Second Circuit agreed with this holding but remanded to allow plaintiff a further opportunity to amend.

or the imposition of fines against AIG,  would  be redressed by the declaration AIG seeks.  For

example,  the investigation and alleged behaviors could provide a basis for a claim of violations

of various legal provisions by AIG that apply to it in its capacity as a holding company, which

operate separately from the statutes challenged in this litigation. See, e.g., Ins. Law §§ 1509,

2402, 2405 (misuse of holding company system to accomplish illegal conduct or deceptive acts

or practices); 1506(c)(1) (violation of trustworthiness requirement by holding company).  The

investigation could also provide a basis for factual claims and potential administrative findings

relating to AIG's conduct with regard to the New York operations of  its subsidiaries that appear

nowhere on the face of the amended complaint or the Consent Order.

      Moreover, in regard to AIG's attempt to enjoin DFS's current investigative proceeding,

AIG  has not challenged the statutory authority under which the investigation, which goes well

beyond the facts and legal agreements in the Consent Order,  is proceeding.  See  FSL §§ 301,

304, 305, 306; Mulvihill Dec. ¶¶ 23-24.   Thus, AIG cannot meet its burden of showing that the

declarations sought will redress its claimed injury.   See Jacoby & Meyers, 847 F. Supp. 2d at

591 ("the fundamental problem is this. Rule 5.4 is not the only provision of New York law that

forecloses plaintiffs' [alleged conduct]. But plaintiffs challenge only Rule 5.4").

**B.   AIG's Claims Are  Unripe**

      Even if AIG  had standing to challenge the various provisions it cites in the amended

complaint, its suit is both constitutionally and prudentially unripe.  This is because, quite simply,

the claims against AIG are not sufficiently developed factually or legally for the Court to rule on

them without risk of rendering a wholly advisory decision. "A claim is not ripe for

adjudication if it rests upon'contingent future events that may not occur as anticipated, or indeed

may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). Constitutional ripeness

"prevents courts from declaring the meaning of the law in a vacuum and from constructing

generalized legal rules unless the resolution of an actual dispute requires it." <u>Entergy Nuclear</u> <u>Vt. Yankee, LLC v. Shumlin</u>, 733 F.3d 393, 429 (2d Cir. 2013) (quoting and citing <u>N.Y. Civil</u> <u>Liberties Union v. Grandeau</u>, 528 F.3d 122, 131 (2d Cir. 2008)). Thus, a claim challenging non-final administrative action is, by definition, unripe. <u>See, e.g., Entergy</u>, 733 F.3d at 430-31(claim was constitutionally unripe where administrative action challenged under Commerce Clause as improperly regulating conduct outside state had not been finalized, preventing court from fully considering its allegedly improper terms and effect on parties outside state). The prudential ripeness doctrine is similarly intended "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbott Labs v.</u> <u>Gardner</u>, 387 U.S. 136 (1967), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99 (1977); <u>Nat'l Park Hospitality Assoc. v. DOI</u>, 538 U.S. 803, 807-08 (2003).

     In determining whether an action is ripe, a court considers (1) the fitness of the issues for judicial review and (2) the injury or hardship to the parties of withholding judicial consideration. <u>Connecticut v. Duncan</u>, 612 F.3d 107, 113 (2d Cir. 2010) (citing <u>Abbott Labs</u>, 387 U.S. at 148-49).[19]   Whether an action is "fit" for determination turns on whether "consideration of the underlying legal issues would necessarily be facilitated if they were raised in the context of a specific attempt to [apply and/or] enforce" the law at issue. <u>Nutritional Health Alliance v.</u> <u>Shalala</u>,144 F.3d 220, 225 (2d Cir. 1998). <u>Accord Texas</u>, 523 U.S. at 300-01. If further factual development would facilitate the legal analysis and prevent the possibility of an advisory

---

[19]  Both aspects of the "inquiry involve the exercise of judgment, rather than the application of a black-letter rule." <u>Connecticut</u>, 612 F.3d at 113 (citing <u>Nat'l Park Hospitality Assoc.</u>, 538 U.S. at 814). The basic question before the Court in the context of a determination of prudential ripeness is whether "[plaintiffs'] claims would better be heard now or at some point in the future." <u>Simmonds v. INS</u>, 326 F.3d 351, 359 (2d Cir. 2003).

determination, the court should, at a minimum, decline to exercise jurisdiction as a prudential matter. Nat'l Hospitality Assoc., 538 U.S. at 811. A claim is also unripe when a plaintiff has not completed an administrative process, and judicial review would be benefitted by waiting for the agency's view on how best to interpret or apply a given rule to a specific set of facts, or by the parties' participation in that administrative process. Amer. Sav. Bank, FSV. UBS Fin. Servs, Inc., 347 F.3d 436, 440 (2d Cir. 2003); Connecticut, 612 F.3d at 114-15 (permitting parties to continue administrative process was proper prior to judicial review where enforcement was not imminent, and process could result in agreement between parties that would moot lawsuit). These "ripeness principles . . . bear heightened importance when, as in the present case, the potentially unripe question presented for review is a constitutional question. If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Id. at 113 n.3 (citation and quotation omitted).[20]

