UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN INTERNATIONAL GROUP, INC.

Plaintiff,

- against -

BENJAMIN M. LAWSKY, in his official capacity as
Superintendent of the New York State Department of
Financial Services,

Defendant.

No. 14 Civ. 2355
(AJN)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

ERIC T. SCHNEIDERMAN
Attorney General of the
State of New York
Attorney for Defendant
120 Broadway, 24th Floor
New York, New York 10271-0332
(212) 416-8538

ELIZABETH A. FORMAN
DANIEL SCHULZE
Assistant Attorneys General
of Counsel

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

Preliminary Statement ................................................................................................... 1

Argument ......................................................................................................................... 3

**POINT I - THE COURT SHOULD ABSTAIN** ............................................................... 3

A.   The Younger Abstention Doctrine Mandates That the Court Abstain ...................... 3

B.   Principles of Comity And Constitutional Restraint Support Abstention ................. 8

    1. Under Burford And The Doctrine of Primary Jurisdiction New York
      Should Be Allowed To Investigate AIG And Consider The Issues Raised Here ...... 8

    2. Pullman Abstention Applies ............................................................................... 11

C.   The Court Should Exercise Its Broad Discretion Under The Declaratory Judgment
    Act And Decline To Exercise Jurisdiction .............................................................. 12

**POINT II - AIG'S CLAIMS DO NOT PRESENT A CASE OR CONTROVERSY** ........... 13

A.   The Relief Sought Would Not Redress AIG's Alleged Injury .................................. 13

B.   AIG's Claims Are Not Ripe For Decision ................................................................ 15

    1. The Issues Are Not Fit For Judicial Decision Because The Factual Record Is In
      Dispute and Incomplete ...................................................................................... 16

    2. AIG Fails to Demonstrate Hardship Meriting Interference With The Ongoing
      Administrative Investigation ............................................................................... 17

**POINT III - THE AMENDED COMPLAINT FAILS UNDER RULE 12(B)(6)** ............. 19

A.   The Challenged Provisions Are Not Unconstitutionally Vague .............................. 19

B.   No First Amendment Claim Is Stated ...................................................................... 21

C.   AIG's Dormant Commerce Clause Fails To State A Cause of Action ..................... 22

Conclusion ..................................................................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Abbot Labs. v. Gardner,
   387 U.S. 136 (1967) .................................................................................. 15

Accountant's Soc. of Va. v. Bowman,
   860 F.2d 602 (4th Cir. 1988) ............................................................... 21, 22

Allstate Ins. Co.v. Sabbagh,
   603 F.2d 228 (1st Cir. 1979) ..................................................................... 9

Allstate Ins. Co. v. Serio,
   261 F.3d 143 (2d Cir. 2001) .................................................................... 12

Alvarez v. City of New York,
   2 F. Supp. 2d 509 (S.D.N.Y. 1998) .......................................................... 5

AVCO Fin. Corp. v. CFTC,
   929 F. Supp. 714 (S.D.N.Y. 1996) .......................................................... 18

Babbitt v. United Farm Workers Nat. Union,
   442 U.S. 289 (1979) ................................................................................ 17

Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.,
   134 F.3d 87 (2d Cir. 1998) ...................................................................... 12

Bates v. State Bar of Ariz.,
   433 U.S. 350 (1977) ................................................................................ 12

Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,
   369 F.3d 212 (2d Cir. 2004) .................................................................... 20

Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n,
   447 U.S. 557 (1980) ................................................................................ 22

Coles v. Street,
   38 Fed. Appx. 829 (3d Cir. 2002) ............................................................. 9

Cuomo v. Dreamland Amusements, Inc.,
   No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432 (S.D.N.Y. Sept. 22, 2008) ...........................
   ................................................................................................... 4, 5, 15, 18

Daley v. Mathews,
   536 F.2d 519 (2d Cir. 1976) .................................................................... 18

ii

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,
  411 F.3d 384 (2d Cir. 2005) ................................................................................13

FCC v. Fox Television Stations, Inc.,
  132 S.Ct. 2307 (2012) ........................................................................................20

FTC v. Travelers Health Ass'n,
  362 U.S. 293 (1960) ...............................................................................22, 23, 25

Fund v. City of New York,
  No. 14 Civ. 2958, 2014 U.S. Dist. LEXIS 68509 (S.D.N.Y. May 19, 2014) ............................7

Gualandi v. Adams,
  365 F.3d 236 (2d Cir. 2004) ..................................................................................4

Guillemard-Ginorio v. Contreras-Gomez,
  585 F.3d 508 (1st Cir. 2009) ..................................................................................6

Hip-Hop Summit Action Network v. N.Y. Temp. Comm'n on Lobbying,
  No. 03 Civ. 5553, 2003 U.S. Dist. LEXIS 21229 (S.D.N.Y. Nov. 25, 2003) ............................4

J. & W. Seligman & Co. v. Spitzer,
  No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881 (S.D.N.Y. Sept. 27, 2007).........................4, 5

Jacoby & Meyers, LLP v. Presiding Justices,
  488 Fed. Appx. 526 (2d Cir. 2012)........................................................................11

Kachanis v. United States,
  844 F. Supp. 877 (D.R.I. 1994) .............................................................................24

Karmilowicz v. Hartford Fin. Servs. Group,
  494 Fed. Appx. 153 (2d Cir. 2012)........................................................................20

Lamar Adver. of Penn, LLC v. Town of Orchard Park,
  No. 01CV-556A(M), 2008 U.S. Dist. LEXIS 27647 (W.D.N.Y. Feb. 25, 2008) ...................14

Life Partners, Inc. v. Morrison,
  484 F.3d 284 (4th Cir. 2007) ...............................................................................24

Mason v. Dep't Disciplinary Comm.,
  894 F.2d 512 (S.D.N.Y. 1990) ...............................................................................4

Mir v Shah,
  No. 11 Civ. 5211 (BSJ), 2012 U.S. Dist. LEXIS 174685 (S.D.N.Y. Dec. 4, 2012),
  aff'd, No. 13-55, 2014 U.S. App. LEXIS 11500 (2d Cir. June 17, 2014) ................................4

Mirka United, Inc. v. Cuomo,
  No. 06 Civ. 14292,  2007 U.S. Dist. LEXIS 87385 (S.D.N.Y. Nov. 27, 2007) ....................4, 6

Morales v. TWA,
      504 U.S. 374 (1992) ................................................................. 6

N.Y. Civil Liberties Union v. Grandeau,
      528 F.3d 122 (2d Cir. 2008) ...................................................... 15

N.Y. Times Co. v. Gonzales,
      459 F.3d 160 (2d Cir. 2006) ...................................................... 13

Nat'l Park Hospitality Assoc.v. Dep't of Interior,
      538 U.S. 803 (2003) ................................................................. 15

New Alliance Party v. FBI,
      858 F. Supp. 425 (S.D.N.Y. 1994) ............................................. 18

New Orleans Pub. Serv., Inc. v. Council of New Orleans,
      491 U.S. 350 (1989) ............................................................. 8, 10

Northeast Bancorp., Inc. v. Woolf,
      576 F. Supp. 1225 (D. Conn. 1983) ........................................... 15

O'Neill v. Coughlan,
      511 F.3d 638 (6th Cir. 2008) ...................................................... 4

Pennzoil Co. v. Texaco, Inc.,
      481 U.S. 1 (1987) .................................................................... 11

Pickup v. Brown,
      740 F.3d 1208 (9th Cir. 2014) ................................................... 22

Quill v. Vacco,
      80 F.3d 716 (2d Cir. 1996) ....................................................... 17

Sadallah v. City of Utica,
      383 F.3d 34 (2d Cir. 2004) 1994 ............................................... 18

Schiavone Constr. Co. v. NYC Transit Auth.,
      593 F. Supp. 1257 (S.D.N.Y. 1984) ............................................. 5

Simmonds v. INS,
      326 F.3d 351 (2d Cir. 2003) ...................................................... 19

Smith v. Met. Prop. & Liab. Ins. Co.,
      629 F.2d 757 (2d Cir. 1980) ........................................................ 9

Sorrell v. IMS Health Inc.,
      131 S. Ct. 2653 (2011) .............................................................. 21

Spargo v. N.Y. State Comm'n on Judicial Conduct,
    351 F.3d 65 (2d Cir. 2003) ......................................................................1

Sprint Commc'ns, Inc. v. Jacobs,
    134 S. Ct. 584 (2013)..........................................................................6, 7