AIG's claims with regard to the Insurance Law provisions it challenges are not ready for decision, whether viewed under the constitutional or prudential ripeness doctrine. As set out above, there are no current enforcement charges against AIG under the challenged provisions, such charges may not issue at all, let alone in the exact format AIG alleges, and, in any event, any charges would not issue until investigation has proceeded further. Indeed, as set out above and in the Mulvilhill Dec., the factual predicate for any such charges relates to the activities of AIG itself, which are in no sense factually defined at this point, and is broader than the activities

---

[20] Moreover, as with the analysis of standing, where, as here, there are alternative bases for a prosecution or enforcement action other than the statute which the plaintiff seeks to challenge on constitutional grounds, the action is prudentially unripe -- simply as a logical proposition -- because the legal issues framed by the complaint are "contingent on future events or may never occur. " New York Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 (2d Cir. 2008).. See, e.g., Cuomo v. Dreamland Amusements, Inc., No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432, * 24-26 (S.D.N.Y. 2008).

of ALICO and DelAm detailed in the Consent Order. The legal claims against AIG may also differ from those in the Consent Order.  As such, there is no adequate factual record relating to enforcement against AIG which is ripe and appropriate for any application of the law by the Court.

Moreover, there is no hardship to AIG in the Court's withholding or postponing decision at this time. "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." Simmonds, 326 F.3d at 360. See, e.g., Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733, 735-37 (1998).  In Ohio, plaintiff challenged the adoption of a federal forestry plan which had been formally promulgated in order to authorize logging in certain areas. The Court held, however, that the adoption of the plan did not pose a hardship to plaintiff because additional administrative action was required before the plan fully authorized any actual logging; although the plan made logging more likely, no "significant practical harm" was posed by the adoption of the plan, since various administrative steps remained before plan was put into effect. Id.   The Court also reasoned that premature review of the plan could hinder agency efforts to refine its policies through administrative process, revisions, or application in practice, and premature consideration of the legal issue presented would embroil the courts in administrative process in a way not generally suited to the judiciary. Id.

Here, as in Ohio Forestry, there exists no cognizable hardship to AIG if its claims, which are based on statutory violations set out in a negotiated Consent Order with parties other than AIG, are not now heard.  There is no agency enforcement or charging document against AIG. Moreover, AIG has sold ALICO and DelAm and there is no allegation that the former functions of the GMD are now carried on elsewhere at AIG.  This premature review of  a potential agency action would inject this Court in a pending and incomplete investigation, and circumvent

30

administrative process and consideration of the issues.  Thus, here, as in <u>Ohio</u>, there would be

no meaningful hardship to AIG if the Court did not address AIG's claims at present.

**POINT III**

**THE AMENDED COMPLAINT SHOULD  BE DISMISSED UNDER RULE 12(b)(6)
BECAUSE AIG  HAS FAILED TO PLEAD A VIABLE CLAIM THAT INSURANCE LAW
§§ 1101(B)(1), 1102(A), 2102(A) AND 2117(A)  ARE UNCONSTITUTIONAL**

The present suit may and should be dismissed under the abstention doctrines,

considerations of judicial discretion, and for lack of subject matter jurisdiction under Rule

12(b)(1).  However, if it is not, it should be dismissed because plaintiff's constitutional claims

fail to state viable claims for relief under Fed. R. Civ. P. 12(b)(6).

A.  **AIG's Claims Fail  Because They Rest Upon The Spurious Notion That New York
     May Regulate Insurers and Agents Operating Within the State <u>Only</u> When <u>They
     Sell Insurance Policies Covering New York Residents</u>**

AIG's claims are premised upon a fundamental misconception about New York's interest

in the commercial activity at issue conducted within its borders.  Plaintiff is wedded to  its

wholly invented notion that New York only has a  legitimate interest in regulating insurance

companies and insurance producers operating inside New York when those companies and

persons issue or solicit insurance policies covering New York residents.  AC <u>passim</u>. This is

wrong, primarily because it ignores "the vital distinction between acts done within and acts done

beyond a State's jurisdiction." <u>Hooper v. California</u>, 155 U.S. 648, 659 (1895).  The operation of

a business within a state is perhaps the single most fundamental basis for the State's regulation of

its conduct because the state has a compelling interest in preserving the integrity of its markets.

<u>See</u> Ins. Law Art. 24; FSL § 201(b) (broad statutory powers of Superintendent are intended, <u>inter

alia</u>, to "foster the growth of the financial industry in New York and spur state economic

development through judicious regulation and vigilant supervision").  Thus, a state can regulate

commercial activity occurring within its borders even when none of the parties to the

31

transactions are residents of that state. It can require companies and individuals to submit to its regulatory authority as a condition of conducting business within the state's borders. And, in fields such as insurance, it can require them to obtain an appropriate license before conducting such business. See Hall v. Geiger-Jones Co., 242 U.S. 539, 549-58 (1917). See generally A.S. Goldmen & Co. v. N.J. Bureau of Sec., 163 F.3d 780, 785-88 (3d Cir. 1999) (collecting cases).