SR Int'l Bus. Ins. Co. v. Allianz Ins. Co.,
    343 Fed. Appx. 629 (2d Cir. 2009)...................................................13

Steffel v. Thompson,
    415 U.S. 452 (1974) .............................................................................17

Susan B. Anthony List v. Diehaus,
    573 U.S. _; 2014 U.S. LEXIS 4169 (2014) ..................................17

Tex. Ass'n of Bus. v. Earle,
    388 F.3d 515 (5th Cir. 2004) ...............................................................6

Thomas v. City of New York,
    143 F.3d 31 (2d Cir. 1998) ................................................................17

U.S. Dep't of Treasury v. Fabe,
    508 U.S. 491 (1993) .......................................................................23, 24

Vt. Right to Life Comm., Inc. v. Sorrell,
    221 F.3d 376 (2d Cir. 2000) ........................................................12, 17

Waters v. Churchill,
    511 U.S. 661 (1994) .............................................................................12

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995) .............................................................................12

**Federal Statutes**

15 U.S.C.
    § 1011 ....................................................................................................23
    § 1012(a)............................................................................................23-24
    § 1012(b)...............................................................................................24

**State Statutes**

Ins. Law

§ 41 (McKinney's 1966)...........................................................................19
§ 107(b)..................................................................................................19
§ 1101(b)(1).....................................................................................passim
§ 1509..........................................................................................14, 20-21
§ 2102(a)........................................................................................... 20-21
§ 2117(a)................................................................................ 19, 20,21
§ 2402....................................................................................................14
§ 2403....................................................................................................14
§ 2404....................................................................................................14
§ 2405....................................................................................................14

**Preliminary Statement**

Defendant Benjamin M. Lawsky, in his official capacity as Superintendent of Financial Services, submits this reply memorandum of law and the reply declarations of Christopher B. Mulvihill, Esq. ("Mulvihill Reply Dec.") and Elizabeth A. Forman, both dated July 25, 2014, in further support of his motion to dismiss the amended complaint of AIG pursuant to Fed. R. Civ. P 12(b)(1) and (6).[1]

The Court should see this action for what it is - a suit brought in order to disrupt the ongoing investigation of AIG and interfere with the efforts of DFS to develop a factual understanding of AIG's own conduct as it relates to the unlicensed activities of its former subsidiaries. Whether for jurisdictional or jurisprudential reasons, or for failure to state a cause of action, the Court should dismiss the complaint.

First, the Court lacks subject matter jurisdiction under the <u>Younger</u> abstention doctrine, which the Court may consider prior to reaching questions of Article III jurisdiction.[2] AIG argues that <u>Younger</u> does not apply because formal administrative charges have not been filed against it, but its position has been rejected by both the courts in this Circuit, and the express language and reasoning of the recent <u>Sprint</u> decision from the Supreme Court.  Moreover, the interpretation of the <u>Younger</u> doctrine advanced by AIG would be bad public policy because it would encourage the targets of state investigations to rush to federal court to halt those investigations before the filing of formal charges, resulting in a waste of both state and federal resources.

Similarly, as to <u>Burford</u> and <u>Pullman</u> abstention and the doctrine of primary jurisdiction, AIG ignores the State's interest in deciding important issues of state insurance law in a state

---

[1] This reply memorandum relies on the same abbreviations and defined terms as defendant's initial memorandum of law, dated June 20, 2014 ("Def. Mot."), and also references AIG's Memorandum of Law in Opposition to the Motion to Dismiss, dated July 7, 2014 ("Pl. Opp.").

[2] <u>Spargo v. N.Y. State Comm'n on Judicial Conduct</u>, 351 F.3d 65, 74 (2d Cir. 2003).

forum, the role of DFS as the primary finder of fact, and the risk of piecemeal and advisory determinations posed by permitting this matter to go forward on an incomplete (and likely inaccurate) factual record.  Moreover, even were the Court to accept all AIG's faulty arguments regarding purported technical requirements of the abstention doctrines,  all the relevant factors counsel restraint and the Court should thus decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

In the context of the consideration of standing and ripeness, AIG fails to explain how it has standing to challenge an investigation that may result in charges against it under provisions different from those whose application to its subsidiaries it challenges here.  Further, AIG's claims are unripe because the facts are not sufficiently developed to permit determination of AIG's claims. In fact, there has been no application of the law to AIG; there is no administrative record of its activities, and the investigation of it is ongoing.  AIG nonetheless attempts to treat the Consent Order as a final administrative determination of issues relating to AIG's own conduct, including any participation in its subsidiaries' conduct, that were simply not the focus of the negotiated settlement to which AIG was not a party. And AIG also wholly mischaracterizes its subsidiaries' conduct – claiming its subsidiaries' representatives did no more than market to non-U.S. companies from New York, when they were soliciting and selling directly to New York companies. AIG likewise ignores important facts - for example, that AIG's subsidiary misrepresented to DFS's predecessor, the New York Insurance Department, what insurance activities it conducted in New York.  Finally, AIG incorrectly argues that it can mount a pre-enforcement challenge to any eventual DFS action against it, although it cannot show, and has not attempted to document, any current hardship to it.

Even if the Court were to find it has jurisdiction and decline to abstain, AIG's claims should all be dismissed. AIG fails to acknowledge the actual allegations of the complaint and the materials in the public record showing that AIG's then-subsidiary ALICO not only could have received, but actually did receive, an Opinion on the very conduct which is the subject of this suit and on the interpretation of the relevant statutes. This alone defeats AIG's due process vagueness challenge. AIG's First Amendment claim is also infirm, and AIG fails to address any of defendant's arguments for dismissal. In particular, AIG simply ignores the significant body of case-law holding that licensing provisions are not generally subject to First Amendment attack. Finally, AIG's dormant commerce clause claim is barred by the McCarran-Ferguson Act, and AIG's entire argument to the contrary rests upon the wrong statutory provision. Were it accepted, then long-term, in-person solicitation, marketing, and negotiation activities conducted in New York by unlicensed insurers and producers could neither be regulated by New York nor by any other state. This is not and cannot be the law.

AIG is attempting to use this Court to circumvent the State's investigation of it, and this matter should not proceed in the present federal forum. The Court need not reach the claims asserted, but, if it does, it should dismiss the amended complaint for failure to state a claim.

**Argument**

**POINT I - THE COURT SHOULD ABSTAIN**

**A.**    <u>**The Younger Abstention Doctrine Mandates That the Court Abstain**</u>

AIG contends that the Court cannot abstain under <u>Younger</u> and its progeny here because DFS has not filed formal charges against AIG in the underlying administrative proceeding, and

there is thus purportedly no "ongoing proceeding" for purposes of <u>Younger</u>. Pl. Opp. at 23-27.

AIG is simply wrong on the law. [3]

Within the Second Circuit it is clear that a New York agency's "issuance of compulsory process, including subpoenas" in connection with an investigation into whether the target has engaged in illegal activities constitutes an ongoing proceeding for the purposes of <u>Younger</u> abstention. <u>J. & W. Seligman & Co. v. Spitzer</u>, No. 05 Civ. 7781, 2007 U.S. Dist. LEXIS 71881, at *14-17 (S.D.N.Y. Sept. 27, 2007)(Wood, C.J.)(collecting cases). <u>Accord</u>, e.g., <u>Cuomo v. Dreamland Amusements, Inc.</u>, No. 08 Civ. 7100, 2008 U.S. Dist. LEXIS 71432, at *28-29 (S.D.N.Y. Sept. 22, 2008) (same); <u>Hip-Hop Summit Action Network v. N.Y. Temp. Comm'n on Lobbying</u>, No. 03 Civ. 5553, 2003 U.S. Dist. LEXIS 21229, at *5-8 (S.D.N.Y. Nov. 25, 2003) (same); <u>Mason v. Dep't Disciplinary Comm.</u>, 894 F.2d 512, 514-15 (S.D.N.Y. 1990) (same). <u>See generally</u> <u>Mir v. Shah</u>, No. 11 Civ. 5211, 2012 U.S. Dist. LEXIS 174685, at *6 (S.D.N.Y. Dec. 4, 2012) ("[c]ourts in this Circuit have . . . routinely applied <u>Younger</u> where investigatory subpoenas have been issued"), <u>aff'd</u>, No. 13-55, 2014 U.S. App. LEXIS 11500 (2d Cir. June 17, 2014) (summary order).  And the issue of whether a state proceeding is "ongoing" for purposes of <u>Younger</u> is a matter of state law. <u>See</u> <u>Mirka United, Inc. v. Cuomo</u>, No. 06 Civ. 14292, 2007 U.S. Dist. LEXIS 87385 at **8-9 (S.D.N.Y. Nov. 27, 2007); <u>O'Neill v. Coughlan</u>, 511 F.3d 638, 643-44 (6th Cir. 2008). The cases from other circuits cited by AIG regarding the issue of whether another state's proceeding was "ongoing" are thus inapposite - that state's laws and the