A.S. Goldmen upheld a New Jersey statute regulating securities brokers operating inside the state selling out-of-state sourced securities only to out-of-state buyers against constitutional challenge. The court explained that "preventing New Jersey companies from offering suspect securities to out-of-state buyers helps preserve the reputation of New Jersey's legitimate securities issuers. States that have failed to monitor out-of-state sales by in-state broker-dealers have suffered in the past, as their legitimate broker-dealers suffered from association with suspect firms offering questionable securities." A.S. Goldmen, 163 F.3d at 788

Here, as in A.S Goldman, the factual basis for the current DFS investigation, and any future enforcement activity, occurred within New York State. The factual predicate for the DFS investigation is the direct marketing, solicitation, and negotiation of insurance contracts in offices and by personnel located in New York. See AC. ¶¶ 31-33; Consent Order ¶¶ 5, 16. That marketing, solicitation and negotiation was directed at parties and/or their representatives also located in New York, even though insured parties and risks may have been located elsewhere. Id. Thus, to the extent that AIG contends that New York has no interest in regulating the actions of entities soliciting, marketing and negotiating the sale of insurance within its borders with in-state representatives of foreign entities, AIG is incorrect, and its complaint is premised on a legal and practical fallacy.

**B.      The Challenged Provisions Are Not Unconstitutionally Vague**

The void for vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth

Amendment. United States v. Farhane, 634 F.3d 127, 136 (2d Cir. 2011); United States v.

Williams, 553 U.S. 285, 304 (2008).   Some statutory ambiguity does not necessarily violate Due

Process standards; "perfect clarity and precise guidance have never been required." Id., (quoting

Ward v. Rock Against Racism, 491 U.S.781, 794 (1989)).  "The fact that [the Legislature] might,

without difficulty, have chosen '[c]learer and more precise language' equally capable of

achieving the end which it sought does not mean that the statute which it in fact drafted is

unconstitutionally vague." United States v. Powell, 423 U.S. 87, 94 (1975) (quoting United

States v. Petrillo, 332 U.S. 1, 7 (1947)).  Rather, a vagueness challenge "may be overcome in any

specific case where reasonable persons would know that their conduct is at risk." Maynard v.

Cartwright, 486 U.S. 356, 361 (1988). Further, "it does not seem 'unfair to require that one who

deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may

cross the line.'" FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393 (1965) (quoting Boyce Motor

Lines, Inc. v. United States, 342 U.S. 337, 340 (1952)).

The Supreme Court has established a sliding scale, with civil statutes regulating

economic conduct, or imposing economic burdens viewed most liberally, for consideration of

vagueness challenges. The Second Circuit has summarized this analysis:

> The degree of statutory imprecision that due process will tolerate varies with the
> nature of the enactment and the correlative needs for notice and protection from
> unequal enforcement. . . . A civil statute is generally deemed unconstitutionally
> vague only if it commands compliance in terms so vague and indefinite as really
> to be no rule or standard at all.. . . When a civil statute imposes penalties that,
> "although civil in description, are penal in character, the statute is sometimes
> deemed "quasi-criminal" and subjected to stricter vagueness review . . . Such a
> statute is deemed impermissibly vague if it fails to give the person of ordinary
> intelligence a reasonable opportunity to know what is prohibited, so that he may
> act accordingly, or to provide explicit standards for those who apply them.

Advance Pharm. Inc. v. United States, 391 F.3d 377, 396 (2d Cir. 2004) (emphasis added and internal citations omitted).

1. **AIG's Claims Challenging The Application Of The Insurance Law To ALICO Fail Because ALICO Was Specifically Informed Of The DFS Interpretation Of These Provisions**

Where businesses face regulatory requirements, and possess the ability to plan ahead and the opportunity to seek guidance from the relevant administrative agency, they cannot complain of vagueness in state regulation. The opportunity to seek guidance from the agency, which ALICO actually used, provides the "reasonable opportunity to know what is prohibited." Advance Pharm, 391 F.3d at 396. "Businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." Vill. of Hoffman Estates, 455 U.S. at 498.

This principle has been repeatedly applied in dismissing claims by businesses that an enactment is unconstitutionally vague when that business asked, or even simply had the opportunity to ask, about the application of the law to their own activities. See, e.g., Barclays Bank Plc v. Franchise Tax Bd., 512 U.S. 298, 315-16 (1994); Jay Norris, Inc. v. FTC, 598 F.2d 1244, 1251 (2d Cir. 1979); Go Leasing v. Nat'l Transp. Safety Bd., 800 F.2d 1514, 1525 (9th Cir. 1986); JWJ Indus. v. Oswego County, 538 Fed. Appx. 11, 12 n. 1 (2d Cir. 2013) Trans. Union Corp. v. FTC, 245 F.3d 809, 817-19 (D.C. Cir. 2001); U.S. v. Lachman, 387 F.3d 42, 59 (1st Cir. 2004); Ruiz v. Comm'r of Dep't of Transp., 679 F. Supp. 341, 353 (S.D.N.Y. 1988); United States v. Sun & Sand Imports, Ltd., 564 F. Supp. 1402, 1405 (S.D.N.Y. 1983).