---

[3] AIG also argues that the Court cannot grant the portion of defendant's motion brought under 12(b)(1) without allowing AIG to take jurisdictional discovery. Pl. Opp. at 10, n.4 This is ridiculous. Courts grant 12(b)(1) motions prior to discovery all the time. Regardless, if AIG was seriously contending that there is information peculiarly in the possession of defendant that they needed to oppose this motion, then it was required to explain what that information is, how it is relevant to the motion, and submit an affidavit demonstrating the need for specific targeted discovery. <u>Gualandi v. Adams</u>, 365 F.3d 236, 244-45 (2d Cir. 2004). AIG did none of these things.

administrative proceedings conducted may have been quite different from the New York law and proceeding at issue here.[4]

AIG attempts to distinguish J. & W. Seligman and Dreamland Amusements by claiming that those courts actually abstained in deference to "active state court litigation." Pl. Opp. at 26. This misrepresents the facts of these cases.  There was no "active state court litigation over the investigations" when the federal action was commenced in either J. & W. Seligman or Dreamland Amusements; the Attorney General brought an action to enforce the subpoenas in state court only after these plaintiffs had already filed their federal court actions. J. & W. Seligman, 2007 U.S. Dist. LEXIS 71881, at **7-8; Dreamland Amusements, 2008 U.S. Dist. LEXIS 71432, at **6-7. And those state court proceedings had also either already been resolved (J. & W. Seligman) or had been removed to federal court (Dreamland Amusements) long before those federal cases were dismissed on Younger abstention grounds. Id.  Further, in the cases cited above it was specifically the agency's issuance of subpoenas that was held to constitute an ongoing proceeding under Younger.

There are also compelling policy reasons for federal courts to abstain in favor of state proceedings while they are in the investigatory stage. AIG's "filing of formal charges" test (as opposed to the post-service of process test applied within this Circuit) would result in a deluge of federal cases brought by targets of state investigations, who would seek to enjoin the state proceeding before the filing of formal charges precludes them from doing so - resulting in the

---

[4]  AIG also cites Schiavone Constr. Co. v. NYC Transit Auth., 593 F. Supp. 1257 (S.D.N.Y. 1984) and Alvarez v. City of New York, 2 F. Supp. 2d 509 (S.D.N.Y. 1998). Pl. Opp. at 24-25.  These cases directly support defendant's position.  In both Schiavone Constr. and Alvarez, the court denied the requests to enjoin the state's preliminary investigation based primarily upon "the inherent federalism and comity concerns - the respect due from one sovereign to another - which are raised when a federal court is asked to enjoin an ongoing state criminal investigation" derived from Younger. Schiavone Constr., 593 F. Supp. at 1261. Accord Alvarez, 2 F. Supp. 2d at 516 (assuming Younger did not directly apply to a request to enjoin an agency's preliminary disciplinary investigation, but still declining to do so because "considerations of comity and federalism nonetheless weigh strongly against federal intervention into a pending departmental inquiry"). Moreover, no subpoenas or other process had been issued in the underlying proceedings in Schiavone and Alvarez.

exact interference with the state's sovereignty that the <u>Younger</u> doctrine sought to avoid. To combat this, the state would then be forced to file formal charges <u>before</u> undertaking its investigation, and the investigation may then show the charges to have been insufficient to warrant prosecution. This would waste state and federal resources, needlessly burden the individuals or entities prematurely charged, and serve no one's interests.

Furthermore, to the extent that the "filing of formal charges" test proposed by AIG was ever the law in any circuit,[5] it was rejected by the Supreme Court in <u>Sprint Commc'ns, Inc. v. Jacobs</u>, 134 S. Ct. 584 (2013), which recognizes that administrative "investigations," when conducted with an eye towards possible filing of a formal complaint or charges against the federal plaintiff, also constitute ongoing state proceedings for purposes of <u>Younger</u> abstention:

> Our decisions applying Younger to instances of civil enforcement have generally concerned state proceedings "akin to a criminal prosecution" in "important respects." Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. <u>Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.</u>

<u>Id.</u>, at 592 (citations and parentheticals omitted, emphasis added). The use of the word "often" in the final sentence in particular necessarily contemplates that some of these investigations will <u>never</u> result in formal changes - but <u>Younger</u> abstention is required nonetheless.[6] <u>Accord Morales</u>

---

[5] Although <u>Guillemard-Ginorio v. Contreras-Gomez</u>, 585 F.3d 508 (1st Cir. 2009), certainly includes language implying that the filing of formal administrative charges is necessary to trigger <u>Younger</u> abstention, it noted conflicting authority from other circuits and expressly limited its holding to the facts of the case before it. <u>Guillemard-Ginorio</u>, 585 F.3d at 520 n.16. It would in addition appear to have been in a distinct minority position on this issue even in courts outside the Second Circuit. <u>See</u>, <u>e.g.</u>, <u>Mirka United</u>, 2007 U.S. Dist. LEXIS 87385, at **8-11 ("Numerous courts have held that investigatory proceedings that occur pre-indictment and that are an integral part of a state criminal prosecution may constitute "ongoing state proceedings" for Younger purposes")(collecting cases); <u>Tex. Ass'n of Bus. v. Earle</u>, 388 F.3d 515, 520 (5th Cir. 2004)(same, collecting cases).

[6] AIG's argument that the sentence in <u>Sprint</u> stating that "we today clarify and affirm that <u>Younger</u> extends to the three 'exceptional circumstances' in <u>NOPSI</u> but no further," <u>id.</u> at 593-94, somehow means that the <u>Sprint</u> Court holds instead that only the filing of formal charges warrants <u>Younger</u> abstention, Pl. Opp. at 26-27, is a gross misreading of that decision. <u>Sprint</u> is there addressing the issue of <u>what type of proceeding</u> qualifies for <u>Younger</u> abstention, holding it is limited to the three categories of quasi-criminal proceedings outlined in <u>NOPSI</u>, and the sentence quoted by AIG says nothing about when those proceedings are considered "ongoing" for purposes of

v. TWA, 504 U.S. 374, 381 n.1 (1992) (Younger abstention applies where there is "an already-pending or an about-to-be-pending" state criminal or civil action)(emphasis added). The "filing of formal charges" test proposed by AIG has thus been rejected by the courts in this Circuit, constitutes bad policy, and is inconsistent with the pronouncements of the Supreme Court.

Finally, AIG argues that the Court should not abstain because this case is "extraordinary," claiming that limited references to AIG in the Consent Order show that DFS has somehow improperly judged AIG. Pl. Opp. at 27. This is nonsense. The exception AIG argues requires the federal plaintiff to demonstrate that the state proceeding was brought in "bad faith" for purposes of "harassment." Sprint, 134 S. Ct. at 591. AIG makes no such showing and offers no such argument. Even were the Court to accept AIG's flawed claim that the Consent Order shows that DFS has now determined what charges will be brought against AIG, this would not imply that DFS is acting in bad faith. See, e.g., Fund v. City of New York, No. 14 Civ. 2958, 2014 U.S. Dist. LEXIS 68509, at **38-40 (S.D.N.Y. May 19, 2014) (argument that state tribunal had prejudged case did not defeat Younger abstention; the federal plaintiff must show that the state proceeding was "animated by a retaliatory, harassing, or other illegitimate motive. A contested proceeding that is legitimate in its purposes, but unconstitutional in its execution - even when the violations of constitutional rights are egregious - will not warrant the application of the bad faith exception") (quoting Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 199 (2d Cir. 2002)).

Here, the Consent Order was executed with MetLife, ALICO and DelAm; the latter two companies are now owned by MetLife, but were subsidiaries of AIG during a period of time covered by the Consent Order, hence the documentation of the settlement mentioned AIG.

---

Younger. AIG's misreading of Sprint is also directly contrary to the passage quoted in the text, which contemplates that courts will be abstaining under Younger in cases in which no administrative charges are ever filed at all.