Here, AIG alleges that the statutes at issue are vague as applied to ALICO and AIG because "it was impossible for AIG to know [during the period it owned ALICO] that ALICO

34

was required to obtain a license." AC ¶¶ 55-56.  This claim is nonsense.  ALICO, AIG's

subsidiary, was explicitly told by DFS how the law applied to it.  As set forth in the Statement of

the Case and Mulvihill Dec., insurers and insurance producers including ALICO itself have long

received publicly-issued Opinions from DFS stating that an insurer not licensed in New York

may not solicit business in New York, or have others act as a broker or agent for it within New

York, and that the licensing requirement does not depend on the domicile of the insured or the

location of the risk.  Mulvihill Dec.¶¶ 15, 16, Exs. A-F.  See also id. Ex. J (public statement that

reason for proposed 2010 change advocated by AIG and ALICO to provisions at issue was that

current law prohibited in-state solicitation on behalf of foreign and alien insurers).  Thus, not

only did AIG  have more than a "reasonable opportunity" to understand the application of the

Insurance Law, to the extent it had any questions, see 11 NYCRR § 2.5, but, as set out in the

public record and the Consent Order annexed to the complaint, ALICO used that opportunity,

and was actually informed of the law's application to it in no uncertain terms. Mulvihill Dec. ¶

15, Exs. A, J.[21]  AIG cannot now complain, long after the fact, that the statutes' application is

unconstitutionally vague, and this cause of action should therefore be dismissed.

## 2.   AIG's Empty Claim Challenging The Application of Insurance Law §§ 2102(a) and 2117(a) To ALICO As Vague Fails To State A Cause of Action

AIG alleges for the first time in the amended complaint that §§ 2117(a) and 2102(a) are

unconstitutionally vague.  These new claims fail not only because, as set out at Point III(B)(1),

supra, ALICO was  informed of the application of the Insurance Law to it,  and had a more than

sufficient opportunity to inquire if it had any questions,  but also because AIG does not and

cannot provide any allegations supporting the claim of statutory "vagueness" for these

provisions. AIG identifies nothing about the language and its application to ALICO of these

---

[21]  ALICO, as admitted in the Consent Order, used this opportunity to attempt to mislead the Department about its activities; but that was its choice, and has nothing to do with any purported "vagueness" of the statute.

statutes on any alleged facts that is vague or unclear.[22]   AIG's vague  claim of "vagueness" does

not set out a cause of action, and plaintiff's challenge to these statutes may also be dismissed on

this basis.

### C.   No First Amendment Claim Is Stated

Although AIG's amended complaint includes some allegations implying that it is

challenging the provisions only "as applied to AIG," see AC ¶ 8, AIG must nonetheless, as a

matter of law, satisfy the standards for a facial challenge to the statutes under the First

Amendment to obtain the broad declarations it seeks, because both "[AIG's] claim and the relief

that would follow . . .  reach beyond the particular circumstances of [AIG]." Doe v. Reed, 561

U.S. 186, 194 (2010) (citing United States v. Stevens, 559 U.S. 460, 472-73 (2010)).  See AC ¶¶

61-69, Prayer For Relief, A(ii).

In particular, AIG does not and cannot allege that the provisions challenged have been

applied to AIG in an administrative enforcement proceeding, and it is uncertain at this stage of

the investigation how, if at all, they will be.  AIG also does not present any factual allegations

concerning a specific instance of allegedly protected speech by it covered by the challenged

statutes, or for which it has been held liable, rendering it impossible for the Court to determine

whether the challenged statutes apply to that speech in the first place, let alone whether such an

application, under the relevant test,  violates the First Amendment.  Under these circumstances,

AIG cannot, as a matter of law, assert an "as applied" challenge. See, e.g., Kampfer v. Cuomo,

2014 U.S. Dist. LEXIS 1479, at **12-13 n.8 (E.D.N.Y. Jan. 7, 2014) ("[plaintiff] cannot make an

as applied challenge to the SAFE Act's 'assault weapon' ban because it has not been applied to

him"). Accord, e.g., Covad Communs. Co. v. FCC, 450 F.3d 528, 550 (D.C. Cir. 2006); Lawline

v. American Bar Ass'n, 956 F.2d 1378, 1386 (7th Cir. 1992). As the court explained in

---

[22] As set out in the Statement of the Case, neither of these statutes incorporates or otherwise relies on the definition
of "doing an insurance business in this state" from § 1101(b)(1), which plaintiff claims that  DFS  misinterpreted.
Accordingly plaintiff's claims related to § 1101(b)(1) have nothing to do with the terms of these statutes.

GeorgiaCarry.Org, Inc v. Georgia, 687 F.3d 1244, 1255 (11th Cir. 2012), there is an "inherent contradiction" when a plaintiff purports to challenge a statute "as applied" before it has actually been applied to the plaintiff. Thus, a First Amendment claim by a plaintiff whose standing to challenge a statute is premised upon a reasonable fear of prosecution, however that claim is pled, must generally be treated as a facial challenge. Id.

### 1. AIG Cannot Assert A Colorable Facial Challenge

Facial challenges are strongly disfavored because claims of facial invalidity are often speculative, and thus risk a "premature interpretation of statutes on a factually bare bones record." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). To prevail, AIG must demonstrate that the statutes challenged are incapable of even a single valid application; "the fact that [the statutes] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render [them] wholly invalid." U.S. v. Salerno, 481 U.S. 739, 745 (1987). Accord, e.g., Vill. of Hoffman Estates, 455 U.S. at 497.

AIG does not, and could not seriously contend that the challenged provisions cannot validly apply to require licensing of insurers or third parties who sell policies in New York to New York citizens. AC passim. This concededly valid application of the provisions is sufficient to defeat any facial First Amendment claim.