However, the Consent Order does not specify <u>any</u> actions taken by AIG, nor does it indicate how those unidentified actions violated the Insurance Law. It also was not issued <u>ex parte</u> - AIG has not been sanctioned, is not a party to the Consent Order and is not bound by statements therein. It does not require AIG to do or to refrain from doing anything, and indeed, no findings could be entered against AIG until it had an opportunity at an administrative hearing to be heard and present evidence. <u>See</u> Def. Mot. at 4. Importantly, the Consent Order could not be more clear that DFS's investigation of AIG and its former subsidiaries for Insurance Law violations and related offenses prior to the MetLife acquisition continues, and that the investigation was only discontinued as to the post-acquisition (2010) period. AC Ex. A at p.10 ¶ 4, p. 19 ¶ 23. AIG's empty protestations notwithstanding, the investigation of its conduct is ongoing. Mulvihill Dec. ¶¶ 23-26. Accordingly, the Court should abstain under <u>Younger</u>, and need proceed no further.

**B.**   <u>**Principles of Comity And Constitutional Restraint Support Abstention**</u>

    **1.**   **Under <u>Burford</u> And The Doctrine of Primary Jurisdiction New York Should Be Allowed To Investigate AIG And Consider The Issues Raised Here**

Abstention is also appropriate because deciding the issues raised by AIG in the current forum would supplant the State's primary role in deciding "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case at bar," and would disrupt the "state's efforts to establish a coherent policy with respect to a matter of substantial public concern." <u>New Orleans Pub. Serv., Inc. v. Council of New Orleans</u>, 491 U.S. 350, 361 (1989)("<u>NOPSI</u>"). Def. Mot. at 18-21. <u>See also id.</u> at 31-32 (explaining important state interest in regulation of in-state commercial conduct). Abstention is also warranted in deference to the State's Congressionally-granted authority to regulate the insurance industry, and DFS's statutory authority to investigate, hold hearings and administratively determine violations of the Insurance Law. DFS is the primary finder of fact entrusted with the job of determining, in

the first instance, how New York law applies to those as yet unfound specific facts. Id. 3-4, 20-21.

AIG's analysis of the application of the multi-factored Burford analysis is riddled with misstatements of law and fact. AIG contends that "Burford abstention is clearly inappropriate [because] there is no danger of a federal court overturning a state court or agency's prior order and thereby disrupting ongoing state efforts to establish a uniform policy." Pl. Opp. at 29.[7]  But this is exactly what AIG is doing.  It is trying to interfere with the orderly and ongoing process of investigating AIG and others, and determining how state law applies to them.  Although it is not technically seeking to "overturn" the Consent Order, it is expressly asking this Court to enjoin DFS's investigation of AIG and reject DFS's application of the Insurance Law to the facts set forth in the Consent Order, "thereby disrupting ongoing state efforts to establish a uniform policy."  AIG's entire Burford argument collapses ab initio.

AIG's myopic insistence that there are only issues of law here, not issues of fact, is also incorrect. As also discussed infra at Point II(B), AIG predicates its complaint on unsupported factual assertions and many of its factual arguments in support of its position are inconsistent with, if not squarely contradicted by, the factual findings set forth in the Consent Order. There also exists reason to suspect that AIG and its unlicensed subsidiaries did even more in New York with regard to the solicitation, negotiation and consummation of its insurance business than is reflected in the Consent Order. See p. 16, infra.  Further, any determination of whether the

---

[7]  This is not even a correct statement of the law. There is no requirement that there be an ongoing state enforcement action or legal proceeding for Burford to apply. See , e.g., Coles v. Street, 38 Fed. Appx. 829, 831 (3d Cir. 2002) ("the lack of a pending state court action creates no preclusion of abstention . . . Rather, abstention is appropriate because state review is available") (citation omitted). Similarly, AIG contention that Burford's application is limited to insurance liquidation proceedings is wrong. See, e.g., Smith v. Met. Prop. & Liab. Ins. Co., 629 F.2d 757, 761 (2d Cir. 1980) (challenge to exclusionary clause in insurance contract as contrary to public policy merited abstention because of paramount state interest in deciding far-reaching issue of state law); Allstate Ins. Co.v. Sabbagh, 603 F.2d 228 (1st Cir. 1979) (abstention appropriate where Allstate raised constitutional challenge to state insurance rates, even though Allstate had not appealed rates administratively).

9

application of New York law to AIG is constitutional must depend on what AIG itself did, and how DFS applies the law to AIG's own activities, and there is no administrative record on these matters at all.

Finally, AIG's assertions that there are no state-law issues, and no significant state policies at issue, Pl. Opp. 30-31, is wrong. As set out in the discussion of <u>Pullman</u> abstention, <u>infra</u>, there are significant threshold issues of State law that could moot the constitutional claims here. In addition, the interpretation of New York law sought by AIG would profoundly alter the way New York has long regulated the activities of insurers and producers operating within its borders. <u>See</u> Def. Mot at 31-32; Mulvihill Dec. ¶¶15-16; Ex. A-F. <u>See</u> <u>NOPSI</u>, 491 U.S. at 361 (observing that abstention would have been appropriate if the "federal claims [were] in any way entangled in a skein of state law that must be untangled before the federal case can proceed") (citation omitted).

Even if the Court were to accept AIG's arguments regarding <u>Burford</u>, it should still defer to DFS's investigation of AIG under the doctrine of primary jurisdiction, and permit DFS to complete the task of investigating how the various insurance solicitation, negotiation and transactional activities were accomplished by AIG and its affiliates in New York, and how New York law, including the law relating to holding companies, should apply to AIG's role in these activities. Def. Mot. at 20-21. On this subject AIG offers only a flippant footnote contending that defendant's use of the words "pure issues of State law" (which in context means "no issues of federal law," <u>see</u> Def. Mot. at 20, 22) in his memorandum somehow establishes there are no factual issues to be addressed in the underlying administrative investigation. (Pl. Opp. 31 n.28). But AIG offers nothing to demonstrate the absence of issues relating to AIG's conduct or the application of New York law to that conduct, and squarely misrepresents the defendant's position, which is that the Court should abstain under the primary jurisdiction doctrine "in

deference to DFS's specialized expertise in the regulation of the insurance industry, <u>and the related fact-finding and interpretation of the governing state statutes as applied to those facts.</u>" Def. Mot. at 20-21 (emphasis added).

### 2.     **Pullman** Abstention Applies

AIG argues that there is no unsettled question of state law warranting <u>Pullman</u> abstention because "the Consent Order and DFS's position in this case have made unequivocal what DFS's position is," and "AIG does not seek this Court's views on the interpretation of the New York Insurance Law; rather AIG seeks this Court's judgment on the constitutionality of DFS's own unambiguous and allegedly 'long-standing position' on how that law should be interpreted." Pl. Opp. at 32-33.[8] This argument is divorced from the actual claims pled by AIG – AIG actually urges the Court to interpret the Insurance Law in a manner <u>directly at odds</u> with DFS's long-standing position (AC ¶¶ 19-28), and, indeed, the first claim it asserts is that the provisions at issue are unconstitutionally vague (AC ¶¶ 52-59).  AIG thus expressly seeks to have the Court determine that the statutory provisions at issue cannot mean what DFS said they do in the Consent Order (and in its many public Opinions) before reaching AIG's constitutional challenges to them. This counsels abstention. If this Court interprets those statutes in a manner different than the state courts would, then the Court will have issued an entirely advisory and unnecessary constitutional adjudication – making this case the paradigm for <u>Pullman</u> abstention. <u>See</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 17 n.9 (1987) ("the probability that any federal adjudication would be effectively advisory is so great that this concern alone is sufficient to justify abstention" under <u>Pullman</u>).

---

[8] AIG also cites <u>Jacoby & Meyers, LLP v. Presiding Justices</u>, 488 F. Appx. 526 (2d Cir. 2012) for the odd proposition that the very fact that DFS has an "unequivocal position" regarding the interpretation of the statutes defeats its <u>Pullman</u> abstention arguments. The case says nothing of the kind; it deals with judicial estoppel in regard to statements made at earlier stages of that case that had been adopted by the court.