The First Amendment also allows, in some contexts, a plaintiff to invoke the First Amendment's overbreadth doctrine to bring claims challenging the constitutionality of a statute premised upon a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). But it is well-established that the First Amendment overbreadth doctrine does not apply to regulation of commercial conduct or commercial speech. Bates v. State Bar of Ariz., 433 U.S. 350, 380-81 (1977). Accord, e.g.,

Waters v. Churchill, 511 U.S. 661, 670 (1994); Vill. of Hoffman Estates, 455 U.S. at 496-97;

Allstate Ins. Co. v. Serio, 261 F.3d 143, 153 n.17 (2d Cir. 2001). "Commercial speech is not as

likely to be deterred as noncommercial speech, and therefore does not require the added

protection afforded by the overbreadth approach." Ohralik v. Ohio State Bar Ass'n, 436 U.S.

447, 463 n.20. Thus, any overbreadth challenge here by AIG would similarly fail as a matter of

law.

Because AIG cannot assert an "as applied" challenge in advance of application of the

statutes to AIG's conduct, the Court need proceed no further.  In any event, any "as applied"

challenge would fail as well.

### 2.  AIG Cannot Assert A Colorable As-Applied Challenge

The First Amendment does not apply to "conduct" unless it is "inherently expressive."

Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 65-66 (2006)

(collecting cases). "[R]estrictions on protected expression are distinct from restrictions on

economic activity or, more generally, on nonexpressive conduct [and] the First Amendment does

not prevent restrictions directed at commerce or conduct from imposing incidental burdens on

speech." Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2664-65 (2011) (collecting cases). The

Supreme Court has consistently held that "the State does not lose its power to regulate

commercial activity deemed harmful to the public whenever speech is a component of that

activity." Ohralik, 436 U.S. at 456 (collecting cases). Accord, e.g., Friedman v. Rogers, 440 U.S.

1, 10 (1979). See generally Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 501-04 (1949).

Similarly, the Court has held that "the State's power to regulate commercial transactions

justifies its concomitant power to regulate commercial speech that is 'linked inextricably' to

those transactions." 44 Liquormart v. Rhode Island, 517 U.S. 484, 499 (1996). Indeed, both

federal and state governments routinely and necessarily "severely limit[] the freedoms of speech

38

and association" in the course of regulating commercial activities without running afoul of the First Amendment. IDK, Inc. v. Clark County, 836 F.2d 1185, 1194 (9th Cir. 1988). See generally Roberts v. U.S. Jaycees, 468 U.S. 609, 634 (1984) ("There are, of course, some constitutional protections of commercial speech - speech intended and used to promote a commercial transaction with the speaker. But the State is free to impose any rational regulation on the commercial transaction itself").

Under these principles, although the First Amendment imposes some limits on the State's regulation of its licensed professionals, see, e.g., Bates v. State Bar of Arizona, 433 U.S. 350 (1977), it has no application to generally-applicable requirements that companies or individuals obtain a license before they engage in a profession within the State's borders in the first place: "government regulation 'limiting the class of persons who may practice the profession cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny.'" Accountant's Soc. of Va. v. Bowman, 860 F.2d 602, 604 (4th Cir. 1988) (quoting Lowe v. SEC, 472 U.S. 181, 232 (1985)).[23] Accord, e.g., Moore-King v. County of Chesterfield, 708 F.3d 560, 569-70 (4th Cir. 2013) (same, rejecting First Amendment challenge to county regulation requiring fortune tellers to obtain a permit); Locke v. Shore, 634 F.3d 1185, 1191 (11th Cir. 2011), cert. denied, 132 S. Ct. 1004 (2012) (same, rejecting First Amendment and dormant commerce clause challenges to Florida statute requiring persons to obtain a license before engaging in the profession of interior design); National Ass'n for the Advancement of Psychoanalysis v. California, 228 F.3d 1043, 1055-56 (9th Cir. 2000) (same, rejecting First Amendment challenge to California statute requiring persons to obtain a license before engaging in the profession of psychoanalysis); Lawline, 956 F.2d at 1386 (same, rejecting First Amendment and vagueness challenges to Rule preventing lawyers from forming partnerships with non-lawyers to engage in "the practice of law"; "the states have a right to restrict the

---

[23] To avoid confusion, we note that while the stated rule has been applied generally in the federal courts, only the Fourth Circuit refers to it regularly as the "professional speech doctrine."

practice of law to qualified individuals, [and] [a]ny abridgment of the right to free speech is merely the incidental effect of observing an otherwise legitimate regulation"). See generally Pickup v. Brown, 740 F.3d 1208, 1227-29 (9th Cir. 2014) (explaining that the First Amendment's restrictions on a state's regulation of a profession fall within a continuum, and are virtually non-existent in regard to licensing requirements and conduct-based restrictions that have an incidental impact upon speech).[24]

AIG does not allege any improper curtailment of its speech. Rather, it alleges (1) that it formerly owned the unlicensed ALICO and DelAm; and (2) the GMD was engaged in what appears to have been unlicensed insurance agent activity inside New York State by soliciting business in person from entities also located in New York on their behalves. AC ¶¶ 32-34. On these allegations, the requirements that insurance companies and agents be licensed before conducting operations within the State is, as a matter of law, not a significant restriction on speech at all, and does not implicate the First Amendment: "government regulation 'limiting the class of persons who may practice the profession cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny.'" Bowman, 860 F.2d at 604. Moreover, AIG alleges that neither it nor ALICO ever applied for any license (AC ¶ 38) -- indeed, AIG's subsidiary ALICO actively misrepresented the nature of its activities to DFS instead – and the bare requirement that ALICO had to first obtain a license before operating