AIG finally contends that <u>Pullman</u> abstention "is inappropriate where the State's conduct is chilling commercial speech safeguarded by the First Amendment," Pl. Opp. at 32 (heading), and that abstention would lead to an unacceptable delay because DFS's interpretation of the statutes at issue has purportedly "deeply unsettled the industry," and forced insurance companies <u>other than AIG</u> "to forgo legitimate commercial speech safeguarded by the First Amendment." <u>Id.</u> at 33. AIG's position, thus, relies on unsupported allegations with regard to the claims of third parties not before the Court in an attempt to use First Amendment overbreadth doctrine where it does not belong. That doctrine, however, <u>does not apply</u> to commercial speech. <u>Bates v. State Bar of Ariz.</u>, 433 U.S. 350, 380-81 (1977). <u>Accord</u>, <u>e.g.</u>, <u>Waters v. Churchill</u>, 511 U.S. 661, 670 (1994); <u>Allstate Ins. Co. v. Serio</u>, 261 F.3d 143, 153 n.17 (2d Cir. 2001). <u>See</u> Def. Mot. at 37-38.[9]

## C. The Court Should Exercise Its Broad Discretion Under The Declaratory Judgment Act And Decline To Exercise Jurisdiction

Even if the Court accepted all AIG's faulty arguments regarding the requirements of the abstention doctrines and the Court's subject matter jurisdiction to enter the disruptive declaration sought by AIG, the Court should still dismiss this matter under the Declaratory Judgment Act. Def. Mot. at 23-25. <u>See</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995). The declarations requested here would interfere with an ongoing state proceeding, <u>see</u> Def. Mot. at 12-17 and <u>supra</u>, Point I(A), disrupt an area of complex state regulation in an area where the state's interests are paramount and supplant state determination of issues of law and fact under state law, <u>see</u> Def.

---

[9] The two cases on which AIG relies, <u>Vt. Right to Life Comm., Inc. v. Sorrell</u>, 221 F.3d 376 (2d Cir. 2000), and <u>Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth.</u>, 134 F.3d 87 (2d Cir. 1998), both hold only that courts should exercise "caution" in abstaining under <u>Pullman</u> "where a plaintiff has raised a <u>facial</u> constitutional challenge to a statute and the attendant delay would work to inhibit exercise of the First Amendment freedoms injured by the statute's existence." <u>Vt. Right to Life Comm.</u>, 221 F.3d at 385 (emphasis added). Any First Amendment facial challenge by AIG here would be frivolous, <u>see</u> Def. Mot. at 37-38, and, indeed, AIG's opposition effectively abandons it, arguing only that AIG has asserted an "as applied" claim. <u>See</u> Pl. Opp. at 41-44 (commencing: "DFS's efforts to penalize AIG … for ALICO's marketing activities violate AIG's First Amendment rights.").

Mot. at 17-21 and supra, Point I(B)(1), and require this Court to interpret several state laws, imposing a new interpretation on those provisions that would change the long-standing application of the Insurance Law within New York. See Def. Mot. at 21-23 and supra, Point I(B)(2). Accordingly, even if the Court were to accept AIG's arguments and determine that none of the abstention doctrines can be applied, the concerns animating those doctrines provide more than sufficient reason for the Court to exercise its broad discretion under the Declaratory Judgment Act and decline to entertain this action.

AIG does not address the factors noted above;[10] it argues only that the declarations should be issued because they will purportedly "settle the controversy" between AIG and Superintendent Lawsky. Pl. Opp. at 20. That, however, they will not do.  The investigation of AIG involves many issues neither resolved in the Consent Order nor at issue in this litigation. Mulvihill Dec. ¶¶ 23-24. Moreover, the declarations sought by AIG also could only address hypothetical factual findings in regard to AIG's conduct, since no specific factual findings relating to AIG's own conduct have yet been issued or determined by DFS.

### POINT II - AIG'S CLAIMS DO NOT PRESENT A CASE OR CONTROVERSY

**A.    The Relief Sought Would Not Redress AIG's Alleged Injury**

The amended complaint fails because the relief sought by AIG would not redress the injury alleged.  DFS could continue to investigate AIG, and potentially charge it both for its possible role in the conduct discussed in the Consent Order and for conduct that is not

---

[10] AIG conceals its failure in this regard by citing the wrong legal test in the text of its memorandum. Both SR Int'l Bus. Ins. Co. v. Allianz Ins. Co., 343 Fed. Appx. 629 (2d Cir. 2009), and Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384 (2d Cir. 2005), address the question of whether certain claims for declaratory relief were ripe. Only in a footnote does AIG sets forth the correct test for determining whether a court with jurisdiction should exercise its discretion to hear a declaratory judgment case, and it does so without addressing the remaining factors. Pl. Opp. at 21, n.17. In particular, AIG thus avoids any discussion of "whether the use of the declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state," N.Y. Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006), which weighs heavily against the exercise of jurisdiction here.

specifically addressed in the Consent Order, regardless of whether the statutes challenged here were constitutionally applied to AIG's subsidiaries. Most obviously, even if the Court were to issue declarations stating that DFS could not have constitutionally required ALICO or its producers to obtain a license for their New York activities, it would not excuse any complicity by AIG in the misrepresentations that ALICO made to DFS. See, e.g., Ins. Law §§ 1506(c)(1) (requiring holding company to be "trustworthy"); 1509, 2402, 2403, 2404, 2405 (prohibiting use of holding company system to accomplish certain illegal acts, including any "deceptive act or practice," and rendering such practices illegal).[11] Def. Mot. at 25-26.

AIG's argument that the Court cannot consider the additional provisions on this motion because "they are nowhere to be found in the Consent Order" and are therefore not part of AIG's purported "constitutional harm," Pl. Opp. at 16-17, is a legal non-sequitur. The negotiated settlement between DFS and parties other than AIG has no bearing on whether the conduct set out in the Consent Order also may violate additional provisions of New York law, in particular those specifically relevant to AIG. Rather, the relevant redressability question is whether the conduct identified, if attributed to AIG, could also violate provisions not challenged in the suit, so that the "harm" alleged - the potential enforcement action against AIG based on that conduct - would not be remedied by the declaration sought. See Def. Mot. at 25-27. See also, e.g., Lamar Adver. of Penn, LLC v. Town of Orchard Park, No. 01CV-556A(M), 2008 U.S. Dist. LEXIS 27647, *60 (W.D.N.Y. Feb. 25, 2008) (plaintiff lacked standing to bring constitutional challenge because, even if challenged provisions of ordinance were held unconstitutional, "plaintiff would

---

[11]Ins. Law §§ 1509 and 2403, for example, prohibit misuse of the holding company structure to accomplish certain illegal acts, acts specified and defined under Ins. Law § 2402. Under § 2402, the violations of law that may be treated in this manner are both certain statutory violations (Ins. Law § 2402(a)) and also what are termed "determined violations," which include "any . . . deceptive act or practice." (Ins. Law § 2402(c)). See also Ins. Law § 2403 (making such acts illegal). Such acts may be investigated and charged administratively by the Superintendent under Ins. Law §§ 2404 and 2405.

lack a redressable injury because it would still be precluded from [engaging in its conduct] based upon the unchallenged and otherwise lawful legal provisions of the ordinance"); Northeast Bancorp. Inc. v. Woolf, 576 F. Supp. 1225, 1229-30 (D. Conn. 1983) (dismissing case challenging state law barring bank merger for lack of standing and redressability because even if the challenged state law was declared unconstitutional, plaintiff would still be barred by other laws from completing bank merger ); cf. Dreamland Amusements, 2008 U.S. Dist. LEXIS 71432 at *24-26 (under ripeness doctrine, plaintiff, who sought to challenge investigation, could not raise constitutional challenge to statutes he might be prosecuted under, where prosecution for conduct investigated could also be pursued under alternative statutory authority not challenged in suit).

**B.    AIG's Claims Are Not Ripe For Decision**

AIG's claims are unripe because the legal and factual issues relating to AIG's potential liability for the acts of its subsidiaries raised by the current investigation are not sufficiently developed to permit the Court to apply the relevant law to them. See Def. Mot. at 27-30. AIG, however, treating the long-established two-prong test for both constitutional and prudential ripeness as an afterthought,[12] argues that: (1) there is "no factual dispute" and that the Court may determine this suit as a "matter of law," Pl. Opp. at 19-20; and (2) the alleged likelihood of a later enforcement action of some kind by DFS against AIG and the existence of the Consent Order amount to injury in fact and ripen its pre-enforcement challenge to the application of the statutes to it. Pl. Opp. at 11-15.