---

[24] AIG makes the conclusory – and incorrect - allegation that there are "speaker-based restrictions on speech" at issue in this case. AC ¶ 63. This is directly contrary to both the factual allegations of the amended complaint and the text of the Insurance Law provisions at issue. The only "speaker-based restriction" - and it is a restriction on commercial activity, not speech - is that those who are not licensed to conduct business as an insurer or producer in New York cannot conduct such business in New York, and those who are licensed can conduct such business. There is no authority for the contention that this constitutes a "speaker-based restriction on speech," and accepting it would necessarily lead to the absurd conclusion that all state licensing requirements must be assumed to be speaker-based restrictions violating the First Amendment - a conclusion directly contrary to not only all the cases cited in this paragraph, but centuries of common practice.

within New York State is not properly subject to First Amendment attack.[25] AIG's First Amendment claim should therefore be dismissed.

In any event, while speech proposing a commercial transaction is indeed entitled to protection under the First Amendment, see, e.g., Bates, 433 U.S. 350, the potentially illegal unlicensed activities at issue go far beyond any arguably-protected commercial speech. DFS can investigate and, if warranted at the conclusion of the investigation, enforce the Insurance Law against AIG for the commercial activities that it conducted within the State without regard to any arguably-protected commercial speech in which it may have also engaged in the course of those activities: "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Ohralik, 436 U.S. at 456 (collecting cases). "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Sorrell, 131 S. Ct. at 2664-65 (2011) (collecting cases).

In short, even if AIG and its subsidiaries engaged in some protected commercial speech, this would not prevent the DFS from investigating and, as warranted, sanctioning AIG for illegal insurance activities in New York. Thus, even assuming arguendo that an "as applied" challenge

---

[25]   To the extent that AIG alleges that ALICO was unable to apply for a license because it did not sell insurance to New York consumers, or "on information and belief" was told that it was ineligible, AC ¶ 3 such claims are not colorable.  AIG cites no law -- no statutes, no regulations, no Opinions -- for the proposition that it or its agents would have to sell insurance to New York residents in order to be licensed, and we are unaware of any such authority.  See Statement of the Case, supra, at A(2).  Similarly, AIG's allegation that ALICO was unable to apply for a license because, in essence, it did not know how to fill out the application form (AC ¶ 24) is silly, and contradicted by the very form on which it relies, and incorporates in the amended complaint. See Mulvihill Dec. Ex. G (instructions to licensing application explain that an applicant can mark questions as "not applicable").  AIG's accompanying claim that ALICO was excused from filing an application because it was told in some unspecified fashion by some unspecified person that it could not be licensed (AC ¶¶ 3, 25), cannot provide any support for a claim that it was ineligible for licensing.  Governments generally are not estopped by the deeds of their agents or employees. Clear Channel Outdoor, Inc. v. City of New York, 594 F.3d 94, 111 (2d Cir. 2010).  See also, e.g., Petrelli v. City of Mount Vernon, 9 F.3d 250, 256-57 (2d Cir. 1993); Hamptons Hospital & Medical Center, Inc. v. Moore, 52 N.Y.2d 88, 94 (1981) ("In principle it would be unthinkable that [a government agency] through mistake or otherwise could be estopped from discharging the responsibility vested in it by legislative enactment."); La Porto v. Vill. of Philmont, 39 N.Y.2d 7, 12 (1976) ("estoppel may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its officers").

41

could be brought by AIG in advance of the statutes' application to AIG's conduct, its First Amendment claim would still fail as a matter of law.

### D.  No Dormant Commerce Clause Claim Lies

Dormant commerce clause claims arise from the general recognition that "the Constitution's express grant to Congress of the power to 'regulate Commerce . . . among the several States,' Art. I, § 8, cl. 3, contains a further, negative command, known as the dormant Commerce Clause that creates an area of trade free from interference by the States." Am. Trucking Ass'ns, Inc. v. Mich. Pub. Serv. Comm'n, 545 U.S. 429, 433 (2005) (citations omitted). However, "as the restraint on state power imposed by the dormant Commerce Clause is a consequence of Congressional silence, Congress may authorize a state to act within a sphere otherwise reserved to Congress" and thereby extinguish any dormant commerce clause challenges. L.A.M. Recovery Inc. v. Dep't of Consumer Affairs, 377 F. Supp. 2d 429, 432-33 (S.D.N.Y. 2005), aff'd, 184 Fed. Appx. 85 (2d Cir. 2006). "Congress may confer upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy.  If Congress ordains that the States may freely regulate an aspect of interstate commerce, any action taken by a State within the scope of the congressional authorization is rendered invulnerable to Commerce Clause challenge." W & S Life Ins. Co. v. State Bd. of Equalization, 451 U.S. 648, 652-53 (1981).