---

[12] The two-prong ripeness test requires a court to examine both the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration," Abbot Labs. v. Gardner, 387 U.S. 136, 149 (1967), and "is relevant for both constitutional and prudential ripeness analysis." N.Y. Civil Liberties Union v. Grandeau, 528 F.3d 122, 132 n.9 (2d Cir. 2008). See e.g., Nat'l Park Hospitality Assoc.v. Dep't of Interior, 538 U.S. 803, 807-08 (2003).

1.   **The Issues Are Not Fit For Judicial Decision Because The Factual Record Is Incomplete And In Dispute**

AIG's arguments notwithstanding, there is no factual record at this time permitting the Court to determine the constitutional claims in a manner that does not risk being advisory.  <u>See</u> Pl. Opp. at 18-20.  <u>First</u>, AIG does not contest that there is no factual record at all of AIG's own conduct in the relevant regards, or its particular role in its subsidiaries' activities.  Rather, the investigation of AIG's conduct by DFS is taking place now – and enforcement is neither certain nor imminent.  <u>See</u> Mulvihill Dec. ¶ 24-26.  Without such a factual record, however, there is no way to determine how DFS will apply New York law to AIG's conduct, much less a way to determine whether that application of New York law by DFS passes constitutional muster.

<u>Second</u>, AIG's allegations in the complaint, even as they pertain to ALICO, are incomplete and incorrect.[13]  For example (and this is not an exhaustive list), while AIG's complaint downplays its subsidiaries' New York activities in a manner that appears inconsistent with the factual basis of the Consent Order, <u>see</u> AC ¶¶ 22, 35, AIG's allegations with regard to its own and its subsidiaries' activities in New York appear to be false, inaccurate and/or incomplete.  <u>See</u>, <u>e.g.</u>, Second Amended Complaint, <u>U.S. Ex. Rel Alex Grabcheski v. AIG</u>, Case No. 1:10-cv-03902 (GBD) (S.D.N.Y. May 13, 2014) (ECF Docket No. 16) ¶¶ 43-53 (allegations that AIG's subsidiaries, including ALICO, concealed their domestic operations from regulators); <u>id.</u> ¶¶ 54-61 (detailing New York insurance activities of AIG subsidiaries through the GMD); <u>see esp.</u> ¶ 61 (alleging, with regard to AIG's subsidiaries' business, via the GMD, that "business was

---

[13]  Plaintiff's cites portions of the Superintendent's counsel's statements during the preliminary conference .  A full copy of that conference transcript is attached to the accompanying Declaration of Elizabeth A. Forman, dated July 25, 2014.

originated in the New York office, details of the business were negotiated in the New York office, policies were written and contracts signed in the New York office . . .").

Plaintiff seeks to have the Court construe New York law and determine its constitutionality as applied to AIG based on a factual record that is neither complete nor uncontroverted. Its claim is therefore unripe.

### 2. AIG Fails to Demonstrate Hardship Meriting Interference With The Ongoing Administrative Investigation

AIG also ignores that pre-enforcement constitutional challenges to a statutes are the rare exception, not the rule. To raise a viable pre-enforcement claim, a party must show that it is faced with the choice between engaging in potentially protected conduct or risking prosecution.

> [There are] some limited situations in which preenforcement review of the validity of a statute or regulation is warranted. This occurs principally <u>when an individual would, in the absence of court review, be faced with a choice between risking likely criminal prosecution entailing serious consequences, or forgoing potentially lawful behavior.</u> For as the Supreme Court has said, in deciding whether a case is ripe, two factors must be considered: (1) the hardship to the parties of withholding court consideration," and (2) the fitness of the issues for judicial decision."

<u>Thomas v. City of New York</u>, 143 F.3d 31, 35 (2d Cir. 1998) (emphasis added)(internal quotation omitted).  All of AIG's cited cases fall within this well established rule, and not one of these cases even remotely stands for the proposition for which they are cited by AIG - that a pre-enforcement challenge to an ongoing administrative investigation is somehow ripened merely by the risk of eventual enforcement as to past conduct.[15]

---

[15] See <u>Quill v. Vacco</u>, 80 F.3d 716 (2d Cir. 1996) (in facial challenge to state statute banning assisted suicide raised by dying individuals and physicians; holding that when contesting the constitutionality of a state criminal statute, it is not necessary that the plaintiff who wanted to engage in prohibited conduct first expose himself to actual prosecution); <u>Vt. Right to Life Comm.</u>, 221 F.3d at 381 (in facial First Amendment challenge to the constitutionality of Vermont's campaign finance reform law, plaintiff claimed it was currently violating the law, but would cease activities it claimed were constitutionally protected unless statutes were declared unconstitutional); <u>Susan B. Anthony List v. Diehaus</u>, 573 U.S. _ ;2014 U.S. LEXIS 4169 (2014) (addressing challenge to Ohio law that criminalizes making a false statement about an electoral candidate's or public official's voting record; Court held that pre-enforcement challenge was permitted when "plaintiff alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute and there exists a credible threat of

AIG does not claim, let alone prove, as required on a 12(b)(1) motion, that it is <u>currently</u> engaging or has an intent to engage in the proscribed conduct at issue.  Instead, AIG alleges it has sold the businesses at issue, and the only injury in fact identified by AIG in its pleading is the risk of an administrative proceeding against it relating to its responsibility for the acts of its subsidiaries occurring before their sale. Pl. Opp. at 18.[16]  AIG is not faced with a choice between foregoing potentially lawful conduct and risking prosecution.   Moreover, DFS has submitted evidence that no enforcement against AIG is imminent, and that DFS must assess the evidence received in the course of the present investigation in determining how to proceed.   Mulvihill Dec. ¶¶ 23-26.  Thus, there is no injury in fact or hardship to AIG that could even arguably justify interference with the ongoing and incomplete administrative proceeding concerning AIG's conduct.[17]

The fatal flaw in AIG's ripeness argument is that AIG has filed a constitutional challenge to an incomplete administrative investigation of AIG that has yielded neither administrative

---

prosecution thereunder") (citing and quoting <u>Babbitt v. United Farm Workers Nat. Union</u>, 442 U.S. 289, 298 (1979); <u>Steffel v. Thompson</u>, 415 U.S. 452, 459-60 (1974) (plaintiff, who had  distributed anti-war handbills, raised First Amendment challenge to state criminal trespass statute threatened to be enforced against him; Court did <u>not</u> hold plaintiff had standing, but rather remanded for determination of whether plaintiff still had <u>future</u> desire to distribute handbills).

[16] AIG  suggests in passing that the Consent Order has caused unspecified injury to its reputation. Pl. Opp. at 15.  There is no allegation in the complaint to this effect, nor is there any evidence offered to show that such a reputational injury could rise to constitutional levels. <u>See</u> <u>Sadallah v. City of Utica</u>, 383 F.3d 34, 38 (2d Cir. 2004) 1994) (proof of constitutional injury to reputation involves more than just allegation of injury to reputation caused by government actor).  Moreover, absent proof of a constitutionally significant injury, it cannot be considered on this 12(b)(1) motion.  <u>See</u> <u>New Alliance Party v. FBI</u>, 858 F. Supp. 425, 430 (S.D.N.Y. 1994) (in challenge to FBI investigation on First Amendment grounds, there was no justiciable controversy without "concrete evidence of a specific injury" caused by the current inquiry).

[17]Moreover, an investigation is not injury in fact; nor is it a hardship for the purposes of the ripeness determination. <u>See</u>, <u>e.g.</u>, <u>Daley v. Mathews</u>, 536 F.2d 519, 522 (2d Cir. 1976) (attempts of FDA to investigate plaintiff doctor who averred she was prescribing illegal drugs, and alleged she was beyond jurisdiction of FDA, did not give rise to justiciable controversy over authority of FDA to enforce statute against plaintiff); <u>Dreamland Amusements</u>, 2008 U.S. Dist. LEXIS 71432 at * 24 (investigation and possibility of future litigation after investigation is not a hardship for the purpose of the ripeness analysis where it does not cause plaintiff an immediate and direct dilemma); <u>AVCO Fin. Corp. v. CFTC</u>, 929 F. Supp. 714, 722 (S.D.N.Y. 1996) (ripeness was "promising defense" to attempt to challenge authority of agency to investigate  plaintiff); <u>New Alliance Party v. FBI</u>, 858 F. Supp. at 430( challenge to investigation on First Amendment grounds was not justiciable absent proof of current harm to plaintiff).

charges against AIG nor factual findings with regard to AIG's own conduct, and that has not imposed any hardship on AIG with regard to its current conduct. The ripeness doctrine "prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." Simmonds v. INS, 326 F.3d 351, 357 (2d Cir. 2003). Yet this is exactly what the complaint here seeks: a preemptive ruling on hypothetical legal claims against AIG as applied to hypothetical, inaccurate and/or incomplete facts. AIG's claims are not ripe for decision.