Congress did just that when it passed the McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq., a Congressional grant of authority that renders statutes regulating the insurance industry such as those challenged here "invulnerable to Commerce Clause challenge." W & S Life Ins, 451 U.S. at 653. "Congress removed all Commerce Clause limitations on the authority of the States to regulate and tax the business of insurance when it passed the McCarran-Ferguson Act."

42

Id. Accord, e.g., U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500 (1993); State Bd. of Ins. v.

Todd Shipyards Corp., 370 U.S. 451, 452 (1962).

      Specifically, 15 U.S.C § 1011 provides: "The Congress hereby declares that the continued

regulation and taxation by the several States of the business of insurance is in the public interest,

and that silence on the part of the Congress shall not be construed to impose any barrier to the

regulation or taxation of such business by the several States"; 15 U.S.C. § 1012(a) provides:

"The business of insurance, and every person engaged therein, shall be subject to the laws of the

several States which relate to the regulation or taxation of such business"; and the first clause of

15 U.S.C. § 1012(b) provides: "No Act of Congress shall be construed to invalidate, impair, or

supersede any law enacted by any State for the purpose of regulating the business of insurance,

or which imposes a fee or tax upon such business, unless such Act specifically relates to the

business of insurance."  These provisions extinguish any and all dormant commerce clause

challenges to State regulations that "relate to" the regulation of the insurance business, 15 U.S.C.

§ 1012(a), or which were adopted "with the purpose of", 15 U.S.C. § 1012(b), regulating the

insurance business: "Once Congress acts, courts are not free to review state taxes or other

regulations under the dormant Commerce Clause. When Congress has struck the balance it

deems appropriate, the courts are no longer needed to prevent States from burdening commerce,

and it matters not that the courts would invalidate the state tax or regulation under the Commerce

Clause in the absence of congressional action." Merrion v. Jicarilla Apache Tribe, 455 U.S. 130,

154 (1982).

      AIG alleges that it was engaged through its affiliates in insurance business within New

York, including the selling and marketing of insurance policies to other entities located within

the State, and that neither it nor its affiliates sought to obtain a license from the State.  AC ¶¶ 32-

34. See also id., Ex. A at ¶¶ 16-17. The Supreme Court specifically held on more than one

occasion that "[t]he selling and advertising of policies and the licensing of companies and their agents" constitute "the business of insurance" for purposes of the Act. SEC v. Nat'l Sec., 393 U.S. 453, 460 (1969). Accord, e.g., FTC v. Nat'l Casualty Co., 357 U.S. 560, 563-64 (1958) (solicitation and advertising by agent on behalf of foreign insurance company constituted "the business of insurance" for purposes of the Act). See also Fabe, 508 U.S. 491, 505 (1993) ("The broad category of laws enacted 'for the purpose of regulating the business of insurance' consists of laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance"). See also La Tourette v. McMaster, 248 U.S. 465, 467 (1919) ("as insurance is affected with a public interest, those engaged in it or who bring about its consummation are affected with the same interest and subject to regulation as it is. A broker is so engaged - is an instrument of such consummation."). This marks the end of AIG's dormant commerce clause claim.

## Conclusion

For the foregoing reasons, defendants respectfully request that the Amended Complaint be dismissed in its entirety without leave to amend, and the Court grant such other and further relief as it deems just and equitable.

Dated:  New York, New York
        June 20, 2014

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the  State of New York
Attorney for Defendant
By:

ELIZABETH A. FORMAN
Assistant Attorney General
120 Broadway, 24th Floor
New York, New York 10271-0332
(212) 416-8538

44

# EXHIBIT 1

13-55
*Mir v. Shah*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST
CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION
"SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON
ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second
Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in
the City of New York, on the 17th day of June, two thousand fourteen.

PRESENT:   BARRINGTON D. PARKER,
           DENNY CHIN,
                     *Circuit Judges,*
           WILLIAM K. SESSIONS, III,
                     *District Judge.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JEHAN ZEB MIR,

                     *Plaintiff-Appellant,*

            -v.-                                                13-55

NIRAV R. SHAH, M.P.H., as Commissioner, STATE OF
NEW YORK DEPARTMENT OF HEALTH SERVICES STATE
BOARD FOR PROFESSIONAL MEDICAL CONDUCT,
                     *Defendants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
_____

* The Honorable William K. Sessions, III, of the United States District Court for the District
of Vermont, sitting by designation.

FOR PLAINTIFF-APPELLANT:          Jehan Zeb Mir, *pro se*, Redondo Beach,
                                  California.

FOR DEFENDANTS-APPELLEES:         Mark Shawhan, Assistant Solicitor General
                                  (Barbara D. Underwood, Solicitor General, *and*
                                  Michael S. Belohlavek, Senior Counsel, *on the
                                  brief*), *for* Eric T. Schneiderman, Attorney
                                  General of the State of New York, New York,
                                  New York.

Appeal from the United States District Court for the Southern District of

New York (Jones, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the orders of the district court are **AFFIRMED.**[1]

Plaintiff-appellant Jehan Zeb Mir, a physician whose New York medical

license was revoked, proceeding *pro se*, appeals the district court's orders filed August 8,

2012 dismissing his claims challenging, *inter alia*, the constitutionality of New York

Public Health Law § 230(10)(p) ("Section 230"), and filed December 4, 2012 denying

---

[1]     The district court did not file a separate judgment in this matter. If a required separate
judgment is not entered, however, it is deemed to have been entered 150 days after entry of the
dispositive order. Fed. R. Civ. P. 58(c)(2)(B); Fed. R. App. P. 4(a)(7)(A)(ii). Mir filed his notice of appeal
on December 2, 2012 -- before 150 days had expired following either order. As "[a] notice of appeal filed
after the court announces a decision or order -- but before the entry of the judgment or order -- is treated
as filed on the date of and after the entry," Fed. R. App. P. 4(a)(2), the appeal here was timely.