### POINT III - THE AMENDED COMPLAINT FAILS UNDER RULE 12(B)(6)

**A.     The Challenged Provisions Are Not Unconstitutionally Vague**

AIG's contention that it lacked a "reasonable opportunity" to understand the application of the statutes so as to violate the Due Process clause is absurd. ALICO, then AIG's subsidiary, asked and was specifically informed in 2009 that it, as an unlicensed foreign insurer, could not solicit insurance business in New York via the New York offices it occupied. AC Ex. A ¶¶ 10-13 (ALICO was informed in 2009 via Opinion that in-state solicitation was not permitted without licensing); Mulvihill Dec. Ex. A (public copy of Opinion sent to ALICO). See also id. Exs. B –F (Opinions spanning the prior two decades expressing the same application of the law). AIG disingenuously refrains from making any reference to ALICO's inquiry and DFS's Opinions, but they alone defeat AIG's vagueness challenge. Def. Mot. at 33-36. AIG has simply failed to plead a viable claim that it lacked a "reasonable opportunity" to know what the challenged statutory provisions meant, and this cause of action must be dismissed.

In addition to arguing at length, but unconvincingly, about the meaning of the statutory language of § 1101(b)(1)(A),[18] AIG implies that DFS's long-standing interpretation of the

---

[18] The interpretation of the statute advanced by AIG is (1) inconsistent with Ins. Law § 107(b) non-restrictive definition of "including"; (2) inconsistent with the remaining terms of § 1101(b)(1); (3) inconsistent with unambiguous statutes in pari materia, such as Ins. Law § 2117(a) which expressly bar solicitation on behalf of

statutes actually originated with the Consent Order, Pl. Opp. 39, and that DFS somehow changed its position with regard to the requirement that ALICO be licensed if it intended to solicit insurance business in New York, apparently thereby permitting ALICO to freely ignore the Opinion given it by DFS. Pl. Opp. at 39-40. As noted, these contentions contradict the pleading, AC Ex. A ¶ 10-13,[19] and the public record demonstrates that DFS has long interpreted the challenged statutes in a consistent manner. Mulvihill Dec. ¶¶ 15-16, Exs. A-F. Indeed, there is no authority for the proposition that a party, simply because it disagreed with an advisory opinion given it, may claim that it did not receive reasonable notice of the agency's interpretation. All the authority is to the contrary. Even the opportunity to seek guidance on the interpretation of a statute will defeat a vagueness claim. Def. Mot. at 34 (collecting cases).[20]

With regard to the two challenged provisions that relate to insurance producers, AIG still fails to offer any argument as to why those provisions are vague, or why it could not have

---

unlicensed insurers "in this state"; and (4) inconsistent with the statute's legislative history, which indicates that the language at issue was added in 1970 (L. 1970, ch 295, § 1) not to limit the statute's application, but in order to expand the statute's licensing requirement to unlicensed insurers who solicited New York residents by mail from outside the state. N.Y. Bill Jacket, 1970 A. 3786, ch. 295 (Insurance Department Mem.). The prior version of the statute contains none of the language on which AIG relies. See Ins. Law § 41 (McKinney's 1966) (later recodified as Ins. Law § 1101), and, with regard to unlicensed insurer activity, was interpreted in the same manner as the current version. See Mulvihill Reply Dec. Exs. M, N (pre-1970 Opinions interpreting predecessor statute just as it is interpreted now to preclude acting in state on behalf of unlicensed insurer). Because the current language was intended to expand the provision's reach, it cannot conceivably be read in the manner sought by AIG to sharply curtail its previous application.

[19] The court need not credit allegations or assertions inconsistent with the documents incorporated in the complaint. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 222 (2d Cir. 2004); Karmilowicz v. Hartford Fin. Servs. Group, 494 Fed. Appx. 153, 156 (2d Cir. 2012).

[20] AIG relies solely on FCC v. Fox Television Stations, Inc., 132 S.Ct. 2307 (2012), in its argument in this regard, but that case does not involve an advisory opinion rendered at a party's request. Nor does it consider a party who used an opinion to attempt to avoid regulatory investigation, as is described in the Consent Order. Rather, in Fox, the FCC had one set of issued "Guidelines" for indecency in place at the time of the broadcasts that were alleged to contain certain objectionable material which could have permitted such material if it was not "dwell[ed] on or repeate[ed] at length," and later changed its Guidelines, after the broadcast, so that even "fleeting" expletives and nudity could violate of the standard. Id. at 2317-18. In light of the fact that this was a content-based regulation, the Court held that the notice given the broadcasters of what would be a violation of the new Guidelines was insufficient. Id. That reasoning has no application here because the Opinion given in response to ALICO's inquiry, as well as the long and public history of DFS's application of the statutes, embodied in DFS's Opinions, gave AIG more than reasonable opportunity to know that solicitation in New York on behalf of an unlicensed insurer is barred.

reasonably known, simply based on the language of Insurance Law §§ 2102(a) and 2117(a), that both unlicensed solicitation and solicitation on behalf of unlicensed insurers are barred in New York. Def. Mot. at 35. See Ins. Law §§ 2102(a) (expressly prohibiting third parties from acting as unlicensed agents or brokers "in this state"); 2117(a) (expressly prohibiting, inter alia, all "solicitation, negotiation, or effectuation of any insurance" on behalf of an unlicensed insurer "in this state"). AIG's claim is wholly inconsistent with the language of the statutes it challenges.[21]

**B.    No First Amendment Claim Is Stated**

The Superintendent's opening memorandum demonstrated that the provisions at issue are facially valid, and that AIG could not bring an as-applied constitutional challenge regarding provisions that had not yet been applied to it. Def. Mot. at 36-38. It further demonstrated that any such as-applied claim would fail because "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2664 (2011); Def. Mot. at 38-41. It showed, in addition, that the First Amendment has no application to generally-applicable licensing requirements, such as the provision at issue: "government regulation 'limiting the class of persons who may practice the profession cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment scrutiny.'" Accountant's Soc. of Va. v. Bowman, 860 F.2d 602, 604 (4th Cir. 1988)(quoting Lowe v. SEC, 472 U.S. 181, 232 (1985)). Moreover, to the extent this claim, and others, are dependent on AIG's invented contention, made solely "on information and

---

[21] To the extent the provisions at issue must be "read together," as claimed by AIG, such a reading undermines AIG's position with regard to DFS's interpretation of § 1101(b)(1)(A), because, as set out above, § 2117(a) unambiguously indicates that all "negotiation" and "solicitation" in New York on behalf of unlicensed insurers "in this State" is barred, and § 2102(a) unambiguously indicates that solicitation and negotiation by unlicensed producers "in this state" is barred. AIG's claim that New York law permits unlicensed insurers to perform acts for themselves that are unambiguously barred by other provisions of New York law when performed by others makes no sense. It is also contrary to principles of statutory construction, in particular the doctrine of in pari materia, which permits an ambiguous provision to be construed to be consistent with an unambiguous one on the same subject (but does not permit the reverse).

belief," that ALICO could not be licensed (or was told it could not be licensed) unless it sold insurance to New York residents, Pl. Opp. at 41, such allegations in the present circumstances are not cognizable. See Def. Mem. at 40 n.24.