Mir's motion for reconsideration.[2]  We assume the parties' familiarity with the

underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a district court decision dismissing a complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Jaghory v. N.Y. State Dep't of Educ.*,

131 F.3d 326, 329 (2d Cir. 1997).  To survive a Rule 12(b)(6) motion to dismiss, the

complaint must plead "enough facts to state a claim to relief that is plausible on its face."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  We also review *de novo* "the essentially legal determination of

whether the requirements for abstention have been met."  *Diamond "D" Constr. Corp. v.*

*McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (internal quotation marks omitted).

Further, we review a district court's denial of reconsideration for abuse of

discretion.  *See Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011).  A

district court abuses its discretion when its decision: (1) rests on an error of law or a

---

[2]      We "construe notices of appeal liberally, taking the parties' intentions into account,"
*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995), and our appellate jurisdiction "depends on
whether the intent to appeal from [a] decision is clear on the face of, or can be inferred from, the notice[]
of appeal," *The New Phone Co. v. City of New York*, 498 F.3d 127, 131 (2d Cir. 2007).  Here, although Mir's
notice of appeal designates only the order denying reconsideration, his supporting papers attached to his
notice address the district court's entire dismissal.  Construing his notice of appeal liberally, we conclude
that Mir intended to appeal from both orders.

clearly erroneous factual finding; or (2) cannot be found within the range of permissible

decisions. *Id.* "[R]econsideration will generally be denied unless the moving party can

point to controlling decisions or data that the court overlooked -- matters, in other

words, that might reasonably be expected to alter the conclusion reached by the court."

*Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  Reconsideration should not

be granted where "the moving party seeks solely to relitigate an issue already

decided." *Id.*

       We affirm for substantially the reasons stated in the district court's

thorough and well-reasoned orders.  In light of the Supreme Court's recent holding in

*Sprint Communications, Inc. v. Jacobs,* 134 S. Ct. 584 (2013), however, we revisit the issue

of abstention under *Younger v. Harris,* 401 U.S. 37 (1971).

       In determining that *Younger* abstention precluded consideration of all but

one of Mir's federal claims, the district court applied the three-part test derived from

*Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432

(1982).  While this appeal was pending, however, the Supreme Court rejected this

three-part test in favor of a categorical approach.  *See Sprint,* 134 S. Ct. at 591-94.  It

clarified that *Younger* abstention is triggered by only three categories of state court

proceedings: (1) "state criminal prosecutions"; (2) "civil enforcement proceedings"; and

- 4 -

(3) civil proceedings that "implicate a State's interest in enforcing the orders and

judgments of its courts." *Id.* at 588 (internal quotation marks omitted).  Prior to *Sprint,*

our jurisprudence on *Younger* abstention focused on the substance of the claims

involved in the state and federal proceedings by asking whether they implicated an

important state interest. *See Diamond "D" Constr.,* 282 F.3d at 198.  By contrast, under

the categorical approach outlined by *Sprint,* federal abstention requires a criminal

proceeding, a civil enforcement proceeding, or a determination that a state court's

ability to perform its judicial function would be otherwise impeded.  *See Sprint,* 134

S. Ct. at 588.  In light of *Sprint,* the district court's analysis is no longer applicable.

Nevertheless, remand is not necessary because abstention is still appropriate here under

the *Sprint* framework.

As Section 230 outlines proceedings for revoking a physician's medical

license, it fits within *Sprint*'s second category -- civil enforcement proceedings.  The

*Sprint* Court defined this category with reference to two cases: *Middlesex,* 457 U.S. at

433-34, a federal challenge to state disbarment proceedings; and *Huffman v. Pursue, Ltd.,*

420 U.S. 592, 598 (1975), a federal challenge to a state's civil suit to enforce its obscenity

laws.  *See Sprint,* 134 S. Ct. at 592.  The *Sprint* Court explained that enforcement actions

within this second category resemble criminal prosecutions in "important respects":

- 5 -

they "characteristically . . . sanction the federal plaintiff . . . for some wrongful act"; they are "routinely" initiated by a state actor; and they are "commonly" preceded by investigations that culminate in the "filing of a formal complaint or charges." *Id.* New York's referral proceedings are initiated by a state actor, are preceded by investigations that culminate in formal charges, and sanction the physician for some wrongful act. *See generally* N.Y. Pub. Health Law § 230 (providing procedures for revocations of medical licenses). For *Younger* purposes, this type of proceeding resembles a criminal prosecution "in important respects." *Sprint*, 134 S. Ct. at 592. Moreover, *Sprint* reaffirmed the court's adherence to abstention in disciplinary proceedings involving professional licenses. *Id.* Therefore, we conclude that abstention was warranted in this case.

\* \* \*

We have considered Mir's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment and order denying reconsideration.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk



- 6 -