AIG does not join issue, and ignores these dispositive arguments. It offers, instead, a lengthy and utterly irrelevant analysis of the Central Hudson test, which is used to determine the constitutionality of statutes that have the direct purpose and effect of restricting commercial speech, most commonly, as in Central Hudson itself, those altogether banning commercial advertising in certain industries. See Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557, 558-59 (1980). Pl. Opp. at 41-43. But the present statutes are directed at commercial conduct, and they burden commercial speech only incidentally. Def. Mot. at 38-41. And licensing requirements, such as those at issue here, are generally not subject to First Amendment challenges, see Accountant's Soc. of Va., 860 F.2d at 604, and certainly are not analyzed under the Central Hudson test. See Pickup v. Brown, 740 F.3d 1208, 1227-29 (9th Cir. 2014) (explaining that the First Amendment's restrictions on a state's regulation of a profession fall within a continuum, and are virtually non-existent in regard to licensing requirements). Def. Mot. at 39-41. The Central Hudson test thus does not apply and was not argued in defendant's motion. See Def. Mot. at 36-41.[22] AIG's First Amendment claim should be dismissed.[23]

## C.    AIG's Dormant Commerce Clause Fails To State A Cause of Action

AIG's dormant commerce clause claim should be dismissed out of hand. New York's regulation of companies engaging in insurance activity within the State is immune to dormant

---

[22] AIG closes with a throwaway sentence stating that defendant's argument that the statutes are directed at commercial conduct instead of speech "disputes the factual allegations in the Complaint, see [AC] ¶¶ 29-36, which is impermissible in a motion to dismiss." Pl. Opp. at 44. This is incoherent. The "conduct-speech" distinction turns not on the actions of the plaintiff, but on the meaning and reach of the challenged statutes, which are issues of law, not fact. In any event, the implication that AIG and its affiliates did nothing but engage in speech is belied by the complaint, see AC ¶¶ 10, 31-34; AC Ex. A ¶¶ 5, 16, if not simple common sense.

[23] Defendant notes that, contrary to AIG's unsupported assertions in its brief, ALICO is not continuing the insurance activities without a license. In fact, MetLife is operating through an authorized insurer.

commerce clause challenge. <u>See</u> Def. Mot. at 42-44. AIG does not and cannot dispute that this is

black-letter law, but contends that, under <u>FTC v. Travelers Health Ass'n</u>, 362 U.S. 293 (1960), it

can nonetheless assert a dormant commerce clause claim.  AIG alleges that, while it marketed

insurance products within New York to companies located and doing business in New York,

those insurance products covered only individuals who resided outside New York, and that

<u>Travelers</u> purportedly held that such activities do not constitute "the business of insurance" under

the Act. (Pl. Opp. at 35-38).  AIG's argument is a gross misreading of <u>Travelers</u>.

    First, AIG's entire argument rests upon the <u>wrong statutory provision. Travelers</u> was <u>not</u>

interpreting the provisions of the McCarran-Ferguson Act that govern here, specifically 15

U.S.C. § 1011, § 1012(a) and the first clause of § 1012(b). Rather, as the statement of the

question presented makes clear, the issue before the <u>Travelers</u> Court related to the <u>second</u> clause

of § 1012(b), which provides that "[The Sherman Act, the Clayton Act, and the Federal Trade

Commission Act] shall be applicable to the business of insurance to the extent that such business

is not regulated by State law" (this is referred to as "reverse preemption").  The target of a FCC

enforcement action, which mailed deceptive advertising to potential purchasers in states that did

not regulate such advertising, claimed that regulation by its state of domicile preempted the FTC

from enforcing the Federal Trade Commission Act against it. <u>See id.</u>, at 294-95.

    As the Supreme Court later made explicit in <u>U.S. Dep't of Treasury v. Fabe</u>, 508 U.S. 491

(1993), the second clause of § 1012(b) (which describes the scope of reverse preemption) is a

much different and more cabined provision than the broad exemption found in the first clause of

§ 1012(b), which "is not so narrowly circumscribed." Cases such as <u>Travelers</u> which interpret the

second clause therefore do not control when the first clause is at issue:

        [The cases cited by petitioner] involved the scope of the antitrust
immunity located in the second clause of § 2(b). We deal here with the first
clause, which is not so narrowly circumscribed. The language of § 2(b) is

unambiguous: The first clause commits laws "enacted … for the purpose of regulating the business of insurance" to the States, while the second clause exempts only "the business of insurance" itself from the antitrust laws. To equate laws "enacted … for the purpose of regulating the business of insurance" with the "business of insurance" itself, as petitioners urge us to do, would be to read words out of the statute. This we refuse to do.

   The broad category of laws enacted "for the purpose of regulating the business of insurance" consists of laws that possess the "end, intention, or aim" of adjusting, managing, or controlling the business of insurance.   This category necessarily encompasses more than just the "business of insurance." …

   Our plain reading of the McCarran-Ferguson Act also comports with the statute's purpose. As was stated in [Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205 (1979)], the first clause of § 2(b) was intended to further Congress' primary objective of granting the States broad regulatory authority over the business of insurance. The second clause accomplishes Congress' secondary goal, which was to carve out only a narrow exemption for "the business of insurance" from the federal antitrust laws.

Fabe, 508 U.S. at 504-05 (citations and footnote omitted).  Accord, e.g., Life Partners, Inc. v. Morrison, 484 F.3d 284, 293 (4th Cir. 2007)("the Act explicitly protects from a dormant Commerce Clause challenge (1) any state law that 'relates to the regulation of the business of insurance' or (2) any state law 'enacted for the purpose of regulating the business of insurance.' The Act reserves from its operation only the federal antitrust laws") (quoting §§ 1102(a) and 1102(b), first clause) (emphasis in original); Kachanis v. United States, 844 F. Supp. 877, 881-82 (D.R.I. 1994) ("it is clear that the interpretation of 'the business of insurance' is broader in a situation which does not involve the antitrust exemption").

   The statutory provisions at issue here obviously both "relate to" and were enacted "for the purpose of" regulating the business of insurance, 15 U.S.C. §§ 1012(a), 1012(b), and are "laws that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." Fabe, 508 U.S. at 505. AIG's dormant commerce clause claim therefore fails.

   Further, even if the "narrowly circumscribed" interpretation of the second clause of § 1102(b) set forth in Travelers Health were to apply here, the statutes and conduct at issue would

still constitute "the business of insurance." As AIG alleges in the amended complaint and as the Consent Order specifies, ALICO was marketing, soliciting and negotiating the sale of insurance products in New York with representatives of multinational companies with offices in New York. It did so through the Group Management Division ("GMD"), a group or division located at 70 Pine Street in Manhattan, whose employees were moved between various AIG affiliates, and later became MetLife's "Global Employee Benefits Group." AC ¶¶ 10, 31-34; AC Ex. A ¶ 5. See also AC Ex. A ¶ 16 (describing in-state activities). This is in sharp contrast to the situation in Travelers, where, on the facts set forth, the only in-state activity at issue was the sending of solicitations and advertisements by mail from within the regulating state to out-of-state purchasers, and, more critically, the state statute at issue there would have needed to regulate advertisements that originated from outside the regulating state which were also sent to locations outside that state – thus having almost no nexus with the state whose law was invoked by the defendant in order to prevent federal enforcement. Travelers, 362 U.S. at 295-96. The long-term, in-state, in-person solicitation and negotiation of insurance conducted by AIG's affiliates is a horse of different color.

Even the policy concerns on which Travelers itself is based counsel application of the McCarran-Ferguson Act to bar AIG's dormant commerce clause claim here. In Travelers, the Court was concerned with ensuring that interstate insurance-related conduct would not evade all regulation. If the Court had held that the state statue at issue in Travelers regulated "the business of insurance" under the second clause of § 2(b), the consequence would have been that "a single State takes from the residents of every other State the protection of the Federal Trade Commission Act." Travelers, 362 U.S. at 298. That is exactly the opposite of the present situation. Here, if the dormant commerce clause somehow prevents New York from regulating insurers and producers located in New York who solicit and negotiate insurance business in New

York from New York companies, who then will regulate these activities?[24]  This claim fails to state a cause of action.

**Conclusion**

For the foregoing reasons, and the reasons set out in defendant's previous and accompanying submissions on this motion, defendant respectfully requests that the Amended Complaint be dismissed in its entirety without leave to amend, and the Court grant such other and further relief as it deems just and equitable.

Dated:  New York, New York
       July 25, 2014

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the  State of New York
<u>Attorney for Defendant</u>
By:

ELIZABETH A. FORMAN
DANIEL SCHULZE
Assistant Attorneys General
120 Broadway, 24th Floor
New York, New York 10271-0332
(212)416-8538

---

[24] AIG, in a footnote, makes an odd and convoluted attempt to distinguish several Supreme Court cases cited by defendants on the grounds that they did not rule "that a state could force a company to obtain an insurance license in a state where the company was not conducting an insurance business, simply because that company sought to conduct insurance business exclusively outside that state's borders in foreign countries."  (Pl. Opp. at 36, n.32).  The referenced cases certainly did not rule on this convoluted issue one way or the other - but this fanciful  hypothetical has absolutely nothing to do with the facts of <u>this</u> case or the allegations of <u>this</u> complaint, in which AIG concedes extensive business activity was conducted <u>within</u> New York.